UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHRISTOPHER KNOX
PLAINTIFF- PRO SE
—VS—
ROGER WALKER; RICK ORR; GUY PIERCE;
JASON GARNETT; SHELTON FREY;
TERRY McCANN; JAY MERCHANT; et al
DEFENDANTS

CASE # NO #:_____

## COMPLAINT FOR INJUNCTION, DECLARATORY JUDGMENT, AND DAMAGES

Now come PLAINTIFF, CHRISTOPHER KNOX, PRO SE, COMPLAIN OF THE DEFENDANTS, ROGER WALKER, RICK ORR, GUY PIERCE, JASON GARNETT, SHELTON FREY, TERRY McCANN, JAY MERCHANT AS FOLLOWS:

### NATURE OF THE CASE

1). PLAINTIFF, IS AN INMATE WHO ARE CURRENTLY CONFINED IN ILLINOIS' SUPERMAX PRISON, TAMMS CORRECTIONAL CENTER (TAMMS). PLAINTIFF ALLEGES THAT HIS SELECTION BY THE DEFENDANTS FOR TRANSFER TO (AND CONTINUED CONFINEMENT AT) TAMMS C/C VIOLATES HIS RIGHTS TO PETITION THE GOVERNMENT, DUE PROCESS, CONDITION OF CONFINEMENT, ALL AS PROTECTED BY THE FIRST, EIGHT, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTIONS. PLAINTIFF FURTHER ALLEGE THAT HIS TRANSFER TO AND CONTINUED CONFINEMENT AT TAMMS VIOLATES STATE LAW....

2). TAMMS IS INTENDED AS A SEVERE FORM OF PUNISHMENT FOR THE "WORST OF THE WORST" OF ILLINOIS' PRISONERS; THOSE WHO ARE SIMPLY TOO DANGEROUS TO BE HOUSED EVEN AT ILLINOIS' FOUR MAXIMUM SECURITY PRISONS....

— 1 —         — 1 —

3). However, the reality is that TAMMS is not populated by the worst, most violent or dangerous inmates in the Illinois prison system. Rather, it is largely populated by litigators and alleged gang associates, many of whom have no significant disciplinary histories........

4). The plaintiff in this case were selected for transfer to TAMMS in retaliation for his litigation, grievances, writ writing and for inserting foreign objects into his urethra (Count One)... (B). Plaintiff were not given a meaningful opportunity to a hearing to contest the decision to transfer him to TAMMS. (Count Two)... Finally, the criteria and procedures used to select plaintiff for transfer to TAMMS, and the conditions under which he are confined at TAMMS, violates the applicable Illinois statutes and regulations which govern the operations of the Illinois Department of Corrections. (Count Three).......

## JURISDICTION AND VENUE

5). This action is brought pursuant to 42 U.S.C. § 1983, and First, Eight, and Fourteenth, Amendments of the United States Constitutions.. Therefore, this Court has the jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343........

6). Jurisdiction is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b). As a substantial part of the events giving rise to plaintiff claims occurred at "Pontiac" Illinois, located in the Central District and, upon information and belief one or more of the defendants resides in the Central District and all defendants resides in the state of Illinois..........

-2-                                                          -2-

## TAMMS CORRECTIONAL CENTER

7). Tamms Correctional Center is the highest security prison operated by the Illinois Department of Corrections ("IDOC"). It is located in the village of Tamms in Alexander County, in the very southern most portion of the state of Illinois. It is located approximately 370 miles from the city of Chicago, where the families of the majority of inmates reside........

8). Tamms was opened on March 9, 1998. It is designed to hold approximately 500 inmates, but has never in fact held more than its current population of approximately 275 inmates........

9). Tamms is designed to be extremely harsh. IDOC officials have stated that they want conditions at Tamms to be so bad that inmates throughout the system are motivated to follow all departmental rules based upon the mere threat of being transferred to Tamms....

10). The conditions of confinement at Tamms present inmates with atypical and significant hardships in relation to the ordinary incidents of prison life, including the hardships imposed at the most restrictive segregation units in Illinois' maximum security prisons. At Tamms, control and punishment are imposed through extreme social isolation, severely restricted movement, and an environment that virtually eliminates all external stimuli...............

11). Tamms consists of eight self-contained cell blocks, called pods, each holding six wings of 10 cells. A centralized control booth operates all lights and doors and the water supplies; video cameras provide visual surveillance; intercoms provide communication between inmates and guards, without human contact, and allow guards to eavesdrop on inmates.......

— 3 —

— 3 —

12). To restrict the movement of inmates, each pod is a self-contained living unit that includes an exercise area, a shower, a room containing a few law books, and a multi-purpose room which is used by medical staff, all controlled from the central control booth. Movement between pods is through an underground tunnel.

13). At Tamms, each inmate spends between 23 and 24 hours a day, seven days a week, in a single 70 square foot concrete cell. Each cell contains only a concrete bed, a stainless steel combination sink and toilet, a mirror, a shelf, and two boxes for storing personal property. As is explained below, most inmates are not permitted a television, radio, or cassette player. Each cell has a narrow window placed high on the wall from which it is impossible for inmates to see anything unless they stand on their bed. The cell door is made of steel mesh that is difficult to see through. Located at the bottom of the door, a few feet off the ground, is a slot (sometimes referred to as a chuckhole), which is used to pass food to the inmates. It is locked from the outside. The view through the steel mesh of their cell door is of a plain concrete wall. Inmates cannot see each other.

14). Inmates do not leave these cells for meals, which are served on plastic trays pushed through the chuck hole. The trays and all utensils must be placed back in the chuck hole by the inmate within 30 minutes of being served. Inmates do not leave their cells to visit with other inmates. Inmate contact with each other is strictly forbidden.

-4-

-4-

inmates do not leave their cells for communal religious services, educational programs, or jobs, none of which exist at Tamms. Those inmates who can read (and many cannot) are permitted a limited number of books in their cells. Most inmates cannot listen to the radio or watch television as those are privileges allowed only to those inmates in AD status who have advanced to behavioral level three......

15). Inmates cannot socialize or communicate with other prisoners, except by yelling into the pod, where the extreme echoing effect makes it extremely difficult to hear and virtually impossible to understand. In addition, on many wings, one or more prisoners scream or bang on the cell walls throughout the day and night, so that other inmates cannot sleep..........

16). The only time inmates regularly leave their cells is to exercise or take a shower. Depending on an inmate's status, these are permitted one to four times a week. Occasionally, they may use the law books or see a social worker, both within the pod. Very rarely are they permitted to travel outside the pod to the health care unit or the visitor's room. At no time are two or more inmates on a wing allowed outside of their cells at the same time............

- Administrative detention. The different categories of inmates are described in paragraphs 23 and 24, below.

-5-

-5-

17) Whenever an inmate leaves his cell for any purpose except exercise and shower, and each time he returns, he must submit to a full body cavity search. First, he removes his cloths and hands them to the guard. Standing naked, he must display his ears, feet, and hands. Then he must bend over, his back to the guard, and spread his buttocks. He must raise his penis, so the guards can examine his testicles. He may be order to expose the groove around the tip of his penis or if not circumcised, to pull back the foreskin. . . . . . . . .

18) After dressing, he must back up to the cell door and place his hands through the chuck hole where the guards handcuffs them. The inmate then must kneel or lie on the floor while the guards shackles his ankles. Throughout this procedure, the guards wears latex or leather gloves to ensure that the inmate never has any human contact. If the inmate moves outside of his pod, he is surrounded by two or three guards, who place their arms on his chest and shoulders and his movements may be tracked by a guard with access to a semi-automatic rifle. These punitive and humiliating exchanges are the only time a Tamms inmate feels another person's touch, except when he is examined by a doctor. Even such examinations usually take place while the inmate's leg's are shackled and his arms may be held by guards. . . . . . . . .

—6—    —6—

19). On some days, inmates are allowed out of their cells for an hour to exercise and shower. Inmates in the most restricted categories are permitted one hour to exercise on the yard and one shower per week. Inmates in the most liberal categories are permitted seven hours of yard and five showers per week. Exercise takes place in a concrete "yard" about 15 by 30 feet, located at the end of each pod. The yard is completely empty; it contains no recreation equipment, no drinking fountain, and no toilet. The walls are solid concrete. A stainless steel plate covers two thirds of the yard; the remaining one third is steel mesh. The view through the steel mesh is often an inmate's only glimpse of natural light and the outside world. Many inmates go for weeks without leaving their cells to exercise because their privileges have been removed for disciplinary reasons or their mental illnesses makes them too weak to move.............

20). An inmate's contact with friends and family is infrequent, uncomfortable, and without physical contact. Telephone calls are prohibited, except in the case of a documented emergencies (however, even family members' fatal illnesses are not considered emergencies). Visits are cumbersome, short, expensive, for visitor and inhospitable. Each visit must be arranged at least two weeks in advance for specific time. The visit is forfeited if the visitor is late. As Tamms is approximately 370 miles from Cook County, and an hour's car ride from the nearest train station or airport, timely arrival is difficult and the trip is expensive. Visits last no longer than two hours. A thick glass shield seperates the visitor from the inmate;

-7-               -7-

All communication is through a microphone that distorts voices and cuts off all conversation if more than one person tries to talk at once. All such conversations are monitored by guards. By the visitor and the inmate must sit on steel stools which are attached to the floor too far from the glass shield for conversations to be comfortable. The inmate's legs are chained to a bolt in the floor. If the inmate is in segregation, he is handcuffed......

21). Communication with religious personnel is similarly restricted and is not confidential. There is no provision for confidential confessions and it is extremely difficult to arrange for the taking of sacraments.....

22). Communication between inmates and attorneys is also severely restricted. Inmates are not permitted to initiate calls to their attorneys; rather, attorneys must request, in writing, that the inmate be permitted to call. Unless the attorney can convince TAMMS staff that the communication cannot be in writing or in person, permission for a legal call will be denied. If an attorney does visit an inmate in person, the visit is through the same thick glass plate described above and the conversation is monitored by guards. There is no facility available for confidential communication. Written communications from attorneys are theoretically confidential. However, inmates cells are searched frequently and during such a search all papers, including confidential legal correspondence, are examined......

— 8 —   — 8 —

23). Inmates at Tamms are divided into two categories. Inmates who have been found guilty of a disciplinary violation and sentenced to segregation at another prison prior to being transferred to Tamms are held in segregation status. Inmates in segregation status who are transferred to Tamms do not receive any hearing or opportunity to contest their placement at Tamms. They are not even provided a reason for their transfer to Tamms. When an inmate completes his segregation sentence, he has the right to appear before the Transfer Review Committee to determine whether continued placement at Tamms in AD status is appropriate...

24). All other inmates at Tamms are in administrative detention ("AD") status. Administrative detention is not related to any specific disciplinary violation by an inmate. Rather, an inmate is placed in AD status based upon a generalized determination by the IDOC that the inmate is a danger to the safety and security of staff or inmates, or other similar reasons. An inmate transferred to Tamms in AD status is entitled to a hearing within 10 days of his transfer before a Transfer Review Committee at which time he may make an oral statement, but has no right to review the evidence relied upon or to call witnesses or present documents to support his contention that he should not have been transferred to Tamms. Pursuant to applicable administrative regulations (20 Ill. Adm. Code § 505.70), inmates in AD status are supposed to be reviewed every 90 days to determine whether continued placement in AD status, and therefore at Tamms, is appropriate. In fact no such reviews takes place. When an inmate enters Tamms in AD status

-9-

-9-

He is placed in behavioral level one. His behavioral level is reviewed every 90 days, and if the IDOC determines that his behavioral has improved, he is promoted to behavioral level two and thereafter to behavioral level three, the highest level. Each promotion gains an inmate additional privileges, such as an expanded list of commissary items, additional shower and yard time, and the right to purchase audio visual equipment......

## THE PARTIES

### THE DEFENDANTS

25). Defendant, Roger Walker, has been the Director of the Illinois Department of Corrections ("IDOC") since 2003. As such, he is responsible for the administration of all correctional facilities operated by the state of Illinois. He has personal, first-hand knowledge of the operation of TAMMS, and upon information and belief was personally involved in formulating and approving the standards currently used for selecting inmates for transfer into and out of TAMMS. Mr. Walker is sued in both his individual and official capacities.

26). Defendant, Rick Orr, served as a Deputy Director of the Illinois Department of Corrections during the period when the plaintiff was selected for transfer to TAMMS. As is described in detail below, and for personally approving the transfer of plaintiff, Mr. Orr, is sued in both his individual and official capacities......

-10-    -10-

27). Defendant, Guy Pierce, is the warden of Pontiac. Warden Pierce is the chief administrative officer of Pontiac C/C and as such has ultimate responsibility for the entire operation of the institution, including implementing all state laws and department policies, practices, and procedures affecting prisoners confined at Pontiac C/C, and personally approving the transfer of plaintiff to Tamms C/C. Mr. Pierce is sued in both his individual and official capacities........

28). Defendant, Jason Garnett, served as a deputy director of the Illinois Department of Corrections. Defendant, Mr. Garnett, personally approved for plaintiff continuance placement at Tamms C/C and is also responsible for selecting prisoners for transfer to Tamms C/C. Mr. Garnett is sued in both of his individual and official capacities......

29). Defendant, Shelton Frey, was the warden of Tamms. Warden Mr. Frey was the chief administrative officer of Tamms C/C and as such had the ultimate responsibility for the entire operation of the institution, including implementing all state laws and department policies, practices, and procedures affecting prisoners confined at Tamms C/C, and personally approving for plaintiff continuance placement at Tamms C/C and is responsible selecting prisoners transfer out of Tamms. Mr. Frey is sued in both his individual and official capacities......

30). Defendant, Terry McCann, was Mr. Feey's, predecessor as Chief Administrative Officer of Tamms C/C. He served in this position till 2006; and as such had the ultimate responsibility for the entire operation of the institution, including implementing all state laws and department policies, practices and procedures, affecting prisoners confined at Tamms C/C. and for personally approving the continuance placement at Tamms C/C. and was responsible for selecting prisoners transfer out of Tamms C/C. Mr. McCann, is sued in both his individual and official capacities........

31). Defendant, Jay Merchant, was Mr. McCann's, predecessor as Chief Administrative Officer of Tamms C/C. He is the current Warden of Tamms C/C. and as such has the ultimate responsibility for the entire operation of the institution, including implementing all state laws and department policies, practices, and procedures affecting prisoners confined at Tamms C/C. and for personally approving the continuance placement at Tamms C/C. and is responsible for selecting prisoners transfer out of Tamms C/C. Mr. Merchant, is sued in both his individual and official capacities........

## The Plaintiff

32). Christopher Knox, was transferred to Tamms from Pontiac on January 10, 2006. He has remained at Tamms continuously through the date of this complaint. He has been in segregation during his entire time at Tamms. Immediately prior to his transfer, Mr. Knox, was assaulted by several employees of Stateville C/C in October/2005.

-12-
-12-

MR. KNOX, FILED GRIEVANCE'S, CONCERNING THE OCTOBER/2005 INCIDENTS, WITH THE SPRINGFIELD, INVESTIGATOR'S AND GOT THE STATE POLICE INVOLVED TO PURSUE CRIMINAL CHARGES. MR. KNOX, WORE TRANSFERRED FROM STATEVILLE TO PONTIAC, IN RETALIATION EXERCISING HIS RIGHTS. WHEN MR. KNOX, GOT TO PONTIAC, HE CONTINUED TO FILE GRIEVANCE'S AND LAW SUITS; MR. KNOX, WAS THEN TRANSFERRED TO TAMMS FOR EXERCISING HIS RIGHTS AND FOR INSERTING FOREIGN OBJECTS INTO HIS URETHA THAT'S CAUSED BY HIS MENTAL ILLNESSES. MR. KNOX, ALSO HAS A LENGTHY HISTORY OF LITIGATION AGAINST THE IDOC AND ITS EMPLOYEE'S CONCERNING ALL CONDITIONS OF CONFINEMENT. UPON INFORMATION AND BELIEF, DEFENDANTS, GUY PIERCE AND ROCK OER, APPROVED HIS TRANSFER TO TAMMS......

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

33). PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES BY FILING A GRIEVANCE DIRECTLY TO THE A.R.B. WHICH WAS DENY......

### LITIGATION HISTORY

34). (A) HAVE YOU EVER FILE A SUIT IN STATE OR FEDERAL COURT ?  ☒ YES

35). (A). IF YOUR ANSWER TO QUESTION (A) IS YES HOW MANY ?  13

1) KNOX -VS- PIERSON, 99-616; 2) KNOX -VS- PIERSON, 01-1467;
3). KNOX -VS- PIERSON, 01-1316; 4) KNOX -VS- BYRANT, 02-4363;
5) KNOX -VS- HAWKINS, 02-0649; 6) KNOX -VS- WAINSCOTT, 03-1429;
7) KNOX -VS- SPENCER, 03-1074; 8) KNOX -VS- CARLTON, 03-1327;
9) KNOX -VS- FOX, 06-5247; 10) KNOX -VS- COX, 05-1017;
11) KNOX -VS- LT. MICHEL, 06-0018; 12) KNOX -VS- SCHOMIG, 03-1377
13). KNOX -VS- ROBERSON, 04-7765.

—73—                                                —13—

## Count One

Plaintiff have been transferred to Tamms in retaliation for his litigation activities and █████████████████████████████ in violation of the First and Fourteenth Amendments to the Constitution

36). Plaintiff is an active litigator who have filed cases, grievances, and have otherwise exercised his protected rights by the First and Fourteenth Amendments to the Constitution of the United States to petition the government regarding his conditions of confinement......

37). The administrative regulations governing the placement at Tamms (20 Ill. Adm. Code. § 505.40 (B)) provide that an inmate who has engaged in or may be planning to engage in the following activities is eligible for transfer to Tamms: (A) escape or attempted escape, (b) an assault which caused death or serious bodily injury, (c) engaged in dangerous disturbances, (d) has influence in a gang, (e) engaged in non-consensual sex, (F) possess a weapon......

38). Because of the breadth and vagueness of these criteria and because they allow prediction of future conduct, 90 percent of the inmates in the IDOC arguably meet the written standards for transfer to Tamms Correctional Center......

-14-          -14-

39). IN FACT, THE DEFENDANTS HAVE ESTABLISHED AN UNWRITTEN POLICY AND PRACTICE OF TRANSFERRING INMATES WHO ARE ACTIVE LITIGATORS AND WRIT WRITERS TO TAMMS IN ORDER TO PUNISH THEM AND TO ISOLATE THEM, THEREBY PREVENTING FUTURE LITIGATION......

40). NON OF THESE PLAINTIFF HAVE A DISCIPLINARY RECORD WHICH, BUT FOR THEIR OR HIS LITIGATION ACTIVITIES, WOULD HAVE MERITED PLACEMENT AT TAMMS........

41). DEFENDANTS TRANSFERRED PLAINTIFF TO "PONTIAC" AND TO "TAMMS" IN RETALIATION FOR HIS PROTECTED LITIGATION ACTIVITIES, AND FOR PLAINTIFF COORPERATION WITH THE STATE POLICE REGARDING THE EXCESSIVE FORCE INCIDENTS ON OCTOBER 21, 2005...

42). BY PUNISHING PLAINTIFF FOR HIS LITIGATION ACTIVITIES, AND COORPERATING WITH STATE POLICE, DEFENDANTS HAVE VIOLATED PLAINTIFF RIGHTS TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES PROTECTED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES......

43). EACH OF THE DEFENDANTS WAS INVOLVED IN PERSONALLY APPROVING THE TRANSFER OF PLAINTIFF TO "PONTIAC" AND TO TAMMS, IN RETALIATION FOR LITIGATION ACTIVITIES, AND FOR COORPERATING WITH THE STATE POLICE REGARDING AN INCIDENTS ON OCTOBER 21, 2005 OR WERE PERSONALLY INVOLVED IN CREATING OR APPROVING THE POLICIES AND CRITERIA FOR PLACEMENT AT "PONTIAC" AND "TAMMS" CORRECTIONAL CENTER......

-15-                                                    -15-

44). As a result of defendants' violation of plaintiff First and Fourteenth Amendment Rights, plaintiff has been subjected to onerous conditions of confinement far worse than those they would have experienced at any other prison in Illinois....

## COUNT TWO

Transferring plaintiff to Tamms without a meaningful hearing violates plaintiff rights to Due Process protected by the Fourteenth Amendment

45). Transfer to Tamms subjects plaintiff to atypical and significant hardships in relation to the ordinary incidents of prison life and to hardships which are not experienced at the most restrictive segregation unit at any of the maximum security prisons in Illinois....

46). Plaintiff were not provided with an opportunity for a hearing either before or after his transfer to Tamms which met the minimum requirements of procedural due process......

47). In particular, plaintiff were transferred to Tamms in segregation status, and were not granted an opportunity for a hearing of any sort at which plaintiff could challenge his transfer....

-16-         -16-

48). Prisoners who were transferred to Tamms in AD status were granted a hearing, but were not told in advance of the reasons for the transfer or the evidence upon which the decision was based, and were not given an opportunity to present witnesses or documents on their own behalf.....

49). Defendants' transfer of Plaintiff to Tamms without an opportunity for a meaningful hearing violates the Due Process Clause of the Fourteenth Amendment......

50). Each of the Defendants was involved in personally approving the transfer of Plaintiff to Tamms without a hearing or were personally involved in crafting or approving the policies and criteria for placement at Tamms, and the continuation of placement at Tamms....

51). Plaintiff has segregation time that goes beyond his prison sentence, and has lost all good conduct credits.....

52). As a result of Defendants' violation of the Plaintiff Fourteenth Amendment rights, the said Plaintiff has been subjected to onerous conditions of confinement far worse than those they would have experienced at any other prison in Illinois......

-17-                                                                 -17-

## Count Three

### Transfer of Plaintiff to Tamms Violates the Unified Code of Corrections

53). The operation of Tamms, like every other prison that is operated by the IDOC, is governed by the provisions of the Unified Code of Corrections ("the Code"), 730 ILCS 5-1-1-1, et seq......

54). Section 3-8-7(A) of the Code provides that all disciplinary action must be taken pursuant to rules of behavior and conduct, including the penalties for violations, which are available to all inmates..........

55). Section 3-8-7(E) of the Code establishes the procedures required for the imposition of the "disciplinary segregation and isolation".....

56). No provision of the Code provides for isolation of inmates in segregation or AD status......

57). Defendants' transfer of Plaintiff to Tamms violates Section 3-8-7(A) in that Plaintiff were transferred to Tamms for violation of rules which were not available to inmates prior to their transfer to Tamms..........

-18-    -18-

58). Defendants' transfer of plaintiff to Tamms violates Section 3-8-7(E) as the hearing procedures set forth therein were not followed.

59). Each of the defendants was involved in personally approving the transfer of plaintiff to Tamms without a hearing, or approving the policies and criteria for placement at Tamms, and the continuation of placement at Tamms.

60). As a result of defendants violation of the code, the plaintiff has been subjected to onerous conditions of confinement far worse than those he would have experienced at any other prison in Illinois, and it was the cause of plaintiff three suicide attempts, and is causing plaintiff mental illnesses to worsen.

## Request For Relief

Wherefore, plaintiff request that the court grant the following relief.

A). Declare that the actions of the defendants described herein have violated and continue to violate plaintiff rights under the First, Eighth, and Fourteenth Amendments to the United States Constitutions, and the Unified Code of Corrections.

B). Enjoin the defendants from engaging in any action or conduct, and from failing to act in any way, which would violate the above plaintiff rights.

C). Order the defendants to transfer plaintiff from Tamms and return him to other appropriate setting within the Illinois Department of Corrections.

-19-

-19-

D). Award Plaintiff a judgment against the defendants in their individual and official capacities, separately and jointly, for compensatory damages in an amount as may be awarded by the finder of fact upon trial of this case......

E). Award Plaintiff a judgment against the defendants in their individual and official capacities, separately and jointly, for punitive damages in an amount as may be awarded by the finder of fact upon trial in this case.......

F). Award Plaintiff attorney's fees and cost pursuant to 42 U.S.C. § 1988......

G). Grant such further relief as the court deems just and proper.

Respectfully submitted
/s/ Christopher Knox

Christopher Knox B61090
200 E. Supermax Rd
Tammis, Illinois 62988

-20-        -20-