**E-FILED**
Friday, 06 June, 2008  12:03:23 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-1032 |
| | ) | |
| ROGER WALKER, RICK ORR, GUY PIERCE, | ) | |
| TERRY MCCANN, JAY MERCHANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM IN SUPPORT**

NOW COME the Defendants, ROGER E. WALKER, JR., JASON GARNETT, R. SHELTON FREY, TERRY MCCANN, JAY MERCHANT, RICK ORR, and GUY PIERCE, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and pursuant to FRCP 56, hereby move this Court to enter summary judgment in their favor. In support, the Defendants state as follows:

**Background**

Plaintiff's Complaint consists of two surviving counts. In Count One, Plaintiff claims that he was sent to Tamms Correctional Center in retaliation for filing various lawsuits and being an active litigator against IDOC and its employees in violation of his First Amendment rights. In Count Two, Plaintiff claims that he was sent to Tamms without a meaningful hearing in violation of his Fourteenth Amendment rights. Defendants are entitled to judgment in their favor because: 1) the undisputed evidence supports that the Plaintiff was sent to Tamms for legitimate, non-retaliatory reasons; and, 2) Plaintiff is a member of a class that has made the due process claims on his behalf.

### Undisputed Material Facts

1.      Plaintiff, Christopher Knox, is currently serving sentences for Attempted First Degree Murder, two charges of Unlawful Possession of a Weapon by a Person in IDOC, Aggravated Battery, three charges of Aggravated Battery of a Peace Officer, and Giving a False Fire Alarm. (www.idoc.state.il.us).

2.      Plaintiff's current out date is April 19, 2036. (www.idoc.state.il.us).

3.      Plaintiff has received approximately 32 Inmate Disciplinary Reports for assault while in IDOC. (Plaintiff Disciplinary Card).

4.      Plaintiff has assaulted both staff and other inmates while in IDOC. (Plaintiff Disciplinary Card).

5.      Plaintiff is designated as a maximum security inmate and is considered a moderate escape risk. (Tamms Placement Form).

6.      Plaintiff was transferred to Tamms Correctional Center on January 10, 2006. (Plaintiff Deposition p.6 lines 19-24).

7.      Among other matters, a committed person who the Department has determined has engaged in the following activities or who may be planning to engage in these activities may be referred for placement in the Tamms Correctional Center:

     1)      Escaping or attempting to escape;

     2)      Assaulting staff, inmates or other persons which caused death or serious bodily injury;

     3)      Engaging in dangerous disturbances;

     4)      Having influence in activities of a gang or other unauthorized organization;

     5)      Engaging in non-consensual sexual conduct; or

6)    Possessing weapons.

20 Ill. Adm Code 505.40(b)

8.    Plaintiff was referred to be transferred to Tamms from the Pontiac Correctional Center. (Tamms Placement Form).

9.    Plaintiff was transferred due to his problematic institutional adjustment. (Tamms Placement Form).

10.    Plaintiff's history of staff and inmate assaults are noted following the reason given for his transfer. (Tamms Placement Form).

11.    Plaintiff's disciplinary history was reviewed by Dave Lingle, Case Work Supervisor. (Tamms Placement Form).

12.    Medical concerns for the Plaintiff were reviewed by Judy Ellinger, Director of Nursing. (Tamms Placement Form).

13.    Plaintiff's mental health was reviewed by the psychiatrist. (Tamms Placement Form).

14.    Plaintiff was referred for placement at Tamms by Defendant Pierce, who was warden of Pontiac at the time, due to his overall negative adjustment and total disrespect towards IDOC staff and other offenders. (Tamms Placement Form p. 3).

15.    Plaintiff's placement at Tamms was given final approval by the Deputy Director. (Tamms Placement Form p. 4).

16.    Plaintiff's placement at Tamms was reviewed on January 19, 2006, by the staff at Tamms. (CMAX Intake Review Screening Form).

17.    The rationale for the Plaintiff's placement was his overall negative adjustment and total disrespect towards staff and offenders. (CMAX Intake Review Screening Form).

18.     Plaintiff's numerous assaults were noted as evidence of Plaintiff's problematic institutional adjustment. (CMAX Intake Review Screening Form).

19.     Following his arrival at Tamms, Plaintiff's placement was reviewed by Nona Moore, Correctional Counselor, and Ruane Tanner, Clinical Services Supervisor. (CMAX Intake Review Screening Form).

20.     Following his arrival at Tamms, Plaintiff was approved for placement at Tamms by the Assistant Warden of Tamms. (CMAX Intake Review Screening Form).

21.     Following his arrival at Tamms, Plaintiff was approved for placement at Tamms by Defendant Frey, who was the Warden at Tamms at the time. (CMAX Intake Review Screening Form).

22.     Defendant Walker did not participate in the Plaintiff's placement at Tamms in any way. (Walker Affidavit).

23.     Defendant McCann did not participate in the Plaintiff's placement at Tamms in any way.  (McCann Affidavit).

24.     Defendant Pierce's recommendation to place the Plaintiff at Tamms was not motivated by anything other than the Plaintiff's history of assaulting staff and inmates and his general negative adjustment. (Pierce Affidavit).

25.     Defendant Orr's approval of the Plaintiff's placement at Tamms was not motivated by anything other than the recommendation and Plaintiff's history of assaulting staff and inmates and his general negative adjustment. (Orr Affidavit).

26.     Defendant Merchant did not participate in the Plaintiff's placement at Tamms in any way. (Merchant Affidavit).

27.     Defendant Frey's approval of the Plaintiff's placement at Tamms Correctional Center was not motivated by anything other than the Plaintiff's history of assaults and his overall negative adjustment. (Frey Affidavit).

28.     Defendant Garnett is not involved in the Plaintiff's claims regarding being transferred. (Plaintiff Deposition p. 42, lines 14-17).

29.     Plaintiff is part of a certified class of inmates under Westefer v. Snyder, et al., USDC-SDIL 00-162.

30.     Plaintiff is aware that he is a member of that class. (Plaintiff's Deposition p. 49-50).

31.     The claims made in Westefer are the same as the claims contained in Plaintiff's Count Two of this lawsuit. Westefer v. Snyder, et al., USDC-SDIL 00-162.

32.     Plaintiff has been found guilty of three staff assaults while at Tamms Correctional Center. (Plaintiff Disciplinary Card).

## Standard of Review

**A. Standard for Summary Judgment.**

Summary judgment is proper if the pleadings and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit, under the governing law, will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  In making this determination, the court is to draw inferences from the record in the light most favorable to the non-moving party.  The court is not required, however, to draw every conceivable inference; rather, it may draw only those that are reasonable.  DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 333 (7th Cir. 1986).

5

The Seventh Circuit clarified the standard further in Collins v. Associated Pathologists, Ltd., 844 F.2d 473 (7th Cir. 1988), cert. denied, 488 U.S. 852 (1988):

> The existence of a triable issue is no longer sufficient to survive a motion for summary judgment . . . the test for summary judgment is whether sufficient evidence exists in the pre-trial record to allow the non-moving party to survive a motion for directed verdict. Id. at 476.

The United States Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), established that a party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue which the party has the burden of proof. Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1183 (7th Cir. 1993). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial. Mechnig v. Sears Roebuck & Co., 864 F.2d 1359 (7th Cir. 1988). The plaintiff must come forward with evidence that would reasonably permit the finder of fact to find in plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the plaintiff. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994); International Union of Operating Engineers v. Associated General Contractors, 845 F.2d 704, 708 (7th Cir. 1988).

## Applicable Law

**A.      Personal Involvement**

Defendants in a suit brought pursuant to 42 U.S.C. §1983 can only be held liable for their own individual wrongdoing. Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). An individual satisfies this personal responsibility requirement if he fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

**B.    Retaliation**

An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution.  DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 1999), citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 283-4 (1977).  It is beyond doubt that filing a lawsuit is a constitutionally protected activity.  See Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006).  However, inmates do not have a right to file frivolous claims.   Lewis v. Casey, 518 U.S. 343, 354 f.3 (1996).   Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. See, e.g., Walker v. Thompson, 288 F.3d 1005 (7th Cir.2002); DeWalt v. Carter, 224 F.3d 607 (7th Cir.2000); Babcock v. White, 102 F.3d 267 (7th Cir.1996); Cain v. Lane, 857 F.2d 1139 (7th Cir.1988).  To prevail on a retaliation claim, a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in a defendant's actions.  Hasan v. United States Department of Labor, 400 F.3d 1001, 1005-1006 (7th Cir. 2005).  "A motivating factor is a factor that weighs in the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward, the action."  Hasan, 400 F.3d at 1006.  "Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct."  Spiegla v. Hull, 371 F.3d 928 (7th Cir. 2004).

The retaliation inquiry should be undertaken in light of the general tenor of Sandin v. Conner, 515 U.S. 472 (1995), "which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management."  Pratt v. Rowland, 65 F.3d 802, 807 (7th Cir. 1995).  The Court "should 'afford appropriate deference and flexibility' to prison

officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Babcock, 102 F.3d at 275, quoting Pratt, 65 F.3d at 807.

## C.    Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 817, 818 (1982). To determine if an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. Saucier v. Katz, 533 U.S. 194, 200 (2001). The second prong must be undertaken in light of the specific context of the case, not as a broad general proposition. Saucier, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. Saucier, 533 U.S. at 205.

## Analysis

## I.    Plaintiff was transferred to Tamms due to his history of assaulting staff and inmates and general negative adjustment, not for any retaliatory motive.

The Plaintiff's transfer to Tamms was not retaliatory in nature. The Plaintiff does not dispute that he has a long history of assaulting staff and other inmates. (Fact #3). In fact, the Plaintiff has continued to assault staff after his transfer to Tamms. (Fact #32). Furthermore, the Plaintiff has been found guilty of possessing a weapon while in IDOC. (Fact #1). Under the rule governing the placement of an offender at the Tamms

Correctional Center, the Plaintiff's conduct made him eligible for transfer to Tamms. Specifically, Plaintiff's conviction for possessing a weapon and his assaults qualified him for transfer to Tamms. (Fact #7). As such, the Plaintiff's placement at Tamms was justified and in compliance with the rule governing an inmate's placement at Tamms.

Plaintiff's entire retaliation case is based on the logical fallacy of post hoc ergo propter hoc (after this, therefore, because of this). Plaintiff cannot simply allege that because certain events occurred after he filed lawsuits (he was transferred to Tamms), that those latter events were in retaliation because of the lawsuits. See Bermudez v. TRC Holdings, Inc., 138 F.3d 1176 (7th Cir. 1998) (if post hoc ergo propter hoc were sufficient to support a finding of retaliation, every employee would file a discrimination charge to get a little unemployment insurance).

In Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008), a First Amendment retaliation case, the Court observed that the factual dispute boiled down to an allegation from the plaintiffs (disgruntled softball parents) that defense witnesses (the school) were lying about the motivations for their actions. The Court observed that challenges to a witnesses credibility alone without proof from independent facts is insufficient to survive summary judgment. Springer, 518 F.3d at 484. The Court further observed that the timing of events was likewise insufficient to create a genuine issue of material fact because the circumstantial evidence relied upon was totally unremarkable and occurred in high schools around the nation. Springer, 518 F.3d at 485.

Plaintiff's claim is that after he filed lawsuits, his transfer was retaliation for his lawsuits. However, prison officials must be allowed to transfer inmates irrespective of any lawsuits filed by the inmates. It strains credulity to conclude Defendants would risk discipline and possible discharge from employment to harass Plaintiff for filing a lawsuit.

Plaintiff has failed to meet his burden of proving any of Defendants' actions were substantially motivated by his lawsuits. Defendants should be found not liable for retaliation.

## II. Defendants Walker, McCann, Garnett, and Merchant were not personally involved in the decision to transfer the Plaintiff to Tamms Correctional Center.

As evidenced by the transfer documents and the affidavits, Defendants Walker, McCann, Garnett, and Merchant were not personally involved in the decision to transfer the Plaintiff to Tamms. (Facts # 8-21, 22, 23, 26, 28). Defendant Pierce recommended the Plaintiff be placed at Tamms, Defendant Orr approved the recommendation, and Defendant Frey approved his placement after he had been transferred. (Facts 8-21). By Plaintiff's own admission, Defendant Garnett was not involved in his transfer to Tamms. (Fact 28). As such, Defendants Walker, McCann, Garnett, and Merchant lacked the requisite personal involvement to be held liable for transferring the Plaintiff to Tamms Correctional Center.

## III. The Defendants are entitled to qualified immunity for the damages portion of Count 2 of Plaintiff's Complaint.

The plaintiff is seeking compensatory and punitive damages against the Defendants for transferring him to Tamms without due process. Plaintiff was transferred to Tamms on January 10, 2006. (Fact #6). On June 13, 2005, the Supreme Court ruled that inmates may have a protected liberty interest in avoiding placement at a supermaximum correctional facility depending on the specifics of each state's system. Wilkinson v. Austin, 125 S.Ct. 2348 (June 13, 2005). On September 6, 2005, the Seventh Circuit Court of Appeals held that inmates may have a protected liberty interest in avoiding placement at Illinois' supermaximum security facility at Tamms and remanded that case to the trial court for further proceedings. Westefer v. Snyder, 422 F.3d 570 (Sept. 6, 2005). Both cases were

announcing new law that either changed what had been previously established or addressed issues that had not been previously ruled on.  See Westefer at 586 (recognizing that Wilkinson offered new guidance not previously available to lower courts.).

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738, 457 U.S. 817, 818 (1982).  To determine if an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established.  Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155 (2001).  The second prong must be undertaken in light of the specific context of the case, not as a broad general proposition.  Id. at U.S. 201, S.Ct. 2156.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.  Id. at U.S. 202, S.Ct. 2156.  An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity.  Id. at U.S. 205, S.Ct. 2158.

In this matter, not only was it not clearly established that plaintiffs had a protected liberty interest in avoiding placement at Tamms Correctional Center at the time they were placed there, it is still not clearly established.  The Seventh Circuit left the question open for the trial court in Westefer.  Because the defendants could not have known they were required to provide due process prior to placing plaintiff at Tamms, they are entitled to qualified immunity from damages on Count 2 of plaintiff's complaint.

**IV.    The Plaintiff's claims for injunctive relief in count two of his Complaint should be dismissed because they are already being resolved as part of a class action suit.**

In addition to damages, the plaintiff seeks to enjoin the defendants from continuing to house him at Tamms without due process.  This issue is already being resolved in another case.  After the Seventh Circuit remanded the Westefer case, the court granted the plaintiffs' motion for class certification.  The court found certification appropriate under Federal Rule of Civil Procedure 23(b)(1) and (b)(2) on the issues of declaratory and injunctive relief against housing inmates at Tamms without due process.  (See Westefer v. Snyder, S.D. 00-162-GPM, Document No. 156).  The class was defined as "All inmates who have been transferred to Tamms Correctional Center since January 1, 1998, and all prisoners who will be transferred to Tamms in the future."  Id.  The plaintiffs are members of that class.  Members of a class may only opt out if the class was certified under Rule 23(b)(3).  Air Line Stewards and Stewardesses Ass'n Local 550, TWC, AFL-CIO v. American Airlines, Inc., 490 F.2d 636, 642 (7th Cir. 1973).  Members of a class certified under Rules 23(b)(1) and (b)(2) are bound by the class.  Id.

Plaintiffs claims for injunctive relief will be decided in the Westefer case.  This Court should not entertain those same claims.  See Reese v. Chicago Police Department, 602 F.Supp. 441, 442 (N.D. Ill. 1984), citing Goff v. Menke, 672 F.2d 702, 704 (8th Cir. 1982)(Noting that Rule 23's purpose of avoiding duplicative cases and inconsistent decisions is thwarted if class members can file separate suits for injunctive relief.).  The plaintiff's claims for injunctive relief regarding their due process rights should be dismissed without prejudice.

WHEREFORE, for the foregoing reasons, the Defendants respectfully request the

Court to enter summary judgment in their favor.

Respectfully submitted,

ROGER E. WALKER, JR., JASON GARNETT, R. SHELTON FREY, TERRY MCCANN, JAY MERCHANT, RICK ORR, GUY PIERCE,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois,

Attorney for Defendants,

By:_____s/ Matthew Lurkins_____
          Matthew Lurkins, #6286756
          Assistant Attorney General
          500 South Second Street
          Springfield, IL  62706
          Telephone:  (217) 782-9014
          Facsimile:  (217) 524-5091
          _____mlurkins@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2008, I electronically filed the foregoing Motion for Summary Judgment and Memorandum in Support with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on June 6, 2008, I mailed by United States Postal Service, the document to the following non-registered participants:

Christopher Knox, #B-61090
Tamms Correctional Center
P.O. Box 400
Tamms, IL 62988

Respectfully submitted,

s/ Matthew Lurkins
Matthew Lurkins, #6286756
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 782-9014
Facsimile: (217) 524-5091
mlurkins@atg.state.il.us

1               UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF ILLINOIS
2                  PEORIA DIVISION

3  CHRISTOPHER KNOX,          )
                      )
4        Plaintiff,    )
                      )
5      vs.            )   No. 07-1032
                      )
6  ROGER WALKER, et al.,   )
                      )
7        Defendants.   )

8

9                  DEPOSITION

10    The deposition of CHRISTOPHER KNOX was taken pursuant

11  to Notice and pursuant to the Federal Rules of Civil

12  Procedure pertaining to the taking of depositions, taken

13  before Retha R. Meyerhoff, CSR, and a Notary Public in and

14  for Randolph County, Illinois, taken at Tamms Correctional

15  Center, same being located at 200 Supermax Road, Tamms,

16  Illinois, on Thursday, April 10, 2008, beginning at

17  approximately 12:05 p.m.

18

19

20

21

22

23        RETHA R. MEYERHOFF, CSR #084-002901
                 P.O. Box 263
24              Percy, IL  62272

1                          I N D E X

2                                                    PAGE

3    DIRECT EXAMINATION BY MR. LURKINS . . . . . . . . .    3

4

5

6

7

8

9

10

11

12                        APPEARANCES:

13    MR. CHRISTOPHER KNOX              MR. MATTHEW LURKINS
      Tamms Correctional Center        Assistant Attorney General
14    200 Supermax Road                   500 South Second Street
      Tamms, IL  62988                 Springfield, IL  62706
15    Pro se                           On behalf of Defendants

16

      Also in attendance:  C.O. Hunsaker
17                         C.O. Watkins

18

19

20

21

22

23

24

                                                            2

1                    CHRISTOPHER KNOX,

2   having been duly sworn, testified on his oath as follows:

3   DIRECT EXAMINATION (By Mr. Lurkins):

4       Q.  Mr. Knox, like I said off the record, my name is

5   Matt Lurkins.  I am with the Attorney General's Office, and

6   I represent the defendants in this matter.

7           Are you on any medications today that would affect

8   your ability to tell the truth or remember everything

9   correctly?

10      A.  Currently, no.

11      Q.  Okay.  And we are here on Knox versus Roger Walker,

12  et al., Civil Action 07-1032?

13      A.  Yes.

14      Q.  Okay.  And that just reminds me.  Have you had your

15  deposition taken before?

16      A.  Yes.

17      Q.  Okay.  So you do know we have to answer out loud so

18  she can take everything down?

19      A.  Yes.

20      Q.  Okay.  And also "uh-huhs" and "huh-uhs" don't work

21  because they can get confused on the record.  Okay?

22      A.  I am familiar with that.

23      Q.  All right.  I just want to get some background

24  information on you.  How old are you, Mr. Knox?

                                                    ·3

1      A.   Thirty-two.

2      Q.   Thirty-two?

3      A.   Yeah.   Yes.

4      Q.   Okay.   And how old were you when you were first

5  incarcerated?

6      A.   Excuse me?

7      Q.   How old were you when you were first incarcerated?

8      A.   Nineteen.

9      Q.   Okay.   And have you been incarcerated the whole

10  time since then?

11      A.   Yes.

12      Q.   Okay.   And where were you first taken when you were

13  incarcerated?   What facility?

14      A.   Joliet Correctional Center.

15      Q.   Okay.   And how long were you there?

16      A.   Approximately about two, one to two weeks.

17      Q.   Okay.   And what year was that that you were

18  incarcerated?

19      A.   1994.

20      Q.   And after Joliet where did they take you?

21      A.   Pontiac Correctional Center.

22      Q.   Okay.   How long were you there?

23      A.   From '94 to approximately '96.

24      Q.   Okay.   And where were you transferred next?

4

1  A. Western Illinois.

2  Q. Okay.  And how long were you there?

3  A. Approximately about two to four months.

4  Q. Okay.  So still be in 1996 then?

5  A. Yes.

6  Q. And then where were you taken?

7  A. Shawnee Correctional Center.

8  Q. And how long were you there?

9  A. I would say approximately about eighteen months.

10  Q. Okay.  So sometime in 1997 you were transferred?

11  A. Right.

12  Q. Okay.  And where did you go then?

13  A. Menard Correctional Center.

14  Q. How long were you at Menard?

15  A. From October of 1997 till probably March or April

16 of 1999.

17  Q. Okay.  And where were you transferred then?

18  A. Hill Correctional Center.

19  Q. How long were you at Hill?

20  A. From, again, from March or April of 1999 to like

21 August 25 of 1999.

22  Q. Any particular reason you know the exact date of

23 that one?

24  A. What?  That I was transferred?

5

1      Q.  Yes.  You said it was August 25, 1999?

2      A.  That's when was I transferred from Hill

3  Correctional Center to Stateville Correctional Center.

4      Q.  Okay.  And how long were you at Stateville?

5      A.  From August 25, 1999, to February 21 of 2001.

6      Q.  Okay.  And then where were you transferred?

7      A.  Pontiac Correctional Center.

8      Q.  You have been just about everywhere, haven't you?

9      A.  Yeah.

10     Q.  And how long were you at Pontiac this time?

11     A.  From February 21, 2001, till May 26 of 2004.

12     Q.  Okay.  And where were you transferred then?

13     A.  Back to Stateville Correctional Center.

14     Q.  And how long was your stay at Stateville this time?

15     A.  From May 26, 2004, to November 29 of 2005.

16     Q.  Okay.  Then where were you transferred?

17     A.  Back to Pontiac.

18     Q.  Okay.  How long was your stay at Pontiac this time?

19     A.  From November 29 to January 10 of 2006.

20     Q.  So November 29, 2005, to January -- what was the

21  date?

22     A.  January 10, 2006.

23     Q.  Okay.  And then where were you transferred?

24     A.  Tamms Correctional Center.

6

1      Q.   Okay.  And have you been at Tamms ever since?

2      A.   No.  I was transferred again out of Tamms.

3      Q.   Okay.  When were you transferred from Tamms?

4      A.   February 2 of 2006.

5      Q.   So you were there less than a month?

6      A.   Right.

7      Q.   Or here less than a month I should say.  And where

8   did you go then?

9      A.   Menard Correctional Center.

10     Q.   Okay.  And how long were you there at Menard

11  that time?

12     A.   From February 2 of 2006 to like March 28 of or 29

13  of 2006.

14     Q.   Okay.  And where were you transferred after that?

15     A.   Dixon Correctional Center.

16     Q.   And how long was your stay at Dixon there?

17     A.   From, I think, March 28 or 29, 2006, to like

18  April 14, 2006.

19     Q.   Okay.  And where were you transferred next?

20     A.   Back to Tamms.

21     Q.   And where were you transferred next?

22     A.   That was it.

23     Q.   We're done?

24     A.   Yes.

7

1     Q.   So from April 14, 2006, to the present day you have

2  been at Tamms Correctional Center?

3     A.   Yes.

4     Q.   Okay.  And it's my understanding that to get

5  transferred at Tamms it is a disciplinary problem.  Is that

6  your understanding of it?

7     A.   Yes.

8     Q.   Okay.  What happened at Dixon that got you

9  transferred to Tamms on April 14, 2006?

10    A.   Well, actually I was still under the jurisdiction

11 of Tamms Correctional Center when I was transferred to Dixon

12 for a mental and medical evaluation.

13    Q.   Okay.  But you came from Menard to Dixon; isn't

14 that right?

15    A.   Right.

16    Q.   So were you still under the Tamms jurisdiction when

17 you were at Menard?

18    A.   Yes, I was.

19    Q.   Why did you get sent to Menard?

20    A.   More medical and mental health evaluations.

21    Q.   So they sent you to Menard for medical and mental

22 evaluations and then to Dixon for mental and medical

23 evauations?

24    A.   Yes.

8

1      Q.   Okay.   But you were always considered -- Tamms was

2   your parent institution?

3      A.   Correct.

4      Q.   So your original transfer to Tamms?

5      A.   Was January 10, 2006.

6      Q.   Okay.   What happened preceding that transfer to

7   Tamms?

8      A.   I was in Pontiac Correctional Center prior to being

9   transferred to Tamms.

10      Q.   Right.   And what event caused you to be transferred

11   to Tamms?

12      A.   To this day I don't know still why I was

13   transferred to Tamms.

14      Q.   Did you receive any tickets around that time?

15      A.   No, I did not.

16      Q.   Did you receive any tickets at all while you were

17   at Pontiac Correctional Center from November 29, 2005, to

18   January 10, 2006?

19      A.   Not that I know of, no.   Yeah.   Yeah.   Yes, I did.

20   Yes, I did.   I received one for unauthorized property.   They

21   said they found some cigarettes in my legal documents.   And

22   then I received another one for, I think, intimidation and

23   threat.

24      Q.   Do you remember when you received the unauthorized

9

1    property ticket?

2        A.   It was probably on the day of my transfer from

3    Stateville to Pontiac Correctional Center when they was

4    inventorying my personal property.

5        Q.   So that would have been somewhere January 10, 2006?

6        A.   No.   It was somewhere in between, anywhere between

7    November 29, between when I received my property which was

8    in December of 2005.

9        Q.   Okay.   I thought your testimony was that they

10   checked your property when they were transferring you to

11   Tamms; is that right?

12       A.   Yeah.   The personal property at Pontiac

13   Correctional Center did.

14       Q.   Okay.   So your time that you were at Pontiac, did

15   you already know that you were going to Tamms?   Had it

16   already been decided?

17       A.   No.

18       Q.   Then I am confused.   When did they check your

19   property and find the cigarettes?

20       A.   In Pontiac Correctional Center.

21       Q.   Okay.   Do you remember any dates?

22       A.   No.

23       Q.   Okay.   And when did you receive the intimidation or

24   threat ticket?

10

1      A.   Somewhere in December.  I received both of those

2   tickets somewhere in December of 2005.

3      Q.   Okay.

4      A.   In Pontiac Correctional Center.

5      Q.   And it's my understanding that Pontiac Correctional

6   Center is a segregation or protective custody facility; is

7   that right?

8      A.   To my understanding, yes.

9      Q.   Okay.  Why were you at Pontiac from February 21,

10  2001, to May 26, 2004?

11     A.   Why was I there?

12     Q.   Yes.

13     A.   For disciplinary reasons.  I have been in

14  disciplinary segregation since 1999 so . . .

15     Q.   Okay.  Do you remember what date in 1999 that you

16  started, that you were placed in segregation?

17     A.   Somewhere in July, July 31, 1999.

18     Q.   And that was at Hill Correctional Center?

19     A.   Yeah.

20     Q.   Okay.  All right.  We have two claims left in this

21  lawsuit.  Is that your understanding as well?

22     A.   Yeah.

23     Q.   The first one is that you were transferred to Tamms

24  in retaliation for grievances and lawsuits?

                                                        11

1    A.  Yes.

2    Q.  And the second remaining claim is that the

3  defendants violated your due process rights in sending you

4  to Tamms; is that right?

5    A.  Yes.

6    Q.  Let's talk about the first claim, the retaliation

7  claim.  What grievances or lawsuits do you feel like you

8  were being retaliated for?

9    A.  Particularly all of them because I was transferred

10  to Tamms in retaliation due to my litigation activity.  I

11  have a long history of filing lawsuits and grievances

12  against the Illinois Department of Corrections.  So to

13  thwart my process of me litigating any of my lawsuits,

14  that's why I was transferred to Tamms.

15    Q.  Okay.  How many lawsuits have you filed outside of

16  the one that we are currently here for today?

17    A.  Multiple.

18    Q.  More than five?

19    A.  Yes.

20    Q.  More than ten?

21    A.  Yes.

22    Q.  More than fifteen?

23    A.  Yes.

24    Q.  More than twenty?

12

1    A. Yes.

2    Q. More than twenty-five?

3    A. No.

4    Q. Okay. So between twenty and twenty-five? Is that

5  fair?

6    A. Prior to this one, prior to this lawsuit I would

7  say it's been at that time approximately anywhere between

8  thirteen, fourteen lawsuits.

9    Q. Okay. So at the time before you were transferred

10  to Tamms it would be thirteen or fourteen lawsuits that you

11  filed?

12    A. Yeah. Again, in my original complaint at the time

13  I filed this lawsuit I had filed thirteen complaints prior

14  to this one.

15    Q. Okay. And had all thirteen of those occurred

16  before you were transferred to Tamms?

17    A. Yes.

18    Q. So none of them have occurred besides this one

19  while you were here at Tamms?

20    A. No.

21    Q. In this lawsuit you have sued Jason Garnett; is

22  that right?

23    A. Yes.

24    Q. And he is deputy director?

13

1        A.    Was he the deputy director?

2        Q.    Yes.

3        A.    Yes.

4        Q.    Okay.  And that's the capacity you sued him in?

5        A.    I sued him individually and physical capacity.

6        Q.    And he was the deputy director when you filed this

7   lawsuit, right?

8        A.    Right.

9        Q.    Okay.  And Shelton Frey?

10       A.    He was the warden.

11       Q.    Here at Tamms?

12       A.    Yes.

13       Q.    Okay.  And Jay Merchant?

14       A.    A warden.

15       Q.    Also a former warden here at Tamms?

16       A.    A former warden at Tamms.

17       Q.    Is that head warden?  Assistant warden?  Do you

18   know?

19       A.    Who?  McCann?

20       Q.    Merchant?

21       A.    Merchant?  He was the head warden.

22       Q.    Okay.  And the same for Frey?

23       A.    Yeah.

24       Q.    And Guy Pierce?

14

1        A.   Guy Pierce?  He the warden at Pontiac Correctional

2 Center.

3        Q.   At the time you were transferred to Tamms?

4        A.   Yes.

5        Q.   Okay.  And Rick Orr?

6        A.   He was the deputy director.

7        Q.   Okay.  And Terry McCann?

8        A.   He was the warden, head warden at Tamms.

9        Q.   At Tamms?

10       A.   Yeah.

11       Q.   And Roger Walker?

12       A.   The director.

13       Q.   Okay.  And have I listed every defendant you have

14 named in this lawsuit?

15       A.   As far as my original complaint, yes.

16       Q.   Okay.  And in these thirteen complaints that you

17 filed prior to being transferred to Tamms, were any of the

18 defendants in this lawsuit defendants in those lawsuits?

19       A.   Roger Walker would have been in one, several of

20 them.  I can't tell you which ones off the top, but he was

21 named as defendant in several of them.

22       Q.  Okay.  Any of the other ones?

23       A.   No.

24       Q.   So none of the other ones were defendants in your

15

1    prior lawsuits?

2        A.    No.

3        Q.    Okay.  Are all thirteen of your prior lawsuits

4    finished?  Are they closed cases or are they still pending?

5        A.    They were settled.

6        Q.    All thirteen have been settled?

7        A.    Yeah.

8        Q.    When you say "settled," does that mean that you

9    received a settlement from the Department of Corrections?

10       A.    Yes.

11       Q.    On every single one of them?

12       A.    Yes.

13       Q.    Would that be monetary settlements?

14       A.    Yes.

15       Q.    That you received?

16       A.    Yeah.  And a few of my privileges restored back.

17       Q.    So you received money or privileges back in

18   exchange for your dismissal of lawsuits against them?

19       A.    Right.

20       Q.    Were all of these complaints in federal court or

21   state court?

22       A.    Federal court.

23       Q.    Every single one of them in federal court?

24       A.    I would like to correct myself.  One of the

                                                              16

1    lawsuits was dismissed for failure to state a claim.

2        Q.  Okay.  So we have twelve settlements and one

3    dismissal?

4        A.  Right.

5        Q.  Do you remember which one was dismissed?

6        A.  That was the one against Pontiac Correctional

7    Center.  It was against Pontiac.  I can't remember, recall

8    the defendants.

9        Q.  Okay.

10       A.  There is one more.  There was another one that was

11   dismissed for failure to exhaust my administrative

12   remedies.  And that was against Menard Correctional Center

13   and that was in 1999.

14       Q.  Okay.  So we have eleven settlements and two

15   dismissals?

16       A.  Right.

17       Q.  Okay.  And do you remember the issues in every one

18   of those cases?

19       A.  Majority of my cases dealing with retaliation and

20   excessive force and deliberate indifferences.

21       Q.  Okay.  I want to go through all of the cases that

22   you have filed.  Is the best way to do it go through what

23   prison you were at at the time?  Would that help you

24   remember the issue?  Okay.  Did you file any lawsuits about

17

1    the time you were at Joilet Correctional Center?

2        A.  No.

3        Q.  Okay.  The first time you were at Pontiac from '94

4    to '96 did you file any lawsuits?

5        A.  No.

6        Q.  When you were at Western from '96 or in 1996?

7        A.  Well, we can skip over them.  My litigation

8    activity didn't start until 1999.

9        Q.  Okay.  That helps.  So you were at Menard

10   Correctional Center in March or April of '99.  Did you

11   file any lawsuits while you were there?

12       A.  No, not in Menard, but I filed a lawsuit against

13   Menard for an incident that occurred while I was in Menard

14   from back in October of 1997.  But I didn't file the lawsuit

15   until '99.  I was already out of Menard Correctional Center.

16       Q.  So if it happened in '97, did it happen at the

17   Shawnee Correctional Center?

18       A.  No.  It happened at Menard Correctional Center.

19       Q.  Okay.  And what was the issue in that case?

20       A.  Huh?

21       Q.  What happened in that case?

22       A.  I filed a lawsuit against -- I named the

23   superintendent and I think the warden and a couple of other

24   prison officials for failure to protect me from an inmate

18

1    assault.  So I filed a lawsuit.

2        Q.  Okay.  And could you tell me what the assault was?

3    What happened?

4        A.  I was assaulted by another inmate.

5        Q.  Who?

6        A.  I don't know his name.

7        Q.  Is there any reason he assaulted you?

8        A.  No.  No, not that I recall.

9        Q.  Was he your cellmate?

10       A.  Yes.

11       Q.  Were you injured from that?

12       A.  Yes, I was.

13       Q.  Okay.  What happened with that lawsuit?  Was that

14   one of them that was settled?

15       A.  No.  It was dismissed for failure to exhaust my

16   administrative remedies.

17       Q.  Okay.  What was your next lawsuit?

18       A.  My next one was against, against Hill Correctional

19   Center.

20       Q.  Okay.  Let me back up one second.  On the lawsuit

21   on the assault at Menard, was Roger Walker a defendant in

22   that case?

23       A.  No.

24       Q.  Were any of the defendants in this present case a

19

1  defendant in that case?

2        A.  No.

3        Q.  Okay.

4        A.  Roger Walker wasn't even part of the Illinois

5  Department of Corrections then.

6        Q.  Right.  All right.  So the next issue was at Hill

7  Correctional Center?  Your next lawsuit?

8        A.  Yes.

9        Q.  And what was the issue in that lawsuit?

10        A.  Retaliation.

11        Q.  Okay.  Who were the defendants in that lawsuit?

12        A.  Snyder, director, the warden, and one of the

13  defendants that was, that I sued in Menard Correctional

14  Center.  That was where the retaliation came in.

15        Q.  What was the retaliation?

16        A.  Huh?

17        Q.  What was the retaliation?

18        A.  He retaliated against me for my litigation

19  activities against him from the lawsuit that I filed against

20  him.

21        Q.  Who was that?

22        A.  Mark Pierson.

23        Q.  How did he retaliate against you?

24        A.  He falsely accused me of disciplinary charges in

20

1    retaliation.  Basically he said I assaulted another inmate.

2    And that was the reason why I have been placed in

3    segregation.

4         Q.  Okay.  What inmate were you accused of assaulting?

5         A.  I don't, can't recall his name off the top.  I

6    can't recall his name at all.

7         Q.  Okay.  Did you go to the adjustment committee for

8    that disciplinary report?

9         A.  Yes, I did.

10        Q.  And what was the adjustment committee finding?

11        A.  I think they gave me a year across the board.  A

12   year segregation, year C-Grade, I think some commissary

13   denial, some stuff.  I can't remember off the top.  But I

14   know they gave me segregation time.  And they revoked my

15   good time for that.

16        Q.  Okay.  And what happened with that lawsuit?

17        A.  That was settled.  That was part of the universal

18   settlement.

19        Q.  So when you say "universal settlement," there were

20   more than one lawsuit settled at one time?

21        A.  Right.

22        Q.  We will get to that later.  What was your next

23   lawsuit after the Hill Correctional Center one?

24        A.  Against Stateville.

21

1      Q.   Okay.   What was the issue in that one?

2      A.   Excessive force and deliberate indifference.

3      Q.   And when did these events occur?

4      A.   2000.

5      Q.   When did you file the lawsuit?

6      A.   Around about 2001.

7      Q.   And were any of the defendants in this current

8   lawsuit a defendant in that lawsuit?

9      A.   No.

10      Q.   Okay.   And it was excessive force.   I am assuming

11   that you claimed that an officer or staff used excessive

12   force?

13      A.   Staff, warden, director.

14      Q.   Okay.   And who exactly used excessive force on you?

15      A.   Correctional officers, Stateville correctional

16   officers.

17      Q.   Do you remember which one?

18      A.   No.   I don't have any of those documents with me.

19      Q.   Okay.   And you said you sued the deputy director

20   and warden?

21      A.   No.   Director.

22      Q.   The director at the time was Snyder?

23      A.   Right.

24      Q.   And who was the warden at that time?   Do you

                                                    22

1   remember?

2        A.   At Stateville?

3        Q.   Yes.

4        A.   I think Bradley.  Warden Bradley, Kenneth Bradley.

5        Q.   Bradley?

6        A.   Yeah.

7        Q.   Okay.  And your next lawsuit?

8        A.   I think 2002, 2001, 2002 against Stateville.

9        Q.   What was the issue in that one?

10       A.   Same thing, excessive force and deliberate

11   indifference.

12       Q.   And there weren't any -- any defendants in this

13   case were not defendants in that case, were there?

14       A.   No.

15       Q.   Okay.  What was your next lawsuit?

16       A.   Oh, I had it right here.  Yeah.  My first lawsuit I

17   filed was Knox versus Pierson.  I filed that in 1999.  That

18   was against Menard Correctional Center.  My second lawsuit

19   was filed titled Knox versus Pierson again.  That was filed

20   in 2001 also as well.  Then my third lawsuit was titled

21   again Knox versus Pierson.  That was also filed in 2001.

22   They all dealing with excessive force, failure to protect,

23   retaliation.  All three of those cases was dealing with

24   that.  And they included, those cases included correctional

1    officers, superintendent, the warden, and former Director

2    Snyder.

3        Q.   Okay.   Thank you.   And --

4        A.   My fourth case was titled Knox versus Byrant.   That

5    was filed in 2002 against Stateville.

6        Q.   And that was for excessive force as well?

7        A.   Yeah, and deliberate indifference and due process.

8        Q.   And what was the outcome of that case?   The Knox

9    versus Byrant?

10        A.   It was settled.

11        Q.   And that was part of the universal settlement?

12        A.   Right.

13        Q.   And when did that universal settlement happen?

14        A.   Somewhere around about, somewhere around 2003,

15    yeah, 2003.

16        Q.   Okay.   And if I have my time line correct here, you

17    were at Pontiac at the time?

18        A.   Right.

19        Q.   Okay.   And that settled all of your lawsuits at

20    that time?

21        A.   That settled with the Knox versus Byrant and Knox

22    versus Hawkins case and Knox versus Pierson and the Knox

23    versus Wainscott cases were all included in one big

24    settlement.

                                                        24

1       Q.   Okay.   We've talked about a lot of lawsuits there.

2   I am going to try to keep them as straight as we can.   So

3   after the Knox versus Byrant case, what was your next

4   lawsuit after that?

5       A.   The Knox versus Hawkins case.

6       Q.   Okay.   And where did that come from?

7       A.   Stateville.

8       Q.   Stateville?

9       A.   That was in 2002.

10      Q.   Okay.

11      A.   Same thing, excessive force and deliberate

12   indifference, due process.

13      Q.   Okay.   And, again, were there any of the defendants

14   from this case that were --

15      A.   Only Snyder.   None of the defendants that is named

16   in this case was a defendant in those cases I am talking

17   about now.

18      Q.   Okay.   All right.   What was your next case?

19      A.   Knox versus Wainscott.

20      Q.   Do you know how to spell that?   Wainscott?

21      A.   W-A-I-N-S-C-O-T-T.

22      Q.   Thank you.   And what year was that one?

23      A.   2003.

24      Q.   That was out of Stateville as well?

25

1          A.   Yes.

2          Q.   What was the issue in that one?

3          A.   Excessive force and deliberate indifference and

4     due process.

5          Q.   And, again, same question, were there any

6     defendants from this lawsuit that we are currently here for

7     defendants in that one?

8          A.   No.

9          Q.   And that one was settled as well?

10         A.   Yeah.

11         Q.   And that was part of the universal settlement?

12         A.   (Witness nods head.)

13         Q.   Yes?

14         A.   Yes.

15         Q.   Okay.   What was your next lawsuit?

16         A.   Knox versus Spencer.

17         Q.   Spencer?

18         A.   Yeah.

19         Q.   What year was that one?

20         A.   2003.

21         Q.   And where was that one out of?

22         A.   Pontiac Correctional Center.

23         Q.   What was the issue in that one?

24         A.   Retaliation.

26

1    Q.   And were any of the defendants in this current

2    lawsuit a defendant in that lawsuit?

3    A.   Yes.

4    Q.   Okay.   Who?

5    A.   Roger Walker.

6    Q.   Is that all?

7    A.   Yeah.

8    Q.   Okay.   How was Roger Walker retaliating against

9    you?

10   A.   Well, actually I filed -- I was written a

11   disciplinary report in retaliation for me utilizing the

12   grievance procedure.   And as a director, he affirmed the

13   adjustment committee's decision from the ARB board.   So he

14   actually approved them retaliating against me for utilizing

15   the grievance procedure, so which would make him personally

16   involved in the incident.

17   Q.   Okay.   What happened with what lawsuit?

18   A.   I lost that in trial.

19   Q.   So that went to trial, and a jury came back in the

20   defendants' favor?

21   A.   Yes.

22   Q.   Okay.   What was your next lawsuit?

23   A.   Knox versus Carlton.

24   Q.   And what year was that one?

27



1      A.   2003.

2      Q.   And what institution was that out of?

3      A.   Pontiac.

4      Q.   And what was the issue?

5      A.   Excessive force, deliberate indifference, and

6   due process.

7      Q.   And was Roger Walker a defendant in that one?

8      A.   Yes, he was.

9      Q.   Were there any other defendants in this current

10   lawsuit that were defendants in that lawsuit?

11     A.   No.

12     Q.   And in what ways -- was Roger Walker involved in

13   the excessive force claim?

14     A.   No.

15     Q.   Was he involved in the deliberate difference claim?

16     A.   No.

17     Q.   Was he involved in the due process claim?

18     A.   Yes, he was.

19     Q.   Okay.  How did he violate your due process rights?

20     A.   Again, he approved the decision that was

21   recommended by the warden and the adjustment committee.

22     Q.   Through the ARB?

23     A.   Yeah.

24     Q.   Okay.  What was the outcome of that case?

28

1    A.   I think that was part of the settlement, too.

2    Q.   Okay.  All right.  What was your next lawsuit?

3    A.   Knox versus Fox.

4    Q.   What year was that?

5    A.   '06.

6    Q.   And we established the universal settlement

7    happened in 2003, right?

8    A.   Yes.

9    Q.   So this one was not part of the universal

10   settlement?

11   A.   I think so.  Yeah.

12   Q.   It was part of the universal settlement?

13   A.   Yeah.

14   Q.   So the universal settlement didn't happen until at

15   least '06 then?

16   A.   Right.

17   Q.   Do you remember when it happened?  What year?

18   A.   No.  Universal settlement happened regarding those

19   cases was in '03.  It was in 2003.

20   Q.   Okay.  Here is my question.  Was Knox versus Fox

21   part of the universal settlement?

22   A.   No.  No.

23   Q.   Okay.  Thank you.

24   A.   I was speaking on the Knox versus Carlton case.

29

1      Q.  Okay.  Where was Knox versus Fox?  What institution

2  was that?

3      A.  Stateville.

4      Q.  Okay.  And what was the issue in that one?

5      A.  Deliberate difference.

6      Q.  Is that all?

7      A.  Yeah.

8      Q.  And was Roger Walker in involved in that lawsuit?

9      A.  Yes, he was.

10     Q.  Were any of the other defendants in this current

11  lawsuit --

12     A.  No.

13     Q.  Let me finish the question and you answer it.

14  Okay?  Were any of the other defendants in this lawsuit a

15  defendant in Knox versus Fox?

16     A.  No.

17     Q.  Okay.  And was it deliberate indifference to a

18  serious medical need?

19     A.  Yes.

20     Q.  How was Roger Walker involved in that one?

21     A.  He was deliberate indifference to my serious

22  medical need.

23     Q.  Okay.  Was it through the ARB again?  Through the

24  grievance process?

30

1  A. Yes.

2  Q. Is that the only way?

3  A. Right.  Not only that, he had actual knowledge of

4 my medical condition.

5  Q. Okay.  And what was the outcome of that lawsuit?

6 Knox versus Fox?

7  A. Still pending.

8  Q. Still pending?

9  A. (Witness nods head.)

10  Q. Have there been -- at what stage is that lawsuit?

11 Have there been dispositive motions?

12  A. They real close to coming to settlement.

13  Q. You're talking settlement on that one as well?

14  A. Yeah.  We are talking settlement.

15  Q. Is the Attorney General's Office handling that

16 case?

17  A. (Witness nods head.)

18  Q. Who is the Assistant General on that one?  Do you

19 know?

20  A. James Doran.

21  Q. Can you spell the last name?

22  A. D-O-R-A-N.

23  Q. Is he out of the Chicago office?

24  A. Yes.

31

E-FILED
Friday, 06 June, 2008 12:04:28 PM
Clerk, U.S. District Court, ILCD

1    Q.  Sorry.  Do we have another lawsuit after this one?

2    A.  Yeah.

3    Q.  Okay.  What is your next lawsuit?

4    A.  Knox versus Cox.

5    Q.  C-O-X?

6    A.  Yeah.

7    Q.  You like the rhyming lawsuits, huh?  What year was

8  that one?

9    A.  That was in 2005.

10   Q.  Okay.

11   A.  And I forgot.  That was dismissed, too, for failure

12  to state a claim.

13   Q.  And we got a little out of line there.  Knox versus

14  Fox was '06, and Knox versus Cox is 2005?

15   A.  Right.

16   Q.  And it was dismissed?

17   A.  Right, for failure to state a claim.  That was out

18  of Pontiac.

19   Q.  What was the issue on that one?

20   A.  Deny me access to the courts and retaliation.  And

21  Roger Walker was a defendant in that case as well.  And none

22  of the other defendants wasn't involved.

23   Q.  All right.  And how was Roger Walker involved?

24   A.  Huh?

32

1        Q.    How was Roger Walker involved in the Knox versus

2    Cox case?

3        A.    He approved the policy to deprive me grievance

4    procedures, and also he issued order for me, actually he

5    retaliated against me due to my litigation activities,

6    utilizing the grievance procedures and previous lawsuits

7    that was filed against him.

8        Q.    How did he retaliate?

9        A.    Again, by denying access to the grievance forms to

10   file grievances which also denied me access to the courts.

11       Q.    Okay.  And that one was dismissed?

12       A.    For failure to state a claim.

13       Q.    Was that dismissed by the judge?

14       A.    Yeah.  By the judge.

15       Q.    Okay.  All right.  And your next lawsuit was Knox

16   versus Fox which we have already talked about.  And do we

17   have another one after that?

18       A.    Yeah, Knox versus Michel, Lieutenant Michel.

19       Q.    Can you spell that?

20       A.    M-I-C-H-E-L.

21       Q.    Okay.  And what institution is that one?

22       A.    Stateville.

23       Q.    What year was that?

24       A.    '06.

33

1     Q.   And what was the issue in that one?

2     A.   Excessive force and deliberate indifference.

3     Q.   Was Roger Walker a defendant in that one?

4     A.   No, not that I recall.

5     Q.   Any of the other defendants in this lawsuit that we

6     are currently here for a defendant in Knox versus Michel?

7     A.   No.

8     Q.   And is that one still pending as well?

9     A.   Yeah.  No.  That's been settled.

10    Q.   Settled?

11    A.   Yeah.

12    Q.   All right.  Do we have another lawsuit after Knox

13    versus Michel?

14    A.   Yeah.  Knox versus Schomig.  This one is out of

15    order, too, then again.  This was in '03.

16    Q.   Okay.  What was the Knox versus who?

17    A.   Schomig.

18    Q.   Can you spell that?

19    A.   S-C-H-O-M-I-G.

20    Q.   Okay.  And this was in '03?

21    A.   Yes.

22    Q.   Was this part of the universal settlement?

23    A.   No.

24    Q.   What institution did this one arise out of?

34

1      A.   Pontiac.

2      Q.   And what was the issue in this one?

3      A.   Denial of yard for six months and deliberate

4  difference and due process.

5      Q.   Was Roger Walker a defendant in that one?

6      A.   Yes, he was.  And none of the other defendants in

7  this current lawsuit wasn't a defendant.

8      Q.   Okay.

9      A.   Only Roger Walker.

10     Q.   And is this -- what happened with that case?

11     A.   I voluntarily dismissed that.

12     Q.   Okay.  All right.  Your next lawsuit after Knox

13  versus Schomig?

14     A.   Knox versus Robinson.  That was in '04.

15     Q.   Okay.

16     A.   Against Stateville.

17     Q.   Was Roger Walker a defendant in that one?

18     A.   No.

19     Q.   Any of the other defendants in this case --

20     A.   No.

21     Q.   -- defendants in that one?

22     A.   No.

23     Q.   And what was the outcome of that case?

24     A.   Settlement.

35

1      Q.  That wasn't part of the universal settlement

2  though?

3      A.  Yeah.

4      Q.  It was?  Okay.  So the universal settlement

5  happened in 2004?  I am just trying --

6      A.  We talking about two different times on settlement

7  now.  That's what I was trying to explain to you.  The Knox

8  versus Byrant and the Knox versus Hawkins case was

9  originally supposed to be settled which included the Knox

10  versus Pierson case, the Knox versus Wainscott case, and the

11  Knox versus Carlton case.  And those cases was closed in

12  2003.

13      Q.  Okay.

14      A.  The second settlement came which included Knox

15  versus Michel and Knox versus Robinson case.  Both of those

16  cases was settled.  So those two -- those two cases, the

17  last two, wasn't part of the universal settlement.

18      Q.  Okay.  All right.  So the Knox versus Robinson case

19  was settled?

20      A.  Right.

21      Q.  It was settled along with the Knox versus Michel

22  case?

23      A.  Right, by themselves.  And that was in 2006 since I

24  have been back in Tamms.

36

1    Q.   All right.   And after -- we got kind of out of

2    order.   Do we have any other lawsuits that you have filed?

3        A.   Yeah, but it is not listed on here.

4        Q.   I am sorry.   What?

5        A.   Yeah.   I filed several other lawsuits after these

6    thirteen here, but is not listed on this complaint I got.

7        Q.   Okay.   So do you feel like the retaliation in

8    this -- your retaliation was being sent to Tamms, correct,

9    in this lawsuit?

10       A.   Right.

11       Q.   Okay.   Do you feel like you were sent to Tamms

12   because of these lawsuits that we have talked about?

13       A.   Not just the lawsuits pro se itself, I was sent to

14   Tamms basically in retaliation due to my litigation

15   activities period; not only due to my litigation activities,

16   but due to me assisting other inmates in their legal

17   activities, due to my grievances.   Basically I was sent to

18   Tamms for me complaining about my condition of confinement

19   basically.

20       Q.   Okay.   So it wasn't any particular lawsuit?   Just

21   your overall activity of litigating and helping other

22   inmates litigate?

23       A.   And then not only that, a particular incident

24   happened in October 21, 2005, against Stateville

37

1    Correctional Center where I was jumped on by four

2    correctional officers in Stateville.

3        Q.    Okay.  Let's talk about that.  October 21, 2005?

4        A.    Right.

5        Q.    And this was immediately prior to you being sent to

6    Tamms or Pontiac?  I am sorry?

7        A.    Yeah.  This was prior to me being sent to Pontiac.

8        Q.    Okay.  What happened on October 21, 2005?

9        A.    I was assaulted by four correctional officers at

10    Stateville Correctional Center.

11        Q.    What were their names?

12        A.    I don't have them documents here with me.

13        Q.    Okay.

14        A.    But as a result of that, I filed a grievance

15    against them with the Springfield investigators.  And

16    Springfield investigators ordered State Police to conduct an

17    investigation into my allegations.  And as a result of that,

18    I was transferred from Stateville Correctional Center to

19    Pontiac Correctional Center in retaliation of me pressing

20    criminal charges against the four officers that was involved

21    in jumping on me.

22        Q.    Why did the officers assault you?

23        A.    Well, actually it was based on some activities that

24    my little brother had did when he was in Stateville.  They

38

1    said he supposed to have assaulted some correctional officer

2    while he was in Stateville Correctional Center.  And one of

3    the officers is the one that he allegedly supposed to have

4    assaulted.  So he was -- basically he jumped on me in

5    retaliation for allegedly what my little brother had done to

6    him.

7        Q.   What is your little brother's name?

8        A.   Corey Knox.

9        Q.   Did your little brother -- did Corey Knox assault

10   an officer while he was at Stateville?

11       A.   I wasn't in Stateville Correctional Center at the

12   time he allegedly supposed to did this.  So I don't know if

13   he did or not.

14       Q.   Have you talked to him since?

15       A.   Yeah.  I talked to him, but I haven't talked to him

16   regarding this incident here.

17       Q.   Okay.  So you filed a grievance with Springfield.

18   How did you go about doing that?

19       A.   I filed -- I filled out the grievance, wrote out

20   the grievance, and sent it directly to the counselor.  The

21   counselor didn't respond.  So I wrote it again and sent it

22   directly to the Springfield investigators.  Springfield

23   investigators sent a lie detector examiner down there.  I

24   took a polygraph test.  And I never got -- they said the

                                                        39

 1    test came back inconclusive.  So after I took the polygraph

 2    test -- that was around about November 27 or 28.

 3       Q.  Of 2005?

 4       A.  Of 2005.  A couple of days after that I was

 5    transferred to Pontiac Correctional Center because of that

 6    grievance.

 7       Q.  Did they give an official reason?

 8       A.  Well, actually -- yeah.  Because of the complaint

 9    on my allegations that I made against the officers, they

10    felt it was necessary to separate me from them and them from

11    me.  So that's why I was transferred to Pontiac Correctional

12    Center.

13       Q.  Did you want that transfer?

14       A.  No, I did not.

15       Q.  You wanted to stay at Stateville?

16       A.  Yeah.

17       Q.  Were you transferred in segregation status?

18       A.  Yeah.  I have been in segregation status since '99.

19       Q.  So you were in segregation status the whole time

20    you were at Stateville as well?

21       A.  Yes.

22       Q.  Okay.  How was this October 21, 2005, incident

23    relevant to this lawsuit we are here for today?

24       A.  Because Roger Walker actually has knowledge of this

                                                              40

1  incident that when I was jumped on because I personally

2  wrote him about it and informed him, and he responded in

3  writing acknowledging it; and not only that, Springfield

4  investigator acknoweldged that he was aware of it.  So

5  that's how he got involved.

6      Q.  Okay.

7      A.  He knew that I filed the grievance.

8      Q.  And this happened in October of 2005.  And you

9  weren't transferred to Tamms until January 10, 2006; is that

10  right?

11      A.  Say what?  Excuse me?

12      Q.  Okay.  So this happened in October of 2005.  And

13  you were transferred to Tamms in January, 2006?

14      A.  Exactly.

15      Q.  And you feel like the transfer to Tamms was in

16  retaliation for you --

17      A.  My grievance writing, previous lawsuits that I

18  filed, me complaining about my condition of confinement.

19      Q.  Is that all?

20      A.  Yeah.

21      Q.  Okay.  And you feel like this came from Roger

22  Walker?  The order to transfer you?

23      A.  No.  I don't think he -- I know who transferred me

24  to Tamms.  Rick Orr -- Guy Pierce is the one that

41

 1   recommended me be transferred to Tamms.  And Rick Orr

 2   approved the transfer for me to be sent to Tamms.

 3        Q.  That's Guy Pierce, right?  He was warden at

 4   Pontiac at the time?

 5        A.  Right.

 6        Q.  Why did he transfer you?  Why did he recommend you

 7   be transferred to Tamms?

 8        A.  Again, I don't know.

 9        Q.  Okay.  So I am assuming you don't know why Rick Orr

10   approved it then?

11        A.  No.

12        Q.  Okay.  How is Jason Garnett a part of your transfer

13   to Tamms?

14        A.  Actually he not a part of my transfer to Tamms

15   because he didn't actually transfer or recommend I be

16   transferred.  Actually he, what make him personally

17   involved, he is continuing my placement in Tamms.

18        Q.  How is he continuing it?

19        A.  Because I was transferred to Tamms illegal without

20   no type of due process -- I didn't violate any new rules

21   that govern my selection for Tamms.  And he continues to

22   keep me in Tamms.  And I give him no reason why I was placed

23   in Tamms.

24        Q.  He was the warden at Tamms?

                                                         42

1      A.   Who?

2      Q.   Jason Garnett, right?

3      A.   No.  He was the deputy director.

4      Q.   Okay.

5      A.   Of Tamms.

6      Q.   Did you -- how would Jason Garnett know that you

7  were in Tamms?  Did you write him letters?

8      A.   Yes, I did.

9      Q.   Okay.  When did you write him a letter?

10     A.   When I first got to Tamms.

11     Q.   And that was in January of '06, right?

12     A.   Yes.  Somewhere around there, yeah.

13     Q.   So immediately when you got here, you wrote a

14  letter to Jason Garnett?

15     A.   Yes, I did.

16     Q.   Did you receive a response?

17     A.   Yes, I did.

18     Q.   What was your response?

19     A.   He said that I was appropriately placed in Tamms.

20     Q.   Do you still have that letter?

21     A.   Yes, I do.

22     Q.   Do you have that here with you today?

23     A.   No.

24     Q.   Okay.  Is that the only way Jason Garnett is

43

1  involved in this?

2      A.  Huh?

3      Q.  Is that the only way that Jason Garnett is involved

4  in the retaliation claim?

5      A.  Yes.

6      Q.  The due process claim?

7      A.  Yes.

8      Q.  Okay.  And Shelton Frey, he was the warden here at

9  Tamms, right?

10      A.  Yes.

11      Q.  He was the warden when you were transferred here in

12  January of 2006?

13      A.  Yes.

14      Q.  He was the head warden?

15      A.  Yes.

16      Q.  So he wasn't involved in the retaliation claim; is

17  that fair?

18      A.  No.

19      Q.  He is involved in the due process claim?

20      A.  Right.

21      Q.  And is that the same for Jason Garnett?  He is not

22  involved in the retaliation claim, right?  He is involved in

23  the due process claim?

24      A.  Right.

**44**

1    Q.   Okay.  And did you write him a grievance or a

2    letter?

3    A.   Let me take that back.  I am going to say they are

4    all involved in the retaliation claim because they knew I

5    was transferred to Tamms in retaliation due to my litigation

6    activities, and they failed to intervene and me being

7    retaliated against.  And by them failing not to transfer me

8    back out of Tamms would make them personally involved.  They

9    knew I was transferred to Tamms in retaliation due to my

10   litigation activities.

11   Q.   How did they know?

12   A.   Because I personally brought it to their attention;

13   not only that, Shelton Frey, he had knowledge, I got it in

14   writing that he had knowledge that I was inappropriately

15   placed in Tamms and that I haven't received a hearing since

16   prior to me being placed in Tamms or since I have been in

17   Tamms to contest my transfer to Tamms.  And he said, they

18   said I was transferred to Tamms due to my assaultive

19   behavior.  That is not one of their regulations or

20   procedures that require placement in Tamms.

21   Q.   Okay.  And when you say a regulation or procedure

22   that requires placement in Tamms, you are talking about

23   Illinois Unified Code of Corrections?

24   A.   Up under TWenty Illinois Administrative Code,

45

1    505.40(b), the regulation, yeah, the regulations for the

2    required placement in Tamms, up under administrative

3    regulations, placement at Tamms Supermax, up under Twenty

4    Illinois Administrative Code, 505.40(b) provide, inmate who

5    has engaged or may be planning to engage in the following

6    activities is eligible for transfer to Tamms Supermax of the

7    following:  For escape or attempt escape, two, assault which

8    cause death or serious bodily injury, three, engage in

9    dangerous disturbance, four, has influence in a gang, five,

10   engage in nonconsenual sex, and, six, possession of a

11   weapon.

12        Now, upon those regulations, I was told that I have

13   never violated any one of those regulation.  So, therefore,

14   I was sent to -- also, it goes to my theory that I was

15   transferred to Tamms in retaliation due to my litigation

16   activity because, if I wasn't transferred to Tamms under

17   none of those regulations, then there is no other choice I

18   was transferred to Tamms due to my litigation acitvities for

19   me complaining about my condition of my confinement.

20        Q.  Okay.

21        A.  My grievance writing, etc.

22        Q.  Isn't it true that you had approximately twenty-two

23   disciplinary reports for assault while in the Department of

24   Corrections prior to your transfer to Tamms?

46

1    A.   Yes.   And it is also true that none of those

2   alleged assaults did not result in death or serious bodily

3   injuries which is one of the regulations that requires

4   placement in Tamms.

5    Q.   Have you received any disciplinary reports for

6   possession of a weapon?

7    A.   Yes, I have.   I also served my time for that.   That

8   was back in 2005 -- I mean, not 2005, 1995, for possession

9   of a weapon while in a penal institution and then in 1997

10   which I was released from segregation.   I have been to

11   medium security facilities since then.   Those the only two

12   weapons I ever had.

13    Q.   And you are currently indeterminate segregation

14   status?

15    A.   Yes.

16    Q.   You have been in C-grade status until November 20,

17   2045?

18    A.   Right.   That's correct.

19    Q.   Okay.   And you were transferred to Tamms under

20   disciplinary segregation status; isn't that true?

21    A.   No.   They say I was transferred to Tamms because of

22   my assaultive behavior.

23    Q.   Right.   But you were in disciplinary segregation

24   status when you were transferred to Tamms?

47

1          A.    Yes, I was.

2          Q.    Okay.   And is Jay Merchant's involvement in this

3    lawsuit similar to what Shelton Frey's was?

4          A.    Yes.

5          Q.    And was Jay Merchant the warden after Shelton Frey

6    left?

7          A.    Yes.

8          Q.    And was he the head warden?

9          A.    Yes.

10         Q.    Did you write him any letters or grievances?

11         A.    Yes, I have.   I filed a grievance contesting my

12   placement in Tamms.   I channeled it through the

13   administrative review grievance procedure and he denied it.

14         Q.    Is Jay Merchant involved in the retaliation claim

15   though?

16         A.    Yes, he is.

17         Q.    Because he continued to keep you at Tamms?

18         A.    Not only that, he was aware that I was transferred

19   to Tamms in retaliation and he failed to intervene in that

20   retaliation by continuing to keep me here.

21         Q.    And how was he made aware?

22         A.    Through my grievance writing.

23         Q.    Okay.

24         A.    And not only that, I personally spoke with Jay

48

1    Merchant when he used to make his rounds complaining to him

2    about these incidents.

3         Q.   What would he say?

4         A.   He would say I was appropriately placed in Tamms.

5         Q.   And Guy Pierce was the one that originally

6    recommended you for placement in Tamms?

7         A.   Right.

8         Q.   So he is involved in the retaliation claim and the

9    due process claim?

10        A.   Right.

11        Q.   Rick Orr approved your transfer to Tamms which was

12   in retaliation?

13        A.   That's correct.

14        Q.   And Terry McCann?  How is he involved?

15        A.   Again, he was aware that I was transferred, he was

16   made aware that I was transferred to Tamms in retaliation

17   and he failed to intervene.

18        Q.   Okay.  Was he warden here at Tamms?

19        A.   Who?  Terry McCann?

20        Q.   Yes.

21        A.   Yes, he was.

22        Q.   Okay.  And did he come after Merchant?

23        A.   Yes, he did.

24        Q.   Are you aware of a class action lawsuit pending

49

1    about inmate placement at Tamms Correctional Center?

2        A.   No, I was not.

3        Q.   Are you currently aware?

4        A.   I am aware of it now.

5        Q.   Okay.  When did you become aware of that?

6        A.   I think sometime last year.  I think, yeah,

7    sometime last year or this year.  I received a letter from

8    Uptown saying the court certified the class action, and I am

9    a member of the class.

10       Q.   When you say "Uptown," what are you referring to?

11       A.   Well, the attorney that was representing the class

12   action, Alan Mills.

13       Q.   Did you send him a letter back?

14       A.   No.

15       Q.   Did you respond in any way?

16       A.   No.

17       Q.   Was the letter requesting anything from you?  Let

18   me ask you this first.  Is Alan Mills your lawyer?

19       A.   If I am a member of that class action, yes, he is

20   my lawyer.

21       Q.   All right.  But you're not represented in this case

22   that we are talking about here today?

23       A.   No.  I am pro se on this case.

24       Q.   Have we talked about everything that you have

50

1    claimed in your complaint up to this point?  We talked about
2    the retaliation and the due process.  Is there any other way
3    that the defendants have retaliated against you?

4        A.    Is there any other way they have retaliated?  Also,
5    I was retaliated, too, based on -- I suffer from a mental, I
6    suffer from a self-mutilation disorder.

7        Q.    Okay.

8        A.    And while I was in Pontiac Correctional Center I
9    was mutilating myself as a result of them not giving me
10   proper mental health treatment.  And I was inserting foreign
11   objects into my penis.  And I did that several times.  And
12   as a result of that, I was sent to the outside hospital for
13   surgery.  And in retaliation of me doing that on a constant
14   regular basis, I was also sent down here to Tamms for that
15   reason, too, as well.

16       Q.    Because you were inserting things in your penis?

17       A.    Right, which was also costing the Illinois
18   Department of Corrections finances for my surgery to have
19   foreign objects removed form my penis.

20       Q.    What were you inserting in your penis?

21       A.    I told you I suffer from a self-mutilating
22   disorder, foreign objects, spoons, anything that I can to
23   mutilate myself.

24       Q.    Are you receiving any mental health treatment while

51

1  your are here at Tamms?

2      A.   Since I have been back in Tamms, I have been denied

3  mental health treatment.

4      Q.   You have not seen a mental health professional at

5  all?

6      A.   Yeah.  I have seen them, but they deny me mental

7  health treatment.  And since I have been at Tamms, I have

8  mutilated myself.  I have hung myself as a result of the

9  conditions down here in Tamms.

10     Q.   Okay.  How often do you see a mental health

11 professional?

12     A.   Once a month.

13     Q.   Is it a doctor you see?

14     A.   No.

15     Q.   Who is it?

16     A.   A social worker.

17     Q.   What is this person's name?

18     A.   I saw all of them, Cheryl Couch, Katie Clover,

19 Christy.

20     Q.   So you are seeing these people.  How are they

21 denying you treatment?

22     A.   Because I suffer from a impulse control disorder.

23 I suffer from major depression.  And I also suffer from

24 self-mutilation disorder.  They know I suffer from the

52

1   disorders.  And they know my placement in Tamms is

2   accelerating my mental condition, making my conditions worse

3   than what they was.  And they refuse to provide me treatment

4   for that.

5       Q.  Have you ever been diagnosed by a doctor with an

6   impulse control disorder?

7       A.  Yes, I have.

8       Q.  Have you ever been diagnosed by a doctor with a

9   mutilation disorder?

10      A.  Yes, I have.

11      Q.  Have you ever been diagnosed by a doctor with

12  clinical depression?

13      A.  Yes, I have.

14      Q.  When were you diagnosed with the impulse control

15  order?

16      A.  2004, 2005.

17      Q.  Who diagnosed you with you that?

18      A.  Stateville mental health.

19      Q.  Is that a doctor diagnosed you?

20      A.  Yes, it was.

21      Q.  What was that doctor's name?

22      A.  I have a variety of doctors in Stateville.

23  Dr. Herzog was one of them.  Dr. Quan was another one.  And

24  Dr. Shunn is another one, one psychologist and two

                                                      53

1   psychiatrists.

2       Q.  And they all diagnosed you with an impulse control

3   disorder?

4       A.  Impulse control disorder.

5       Q.  Were they the same ones who diagnosed you with the

6   mutilation disorder?

7       A.  I didn't -- they diagnosed me with impulse control

8   disorder and depression.  The mutilation disorder occurred

9   after I was transferred out of Stateville into Pontiac when

10  I stopped, when they stopped providing mental health

11  treatments.  And the conditions in Pontiac accelerated my

12  illness, and as a result of that I started mutilating

13  myself, basically trying to kill myself.

14      Q.  You said the doctor diagnosed you with this

15  mutilation disorder.  Did a doctor at Pontiac diagnose you

16  with that?

17      A.  Well, it's in my mental health records.  So I

18  assume they did diagnose with me with that.

19      Q.  Okay.  So you did see a doctor in Pontiac at some

20  point?

21      A.  Yes, I have.

22      Q.  How many times did you see a doctor while you were

23  at Pontiac?

24      A.  Once.

54

1      Q.   One time?

2      A.   Yeah.  As far as institutional doctors, yeah, but I

3   was sent to the outside hospital several times for the

4   mutilation part.  And I seen doctors outside in the hospital

5   for surgery and stuff like that.

6      Q.   Those were surgeons?  They weren't mental health

7   professionals?

8      A.   Right.  Right.

9      Q.   How many times have you had surgery to remove

10  things from your penis?

11     A.   In Pontiac?  A total of three times in Pontiac,

12  once in Menard, and once down here.

13     Q.   Have you ever tried to commit suicide?

14     A.   Yes, I have.

15     Q.   How many times?

16     A.   Approximately, I would say, over ten times.

17     Q.   When did this start?

18     A.   I got a history.  I have a history of mental health

19  problems, so it goes back to my childhood so . . .

20     Q.   Did you first try to commit suicide before you were

21  put in the Department of Corrections?

22     A.   Yes, I have.

23     Q.   Did it start when you were a teenager or a child?

24     A.   Child.

55

1        Q.   Okay.   Were you receiving any mental health

2    treatment before you were incarcerated?

3        A.   As an adult.   I was receiving mental health

4    treatment when I was in juvenile as well, mental health

5    treatment.

6        Q.   Okay.   When were you in juvenile?

7        A.   From '89 to '93.

8        Q.   So did you go directly from juvenile to the

9    Department of Corrections?

10       A.   No.

11       Q.   Okay.   So you got out of juvenile sometime in

12   1993.   Do you remember when?

13       A.   March 19, '93.

14       Q.   And when did you commit your crime that got you

15   placed in the Department of Corrections?

16       A.   Committed my crime?   August 3, 1994.

17       Q.   Okay.

18       A.   When they say I committed the crime, August 3,

19   1994.

20       Q.   What crime were you incarcerated for?

21       A.   That's irrelevant.

22       Q.   So were you receiving mental health treatment when

23   you were in juvenile from '89 to '93?

24       A.   Yes.

56

1          Q.   Did you try to commit suicide while you were in

2     juvenile?

3          A.   No.

4          Q.   Did you try to commit suicide prior to being placed

5     in juvenile?

6          A.   Yes, I did.

7          Q.   Were you receiving any mental health treatment

8     prior to going to juvenile?

9          A.   No.

10         Q.   So you feel like the defendants retaliated since

11    you are at Tamms because of the costs of treating your

12    mental health disease along with the other legal issues?

13         A.   Yeah.   I was sent -- to sum it up, I was sent to

14    Tamms in retaliation for utilizing the grievance procedures,

15    assisting other inmates, basically due to my litigation

16    activities, and due to problematic behavior that was caused

17    by my mental illness, is the reason why I was transferred to

18    Tamms.

19         Q.   Okay.   Are you currently on any prescription drugs

20    for your mental illness?

21         A.   No.   I was discontinued from that.

22         Q.   Okay.   So my next question, have you ever been

23    placed on any prescription drugs for the mental health

24    disease?

57

1          A.   Yes, I was.

2          Q.   When was that?

3          A.   Again, I was diagnosed with my mental illness in

4     2004/2005.   That's when I was prescribed psychotropic

5     medicaton for my mental illness.

6          Q.   That was while you were in Pontiac?

7          A.   No.   That was while I was in Stateville.

8          Q.   Okay.   And that was when you were diagnosed with

9     depression and --

10         A.   Impulse control.

11         Q.   Impulse control?   What drugs did they put you on?

12         A.   They had me on Prozac and Thorazine.

13         Q.   Did those drugs help?

14         A.   Yeah, it was.

15         Q.   How long were you on those drugs?

16         A.   From 2004 to 2005 up until the time I returned back

17    to Tamms.   That was April 14 of 2006.   And then in August of

18    2006 they completely took me off my psychotropic medication.

19         Q.   Did a doctor recommend you be taken off the

20    psychotropic medication?

21         A.   Yeah.

22         Q.   What doctor was that?

23         A.   Dr. Chandra.

24         Q.   Spell that?

58

1       A.   C-H-A-N-D-R-A.

2       Q.   And that was here at Tamms?

3       A.   Yes.

4       Q.   Are you still under Dr. Chandra's care?

5       A.   No.

6       Q.   Are you under any doctor's care at this time?

7       A.   No.

8       Q.   Do you have any medical issues?

9       A.   Yes, I do.

10      Q.   What medical issues?

11      A.   I suffer from a seizure disorder.

12      Q.   Do you see a doctor for that?

13      A.   Yes.

14      Q.   How often?

15      A.   I supposed to see a doctor every four months during

16  the seizure clinic.

17      Q.   So do you see a doctor every four months at the

18  seizure clinic?

19      A.   Yeah, for medical reasons.

20      Q.   Are you on any medication for your seizures?

21      A.   He took me off of that, too, as well.

22      Q.   What medication were you on?

23      A.   Dilantin.

24      Q.   When did you start on Dilantin?

                                                        59

1      A.   2001 in Pontiac.

2      Q.   When did you -- when were you taken off Dilantin?

3      A.   April 14, 2006.

4      Q.   Did a doctor recommend you be taken off Dilantin?

5      A.   Yeah, down here.

6      Q.   What doctor was that?

7      A.   Dr. Powers.

8      Q.   When was the last time you had a seizure?

9      A.   Last Sunday.

10     Q.   What seizures disorder do you have?

11     A.   I suffer from grand mal seizures, causes me to go

12  into convulsions and shaking.

13     Q.   Last Sunday were you taken to the Healthcare Unit?

14     A.   No.

15     Q.   Did you receive any kind of medical treatment last

16  Sunday when you had your seizure?

17     A.   No.

18     Q.   Did you notify anybody that you had a seizure?

19     A.   Yes, I did.

20     Q.   Were you ever provided in writing why you were

21  placed Tamms Correctional Center?

22     A.   Yeah, by clinical service supervisor, and I got my,

23  some records saying that I was transferred to Tamms for my

24  assaultive behavior.

60

1        Q.   When did you receive that?

2        A.   Sometime last year.

3        Q.   Just in 2007?

4        A.   Yeah, sometime last year.

5        Q.   Did you request that information?

6        A.   Yes, I did.

7        Q.   Had you ever requested that information before?

8        A.   Yeah.

9        Q.   Did you receive it before?

10       A.   No.

11       Q.   When did you first request that information?

12       A.   Sometime after I returned back in April, so I

13   requested it around about May, May or June.

14       Q.   Of 2006?

15       A.   Yeah.

16       Q.   Did you receive a response?

17       A.   No.

18       Q.   Nothing?

19       A.   No.

20       Q.   Who did you request that information from?

21       A.   I originally requested it from Frey when I first

22   got down here.  I was denied.  Then when I returned back in

23   April, so around about May or June I requested it from, I

24   think it was, Warden Lambert, Assistant Warden Lambert, and

61

1    I never received a response.  I didn't actually receive a

2    response probably until sometime last year.

3         Q.   Did you make those requests in writing?

4         A.   Yes, I did.

5         Q.   The one you made to Frey was in writing?

6         A.   Yes.

7         Q.   And the one you made to Lambert was in writing?

8         A.   Yeah.

9         MR. LURKINS:  Okay.  I think I am out of questions.

10   Do you have anything else that we need to talk about?

11        A.   Yeah.  Why was I transferred to Tamms?

12        MR. LURKINS:  We have talked about that, haven't we?

13        A.   Other than that, I don't have anything else to talk

14   about.

15        MR. LURKINS:  All right.  You have had your deposition

16   taken before, so you know about the signature part?

17        A.   Right.

18        MR. LURKINS:  Would you like to waive your signature or

19   would you like to reserve your signature?

20        A.   I want to reserve it.

21   ***                    ***                    ***

22

23              (Deposition ending at 1:10 p.m.)

24

                                                    62

**E-FILED**
Friday, 06 June, 2008  12:04:49 PM
Clerk, U.S. District Court, ILCD

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Knox v. Walker, et al.* |
| | ) ss. | USDC-CDIL 07-1032 |
| COUNTY OF SANGAMON | ) | |

## AFFIDAVIT

I, Rick Orr., being first duly sworn upon oath, depose and state that I am competent to testify and, if called to testify, would state as follows:

1.    I am currently a Deputy Director with the Illinois Department of Corrections.

2.    Prior to being promoted to my current position I was Deputy Director for District 3.

3.    I am familiar with the claims made against me by the Plaintiff in this case.

4.    The placement of an offender at Tamms Correctional Center is governed by 20 Ill. Adm. Code 505.

5.    As Deputy Director I approved Christopher Knox's placement at Tamms Correctional Center.

6.    My approval of his transfer to Tamms was in compliance with 20 Ill. Adm. Code 505.

7.    I reviewed the recommendation that the Plaintiff be transferred to Tamms.

8.    I approved his placement at Tamms because of his history of assaulting staff and fellow inmates and due to his overall negative adjustment.

9.    My approval was not motivated by any other factors.

10.    I was not motivated to place the Plaintiff at Tamms because he had filed, or helped to file, lawsuits or grievances.  Likewise, I was not motivated by any participation he may have had in any investigation.

11.    My approval of his placement was reviewed and approved by other staff who also concurred with my assessment of the Plaintiff's eligibility to be placed at Tamms Correctional Center.

11.     My approval of his placement was reviewed and approved by other staff who also concurred with my assessment of the Plaintiff's eligibility to be placed at Tamms Correctional Center.

I have read the foregoing paragraphs and they are true and correct to the best of my knowledge and belief.



s/Rick Orr

_____
Rick Orr

Subscribed and sworn to before me this 4th day of May, 2008.

BRIGITTE M. SMITH
MY COMMISSION EXPIRES
APRIL 16, 2011

STATE OF ILLINOIS       )     *Knox v. Walker, et al.*

             ) ss.    USDC-CDIL 07-1032

COUNTY OF SANGAMON    )

### AFFIDAVIT

I, Roger E. Walker Jr., being first duly sworn up on oath, depose and state that I am competent to testify and, if called to testify, would state as follows:

1.   I am the Director of the Illinois Department of Corrections.

2.   I have served in this capacity since 2003.

3.   I am familiar with the claims made by the Plaintiff in this case.

4.   The placement of an offender at Tamms Correctional Center is governed by 20 Ill.Adm. Code Sec. 505.

5.   I did not recommend Christopher Knox be placed at Tamms Correctional Center.

6.   I have reviewed the documents associated with the Plaintiff's placement at Tamms Correctional Center and it appears that the decision to place him at Tamms was in compliance with 20 Ill.Adm.Code Sec. 505.

7.   I was not personally involved in the Plaintiff's placement at the Tamms Correctional Center.

I have read the foregoing paragraphs and they are true and correct to the best of my knowledge and belief.

           s/Roger E. Walker, Jr.

            Roger E. Walker Jr.

Subscribed and sworn to before me

this 5th day of June, 2008.

   s/Brigitte M. Smith
    Notary Public

          6-5-08

       NOTARY PUBLIC
       OFFICIAL SEAL
       STATE OF ILLINOIS
       BRIGITTE M. SMITH
       MY COMMISSION EXPIRES
       APRIL 16, 2011

STATE OF ILLINOIS )
) ss.
COUNTY OF ALEXANDER )

*Knox v. Walker, et al.*
USDC-CDIL 07-1032

## AFFIDAVIT

I, Jay Merchant, being first duly sworn upon oath, depose and state that I am competent

to testify and, if called to testify, would state as follows:

1.    I was the Warden at Tamms Correctional Center from August 14, 2006, through March

31, 2007.

2.    I am familiar with the claims made against me by the Plaintiff in this case.

3.    The placement of an offender at Tamms Correctional Center is governed by 20 Ill. Adm.

Code 505.

4.    I did not recommend Christopher Knox be placed at Tamms Correctional Center.

6.    I was not personally involved in the decision to transfer the Plaintiff to Tamms

Correctional Center.

7.    However, I believe the Plaintiff was properly placed at Tamms Correctional Center based

on his history of violent assaults against staff and inmates.

I have read the foregoing paragraphs and they are true and correct to the best of my

knowledge and belief.

s/Jay Merchant

_____
Jay Merchant

Subscribed and sworn to before me

this _4__ day of _April_ 2008.

s/Chalene Whitley

Notary Public

OFFICIAL SEAL
CHALENE A WHITLEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/03/09

STATE OF ILLINOIS                    )        *Knox v. Walker et al*
                                     )        USDC-CD-IL No. 07-1032
COUNTY OF ALEXANDER                  )

## <u>AFFIDAVIT</u>

I, John Barwick, having first been duly sworn upon oath, state that I have

personal knowledge of the facts set forth herein, that I am competent to testify

and if called to testify would state as follows:

1.    I am the Record Office Supervisor at the Tamms Correctional Center.

2.    I hereby affirm the following attached documents are from the Plaintiff,

      Christopher Knox's master file and are true and correct photocopies of

      documents made at or near the time of the events depicted in the

      documents, which are maintained in the ordinary course of business at the

      Tamms Correctional Center.

I have read the foregoing paragraphs and they are true and correct to the

best of my knowledge and belief.

s/John Barwick
_____
John Barwick


Subscribed and sworn to before me

this 4th day of June, 2008


s/Michelle Baggott
Notary Public

OFFICIAL SEAL
MICHELLE BAGGOTT
Notary Public, State of Illinois
My Commission Expires 11-25-2010

STATE OF ILLINOIS                )                *Knox v. Walker, et al.*
                                 ) ss.            USDC-CDIL 07-1032
COUNTY OF PEORIA                 )

## AFFIDAVIT

I, Shelton Frey, being first duly sworn upon oath, depose and state that I am competent to testify and, if called to testify, would state as follows:

1.     I was the Head Warden at the Tamms Correctional Center from June 2004 to April 2006.

2.     I am familiar with the claims made against me by the Plaintiff in this case.

3.     The placement of an offender at Tamms Correctional Center is governed by 20 Ill. Adm. Code 505.

4.     As Chief Administrative Officer of the Tamms Correctional Center I approved Christopher Knox's placement at Tamms Correctional Center.

5.     My approval of his placement to Tamms was in compliance with 20 Ill. Adm. Code 505.

6.     I reviewed the recommendation that the Plaintiff be transferred to Tamms.

7.     I approved his placement at Tamms because of his history of assaulting staff and fellow inmates and due to his overall negative adjustment.

8.     My approval was not motivated by any other factors.

9.     I was not motivated to place the Plaintiff at Tamms because he had filed, or helped to file, lawsuits or grievances. Likewise, I was not motivated by any participation he may have had in any investigation.

10.    My approval of his placement was reviewed and approved by other security and medical staff who also concurred with my assessment of the Plaintiff's eligibility to be placed at Tamms Correctional Center.

I have read the foregoing paragraphs and they are true and correct to the best of my knowledge and belief.

s/Shelton Frey
Shelton Frey

Subscribed and sworn to before me

this 6th day of June, 2008.



"OFFICIAL SEAL"
CHRISTINA M SNYDER
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 12/05/09

STATE OF ILLINOIS          )           *Knox v. Walker, et al.*
                                     ) ss.      USDC-CDIL 07-1032

COUNTY OF WILL            )

## AFFIDAVIT

I, Terry McCann., being first duly sworn upon oath, depose and state that I am competent to testify and, if called to testify, would state as follows:

1.       I am the Warden of the Stateville Correctional Center, Stateville is a Maximum Security facility for the Illinois Department of Corrections and have held this position since August 14, 2006. I began my employment with Illinois Department of Corrections in November of 1984 as a Correctional Officer at Shawnee Correctional Center. I promoted to a Correctional Sergeant in June of 1989, and promoted to a Correctional Lieutenant in May of 1990. In March of 1991 I transferred to Vienna Correctional Center as a Correctional Lieutenant. In December of 1991 I promoted to a Correctional Captain at Dixon Springs, and in August of 1995 I transferred to Vienna as a Correctional Captain. I promoted to a Correctional Major at Vienna Correctional Center, in August of 1998. In February of 2000 I promoted to the Assistant Warden of Operations at Vienna and in March of 2000 I promoted to Warden of Vienna Correctional Center. In September of 2003 I transferred to Shawnee Correctional Center as Warden and in April of 2006 I transferred to Tamms Correctional Center as Warden. On August 14, 2006 I transferred to Stateville Correctional Center as Warden.

2.       I am familiar with the claims made against me by the Plaintiff in this case.

3.       The placement of an offender at Tamms Correctional Center is governed by 20 Ill.

Adm. Code 505.

4.      I did not recommend Christopher Knox be placed at Tamms Correctional Center.

5.      I was not personally involved in making the decision to transfer the Plaintiff to the

Tamms Correctional Center.

6.      However, I do believe that the Plaintiff was properly placed at the Tamms

Correctional Center due to his history of violent assaults on inmates and staff.


I have read the foregoing paragraphs and they are true and correct to the best of

my knowledge and belief.


```
OFFICIAL SEAL
KATHY A SANDLIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/07/08
```

s/Kathy A. Sandlin

Subscribed and sworn to before me

this __6th__ day of __June__, 2008.

.s/Terry McCann

Terry McCann.

STATE OF ILLINOIS                      )              *Knox  v. Walker, et al.*
                                       ) ss.          USDC-CDIL 07-1032
COUNTY OF WILL                         )

### AFFIDAVIT

I, Guy Pierce, being first duly sworn upon oath, depose and state that I am competent to testify and, if called to testify, would state as follows:

1.      I am currently the Deputy Director of the Illinois Department of Corrections for District 1 and I have held that position since June 1, 2006.  I was promoted from Warden of Pontiac Correctional Center to Deputy Director.  I began my career with Illinois Department of Corrections on May 19, 1986 as a Correctional Officer Trainee at Danville Correctional Center and on August 19, 1986 became a Correctional officer.  On December 1, 1989 I was promoted to Correctional Sergeant, and on October 1, 1991 I became a Correctional Captain at Danville Correctional Center.  On September 1, 1999 I was promoted to Assistant Warden of Operations at Pinckneyville Correctional Center and on March 1, 2000 I promoted to Warden of Pinckneyville Correctional Center.  I transferred to Lawrence Correctional Center as the Warden on January 1, 2002 and to Pontiac Correctional Center as Warden on October 18, 2004.

1.      During the time frame of December of 2005 and January of 2006, I was Warden at Pontiac Correctional Center.

2.      I am familiar with the claims made against me by the Plaintiff in this case.

3.      The placement of an offender at Tamms Correctional Center is governed by 20 Ill. Adm. Code 505.

4.      As Warden of the Pontiac Correctional Center I recommended Christopher Knox's placement to the Tamms Correctional Center.

5. My recommendation to place him at Tamms Correctional Center was in compliance with 20 Ill. Adm. Code 505.

6. As noted at the time, I recommended the Plaintiff's transfer to Tamms Correctional Center because of his history of assaulting staff and fellow offenders and due to his overall negative adjustment.

7. My recommendation for Plaintiff's transfer was based upon considerations of the safety and security of the facility as well as Plaintiff's disciplinary and behavioral history.

8. At the time I recommended the Plaintiff's placement to Tamms Correctional Center, Plaintiff had an extensive history of discipline and assaultive behavior towards staff and other offenders. From February 3, 2001 until December 20, 2005, Plaintiff was found guilty of 199 separate disciplinary offenses; this included 11 incidents of discipline for staff assaults and 5 incidents of discipline for offender assaults.

9. My recommendation to place Plaintiff at the Tamms Correctional Center was based upon the safety and security of the facility, Plaintiff's disciplinary and behavioral history, his history of assaulting staff and fellow offenders and due to his overall negative adjustment and was not motivated by any other factors.

10. I was not motivated to place the Plaintiff at Tamms because he had filed, or helped to file, lawsuits or grievances. Likewise, I was not motivated by any participation he may or may not have had in any investigation.

11. My recommendation was reviewed and approved by other staff who also concurred with my assessment of the Plaintiff's eligibility to be placed at Tamms Correctional Center. I have read the foregoing paragraphs and they are true and correct to the best of my knowledge and belief.

s/Guy Pierce

_____
Guy Pierce

Subscribed and sworn to before me

this 6th day of June, 2008.

s/Maria Tellez-Carlson

```
OFFICIAL SEAL
MARIA TELLEZ-CARLSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES MARCH 29, 2011
```

Illinois Department of Corrections
## DISCIPLINARY RECORD

NAME: _Christopher Knox_     REG. NO.: **B61090**

| DATE | OFFENSE | DISCIPLINARY ACTION |
|---|---|---|
| 11-13-94 | false info, insolence, disobey order, viol. of rules | 1mo N/C |
| 2-1-95 | Arson, Health | 2mo C |
| 3-6-95 | UIA move, viol / rules) | VIR |
| 4-1-95 | D.D.O., Health & Safety | 14 da NIC |
| 4-8-95 | D.D.O., Insolence | 1mo C, D.J.T. |
| 4-11-95 | theft, UIA prop | 1mo C |
| 4-18-95 | DDO, Safety Viol. | 21 da NIC |
| 4-18-95 | Dan/misuse prop, safety | 1mo N/C |
| 4-20-95 | health/safety, D.D.O. | 1mo, 7da NIC |
| 4-20-95 | damage/ misuse prop, safety viol. | 1mo 14da NIC |
| 4-30-95 | Dang Contra (shank)    Grat Rensr 7-15-95 | 1yr GCC, 1yr C grade, 3mo1 N/C, 1yr seg rel: 4-30-96 |
| 6-16-95 | D.D.O. | 2mo C, 15da Seg rel 5-15-96 |
| 8-7-95 | abuse / priv, D.D.O. | 1mo do Yard |
| 11-13-95 | 405 failure to report | VIR |
| 12-27-95 | 307 UIA move | 7 days NC |
| 2-4-96 | Health/safety viol, DDO | 14 days N/C |
| 4-17-96 | WICC | VIR |
| 4-21-96 | 307 UIA Move | VIR |
| 5-1-96 | 304 Insol 403 Viol Rules, 308 Assault, Threat | 1wk/9kP |
| 5-8-96 | 301 Fighting | 15 dSeg 1/mo C |
| 5-17-96 | 304 Insol 403 DDO. | 1wk N/C |
| 6-18-96 | 307 UA Move 304 Insol 403 Gdo | 2mo N/ at table, 30 day seg |
| 6-21-96 | 206 Int / threats 403 DDO, 304 insolence | 1yr C, 30 day loss GCC |
| 6-19-96 | 304 Insol 403 DDO 404 Viol Rules | 1mo C. |
| 1-23-97 | 405 fail to report | |
| 1-24-97 | 405 fail to report | 30 days com ls |

DCA 360 (Rev. 6 86)     P-489
IL 426-0197

B61090    Knox

| DATE | OFFENSE | DISCIPLINARY ACTION |
|------|---------|---------------------|
| | REC'D SHAWNEE CC   JUL 1 8 1996 | |
| 9-13-96 | P 307 r/a movement | V. rep |
| 9.6.96 | P 403 DDO, 404 Vio Rules 304 Insolence | 30 d com ls |
| 10.17.96 | P 403 DDO | 14 days com ls |
| 10-11-96 | P 405 fail Drep | VR |
| 10-9-96 | P 405 fail Drep | VR |
| 10-10-96 | 405 fail Drep | |
| 11-24-96 | 302 misuse of St prop 404 viol of rules | IMC |
| 12-9-96 | P 405 Fail To Report | 7 Days Com Loss |
| 12/17/96 | a 304 Insolence 403 DDO | 2 wks com ls |
| 1-27-97 | P 405 fail to report | 7 days com. ls. |
| 1/22/97 | P 405 Fail to Report | 30 d. Comm ls |
| 1-29-97 | P 405 fail to report | 60 days com. ls. |
| 2-13-97 | P 405 Failure To Report | 60 Days Com. Loss |
| 1/30/97 | a 405 failure to rep | 60 d Com ls |
| 2/6/97 | a 307 u/a Movement | 2 Wk Com p.l. |
| 4.6.97 | a 304 Insolence | 9 d. seg/1 mo ya w/gm loss |
| 4.15.97 | a 307 u/a move | Rep |
| 4-29-97 | P 307 u/a move 405 fail to report | 14 days com ls |
| 5-5-97 | P 405 Failure To Report | 7 Days Com Loss |
| 5-8-97 | P 307 U/A Movement | 5 Days Com Loss |
| 5.6.97 | 307 u/a move 405 fail to report | 14 days com ls |
| 5 13 97 | P 307 u/a Move 405 fail rep | 14 d Com ls |
| 10-3-97 | 102 Assault avg Person | GT 6 mo C (1 year) |
| — | (show agg behavior) hit Sgt. in chest | Seg 1 yr. |
| — | struck inmate in chest) | 3 mo N/yard |
| 12-31-97 | 304 Insolence 401 Abuse Priv | No yard 2 mos |
| 2-8-98 | 404 Viol Rules | Loss audio 1 mo |

B61090

**Illinois Department of Corrections**
## DISCIPLINARY RECORD

NAME: _Knof, Christopher_      REG. NO.: **B61090**

| DATE | OFFENSE | DISCIPLINARY ACTION |
|---|---|---|
| 3-11-98 | 202 Damgor Misuse Prop 308 Contraband | No 7d 2 mos Restd "14⁰⁰ mcc |
| 4-11-98 | 308 U/A Prop: 0 | Items Confiscated |
| 5-10-98 | 404 Viol Rules | Reprimand |
| 5-20-98 | 304 Insolence, 404 Rules 403 DDO | C 3 mo, Seg 3 mo |
| 5-25-98 | 404 Viol of rules 403 Disobey an order 304 Insolence | Seg 1 mo Loss of Comm 1 month |
| 1-10-99 | 308 U/A Property | LOC 1 mo 1-15-99 2-15-99 |
| 5/19/99 | Recd SIC | |
| 7/16/99 | (210) Trp of Serv. (304) Insol | 2mo C-A = 10/3/01 |
| 7/16/99 | (206) Int Threats (403) DisD/o | 1mo C-A = 12/3/01 1mo NC 7/25 - 8/25/99 |
| 7/31/99 | (102) Assault (105) Dangerous perNEB | 6mo C-A = 12/3/02 6mo Revoke 6mo Seg 7/31 - 1/31/00 Transfer |
| AUG 25 1999 | Recd | |
| 8-9-99 | (304) Insolence | 1mo C |
| 8-11-99 | (304) Insolence (206) Intimidation or Threat | 1mo seg / 1mo C |
| 8-11-99 | (802) Damage or Misuse of Property | |
| 8-11-99 | (403) DDO | 1 mo C |
| 8-10-99 | (202) Damage or Misuse of Property | 2 wks No Comm. |
| 11-4-99 | (102) assaulting staff | 1YR 1YR 3mo occ/seg C comm |
| 11-12-99 | (206) Intimidation or Threats | 2mo 6mo 3mo seg C ccr |
| 11-5-99 | (304) Insolence | 1mo C / 2mo YARD |
| 11-4-99 | (304) Insolence | 1mo C / 2mo Audio / N/c |

DCA 360 (Rev. 4/86)
IL 426-0197

B361090.

| DATE | OFFENSE | DISCIPLINARY ACTION |
|---|---|---|
| 11-14-99 | (304) Insolence (102) Arson | 6mo GCC / 6mo Seg / 4yr C / 3mo Comm |
| 1-18-00 | (304) Insolence (310) Abuse of Priv. (403) DDO | 1mo Seg / 3mo C / 3mo Comm |
| 4-17-00 | 304 Insolence | 1mo C / 2mo Comm |
| 4-21-00 | (304) insolence | 1mo Seg / 3mo C / 3mo Comm |
| 3-30-00 | 403 DDO | 3mo Seg / 3mo C / 3mo Comm |
| 4-30-00 | 210 Impairment of Surveillance | 15 days Seg / 2mo C / 3mo Comm |
| 6-8-00 | (403) DDO | 15 days Seg. |
| ▓▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓▓▓ |
| 6-16-00 | 403 DDO | 15 DAYS Seg / 1mo C / 3mo Comm |
| 6-25-00 | (403) DDO | 15 days Seg. |
| ▓▓▓▓▓ | | |
| 7-22-00 | 403 DDO | 1mo Seg / 3 mo C / 3mo Comm |
| 7-18-00 | 403 DDO | 15 DAYS Seg / 3mo C / 3mo Comm |
| 7-24-00 | 210 Impairment of Surveillance | 15 DAYS Seg / 2mo C / 3mo Comm |
| 6-23-00 | 102 Assaulting any Person (E) 403 DDO 307 Unauthorized Mvmnt | 6mo GCC / 6mo Comm / 1yr C / 1yr Seg |
| 8-5-00 | 403 DDO 304 Insolence | 15 DAYS Seg / 1mo C / 1mo Comm |
| 7-26-00 | 308 contraband | 3mo C |
| 8-15-00 | (311) Failure to submit to medical or forensic test | Reprimand |
| 9-9-00 | 102 Assaulting any Person (E) | 2mo Seg / 2mo C |
| 10-2-00 | 304 Insolence | 15 DAYS Seg / 2mo C / 3mo Comm |
| 10-16-00 | (404) (403) Violation of Rules; DDO | 15 days Seg / 3mo C / 2mo Comm |
| 11-13-00 | 403 DDO | 1mo C / 3mo Comm |
| 11-7-00 | 304 Insolence 403 DDO | 2mo C / 2mo Seg / 3mo Com |
| 11-7-00 | 404 Violation of Rules 403 DDO 304 Insolence | 3mo C / 3mo Seg / 3mo Com |

Illinois Department of Corrections

# DISCIPLINARY RECORD

NAME: Knox, Christopher          (5)          REG. NO: B61090

| DATE | OFFENSE | DISCIPLINARY ACTION |
|---|---|---|
| 11/7/00 | 206 Intimidation or Threats 132 Assaulting any person 403 DDO 304 Insolence | |
| | 102 Assaulting Any Person | 3mo C / 6 mo Seg / 3m Com |
| 12-13-00 | (202) Damage or Misuse of Property (403) DDO (404) Viol. of Rules | 15 days Seg |
| 12-14-00 | (403) DDO (304) Insolence | 15 days Seg. |
| 12-24-00 | (403) DDO | 1 Mo. Seg. |
| 1-05-01 | 403 DDO | 1mo seg / 2 mo C / 3 mo con |
| 12-24-00 | 102 Assaulting any Person 403 DDO | 3mo 6CC / 6mo Seg / 1YR C / 3mo COMM |
| 2-21-01 | rec'd Pontiac | |
| 2-3-01 | 304 Insolence, 403 DDO | 2mo Cgr, 1mo Seg 3mo N/C |
| 2-21-01 | 102 assault (other) 304 insolence | 1yr C, 1yr Seg, Rev. 1yr 6mo N/C, 6mo N/AV, 6mo N/C 3mo N/AV |
| 3.9.01 | 403 DDO | 3mo C 3mo Seg 3mo N/C |
| 5-5-01 | 102 assault (staff) | 1yr C, 1yr Seg, Rev. 1yr 3mo N/C, 3mo N/AV, 6mo N/CN |
| 5-3-01 | 102 assault (inmate) | 1yr C, 1yr Seg, Rev 6mo 3mo N/C, 3mo N/AV 6mo C, 6mo Seg, Rev. 6mo |
| 5-16-01 | 203 Drugs para | 3mo N/C, 3mo N/AV |
| 6-15-01 | 304 Insol | 1 mo N/C   1 mo N/AV |
| 6-17-01 | 304 Insol  403 DDO | 2 mo N/C  2mo N/AV |
| 6-19-01 | 304 Insol  403 DDO | 3 mo N/C  3 mo N/AV |
| 6-29-01 | 403 DDO | 3 mo N/C  3 mo N/AV |
| 7-7-01 | 102 assault (inmate) | 6mo C, 6mo Seg, Rev. 6mo 3mo N/C, 3mo N/AV |
| 7-8-01 | 403 DDO | 3mo C, 3mo Seg, Rev. 3mo 3mo N/C, 3mo N/AV |
| 7-8-01 | 202 dam prop, 403 DDO | 3mo C, 3mo Seg, Rev. 3mo 3mo N/C, 3mo N/AV |
| 7-10-01 | 403 DDO | 3mo C, 3mo Seg, Rev. 3mo 3mo N/C, 3mo N/AV |
| 7-16-01 | 202 dam prop 304 insol 404 rule viol. | 3mo C. 3mo Seg 3mo N/C 3mo N/AV |
| 7-20-01 | 402 M/S/S viol. | 3mo C 3mo N/C 3mo N/AV |

DCA 560 (Rev. 4/86)
IL 426-0197

| DATE | OFFENSE | DISCIPLINARY ACTION |
|---|---|---|
| 7-17-01 | 202 Dam/prop | 3mo C, 3mo Seg, Rev 1mo 3mo N/C, 3mo N/av) |
| 7-17-01 | 206 Intim'; Threats | 6mo C, 6mo Seg, Rev, 3mo 3mo N/C, 3mo N/av |
| 8-26-01 | 202 dam prop. 402 H/S/s vial. | 6mo C 6mo Seg 3mo N/c   3mo N/av |
| 8-30-01 | 304 insol. 403 DDO | 3mo C 3mo N/c 3mo N/av |
| 8-18-01 | 202 dam prop. 304 insol. | 6mo C 6mo Seg Rev'd 3mo |
|  |  | $5.03 pd 3mo N/c 3mo N/av |
| 8-26-01 | 102 assault (inmate) | 6mo C 6mo Seg Rev'd 6mo |
|  |  | 3mo N/c 3mo N/av |
| 9-2-01 | 304 insolence, 404 viol/rules | 3mo C, 1mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 9-7-01 | 304 insolence, 404 viol/rules | 3mo C, 1mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 9-13-01 | 304 insolence, 404 viol/rules | 3mo C, 1mo Seg, Rev 1mo 3mo N/c 3mo N/av |
| 9-19-01 | 304 insolence, 404 Rules viol | 3mo C, 1mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 9-25-01 | 304 insolence, 404 Rules viol | 3mo C, 1mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 9-27-01 | 202 dam prop. | 3mo N/av 6mo C 6mo Seg 3mo N/c |
| 10-9-01 | 304 insolence, 403 DDO, 404 viol/rules | 3mo C, 1mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 10-5-01 | 304 insolence, 404 viol Rules | 3mo C, 1mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 10-29-01 | 304 insol. 404 rule vial. | 3mo N/av 3mo C 1mo Seg 3mo N/c |
| 10-30-01 | 304 insol. 404 rule vial | 3mo N/av 3mo C 1mo Seg 3mo N/c |
| 10-31-01 | 304 insol. 404 rule vial. | 3mo N/av 3mo C 1mo Seg 3mo N/c |
| 10-31-01 | 304 insolence, 403 DDO | 3mo C, 3mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 11-5-01 | 304 insol. 404 rule vial. | 3mo N/av 3mo C 1mo Seg 3mo N/c |
| 11-12-01 | 102 Assault (S)  202 Dam Prop 403 DD | Continued |
| 11-15-01 | 304 insol. 403 DDO 404 rule vial. | 3mo N/av 3mo C 3mo Seg 3mo N/c |
| 11-12-01 | 102 assault (staff), 102 assault (inmate) | 1yr C, 1yr Seg, Rev 1 yr, 1yr N/c 1yr N/av, 1yr N/av, 1yr N/cu |
| 12-5-01 | 403 DDO | 3mo C, 3mo Seg, Rev, 3mo 3mo N/c, 3mo N/av |
| 12-3-01 | 304 insol. 403 DDO 404 rule vial. | 3mo N/av 3mo C 3mo Seg 3mo N/c |
| 12-9-01 | 304 insolence, 403 DDO | 3mo C, 3mo Seg, Rev 1mo 3mo N/c, 3mo N/av |
| 11-12-01 | 202 dam/prop, 403 DDO | 3moC, 3mo Seg, Rev, 3mo 3mo N/c, 3mo N/av) |

**Illinois Department of Corrections**
**DISCIPLINARY RECORD**

NAME: _Knox_

REG. NO.: _B61090_

| DATE | OFFENSE | DISCIPLINARY ACTION |
|------|---------|---------------------|
| 12-23-01 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 12-5-01 | 206 Intim's Threats, 403 DDO | 6mo C, 6mo seg, 3mo Dis  3 mo N/c, 3mo N/av |
| 1-10-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 1-14-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 1-17-02 | 304 insol. | 3mo C 1mo seg 3mo N/c  3mo N/av |
| 1-24-02 | 304 insol 404 rule viol. | 3mo C 1mo seg 3mo N/c  3mo N/av |
| 2-8-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 4-13-02 | 304 insol. | 1mo C 1mo seg 1mo N/c  1mo N/av |
| 4-10-02 | 304 insol. 404 rule viol. | 1mo C 1mo seg 1mo N/c  1mo N/av |
| 4-28-02 | 206 Intim's Threats, 304 Insol, 403 DDO | 3mo C, 3mo seg, Dis, Inst  3mo N/c, 3mo N/av |
| 4-22-02 | 303 False/Info | 3mo C, 3mo seg, 3mo Dis  3mo N/av |
| 5-8-02 | 206 Intim's Threats | 3mo C, 3mo seg, Dis, Zmo  3mo N/c, 3mo N/av |
| 5-4-02 | 304 insol. 404 rule viol. | 3mo C 1mo seg 3mo N/c  3mo N/av |
| 5-11-02 | 304 insol. 404 rule viol. | 3mo C 1mo seg 3mo N/c  3mo N/av |
| 5-11-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 5-27-02 | 304 insil 403 DDO | 3mo C 2mo seg 3mo N/c 3mo N/av  3mo N/av |
| 6-2-02 | 304 insol. 404 rule viol. | 1mo C 1mo seg 3mo N/c  3mo N/av |
| 6-4-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 6-8-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 6-9-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 6-10-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 6-11-02 | 304 insol. 403 DDO | 3mo C 3mo seg 3mo N/c  3mo N/av |
| 6-8-02 | 403 DDO | 3mo C, 3mo seg, Dis, 3mo  3mo N/c, 3mo N/av |
| 6-22-02 | 304 insol 403 DDO | 3mo C 3mo seg 3mo N/c 3mo N/av |
| 6-30-02 | 304 insol 404 Rule Viol | 3mo C 1mo seg 3mo N/c 3mo N/av |
| 5-31-07 | denied seg. un | |

DCA 560 (Rev. 4 86)
IL 426-0107    P-489

# State of Illinois Department of Corrections Disciplinary Tracking Inmate Disciplinary Card

**Name:** **KNOX, CHRISTOPHER**

**IDOC # :** **B61090**

Disciplinary History from 1/1/1998 through 8/20/2007

**Transferred In:** 2006-01-10

**Living Unit:** TAM/F/01/02

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 2/3/2001 200100123/1-STA Major | 206 Intimidation Or Threats | Not Guilty | 2 Months C Grade/Level |
| | 304 Insolence | Guilty | 1 Months Segregation |
| | 403 Disobeying A Direct Order | Guilty | 3 Months Commissary Restriction |
| 2/21/2001 200101644/1-PON Major | 102 Assaulting Any Person - Staff Comments: SPIT ON STAFF | Guilty | 1 Year C Grade/Level |
| | 304 Insolence | Guilty | 1 Year Segregation |
| | | | Revoke GCC or SGT 1 Year |
| | | | 6 Months Commissary Restriction 6 Months Audio/Visual Restriction 6 Months Contact Visits Restriction |
| 3/9/2001 200101875/1-PON Major | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| | | | 3 Months Segregation |
| | | | 3 Months Commissary Restriction 3 Days Audio/Visual Restriction |
| 5/3/2001 200103401/1-PON Major | 102 Assaulting Any Person - Inmate Comments: STRUCK INMATE ON FACE WITH HAND | Guilty | 1 Year C Grade/Level |
| | | | 1 Year Segregation |
| | | | Revoke GCC or SGT 6 Months |
| | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 5/5/2001 200103402/1-PON Major | 102 Assaulting Any Person - Staff Comments: SPIT ON MED TECH'S FACE 2 TIMES | Guilty | 1 Year C Grade/Level |
| | | | 1 Year Segregation |
| | | | Revoke GCC or SGT 1 Year |
| | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction 6 Months Contact Visits Restriction |
| 5/16/2001 200103732/1-PON Major | 203 Drugs & Drug Paraphernalia Comments: REFUSED DRUG TEST | Guilty | 6 Months C Grade/Level |
| | | | 6 Months Segregation |
| | | | Revoke GCC or SGT 6 Months |
| | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 6/15/2001 200104843/1-PON Minor | 304 Insolence | Guilty | 1 Months Commissary Restriction 1 Months Audio/Visual Restriction |
| 6/17/2001 200104852/1-PON Minor | 304 Insolence | Guilty | 2 Months Commissary Restriction 2 Months Audio/Visual Restriction |
| | 403 Disobeying A Direct Order | Guilty | |
| 6/19/2001 200105030/1-PON Minor | 304 Insolence | Guilty | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| | 403 Disobeying A Direct Order | Guilty | |
| 6/29/2001 200105457/1-PON Major | 403 Disobeying A Direct Order | Guilty | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |

# State of Illinois Department of
## Corrections Disciplinary Tracking Inmate
## Disciplinary Card

**Name: KNOX, CHRISTOPHER**                                IDOC # : B61090

Transferred In: 2006-01-10     Disciplinary History from 1/1/1998 through 8/20/2007     Living Unit: TAM/F/01/02

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 7/7/2001 200105951/1-PON Major | 102 Assaulting Any Person - Inmate Comments: SPIT IN INMATE'S FACE | Guilty | 6 Months C Grade/Level 6 Months Segregation Revoke GCC or SGT 6 Months 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/8/2001 200105962/1-PON Major | 202 Damage Or Misuse of Property 403 Disobeying A Direct Order | Guilty Guilty | 3 Months C Grade/Level 3 Months Segregation Revoke GCC or SGT 3 Months 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/8/2001 200105961/1-PON Major | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level 3 Months Segregation Revoke GCC or SGT 3 Months 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/10/2001 200106029/1-PON Major | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level 3 Months Segregation Revoke GCC or SGT 3 Months 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/16/2001 200106310/1-PON Major | 202 Damage Or Misuse of Property 304 Insolence 404 Violation Of Rules Comments: MEMO DATED 5/1/01 | Guilty Guilty Guilty | 3 Months C Grade/Level 3 Months Segregation 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/17/2001 200106328/1-PON Major | 206 Intimidation Or Threats | Guilty | 6 Months C Grade/Level 6 Months Segregation Revoke GCC or SGT 3 Months 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/17/2001 200106327/1-PON Major | 202 Damage Or Misuse of Property 403 Disobeying A Direct Order | Guilty Not Guilty | 3 Months C Grade/Level 3 Months Segregation Revoke GCC or SGT 1 Months 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 7/20/2001 200106443/1-PON Minor | 402 Health,Smoking Or Safety Violations | Guilty | 3 Months C Grade/Level 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 8/18/2001 200107685/1-PON Major | 202 Damage Or Misuse of Property 304 Insolence | Guilty Guilty | 6 Months C Grade/Level 6 Months Segregation Revoke GCC or SGT 3 Months Restitution of $ 5.03 Paid to STATE OF ILLINOIS 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |

# State of Illinois – Department of
# Corrections Disciplinary Tracking Inmate
# Disciplinary Card

**Name: KNOX, CHRISTOPHER**

**IDOC # : B61090**

**Transferred In: 2006-01-10**

**Disciplinary History from 1/1/1998 through 8/20/2007**

**Living Unit: TAM/F/01/02**

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 8/26/2001 200107978/1-PON Major | 202 Damage Or Misuse of Property | Guilty | 6 Months C Grade/Level |
| | 402 Health,Smoking Or Safety Violations | Guilty | 6 Months Segregation |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 8/26/2001 200107979/1-PON Major | 102 Assaulting Any Person - Inmate Comments: SPIT ON INMATE WORKER | Guilty | 6 Months C Grade/Level |
| | | | 6 Months Segregation |
| | | | Revoke GCC or SGT 6 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 8/30/2001 200108136/1-PON Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 403 Disobeying A Direct Order | Guilty | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 9/2/2001 200108219/1-PON Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 404 Violation Of Rules Comments: MEMO DATED 5-1-01 | Guilty | 1 Months Segregation |
| | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 9/7/2001 200108369/1-PON Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 404 Violation Of Rules Comments: memo dated 8-2-01 | Guilty | 1 Months Segregation |
| | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 9/13/2001 200108629/1-PON Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 404 Violation Of Rules Comments: MEMO DATED 8-2-01 | Guilty | 1 Months Segregation |
| | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 9/19/2001 200108941/1-PON Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 404 Violation Of Rules Comments: MEMO DATED 8/2/01 | Guilty | 1 Months Segregation |
| | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 9/25/2001 200109109/1-PON Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 404 Violation Of Rules Comments: EXCESSIVE NOISE - YELLING | Guilty | 1 Months Segregation |
| | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 9/27/2001 200109243/1-PON Major | 202 Damage Or Misuse of Property | Guilty | 6 Months C Grade/Level |
| | | | 6 Months Segregation |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |

# State of Illinois — Department of Corrections Disciplinary Tracking Inmate Disciplinary Card

**Name: KNOX, CHRISTOPHER**

**IDOC # : B61090**

**Transferred In: 2006-01-10**       Disciplinary History from 1/1/1998 through 8/20/2007

**Living Unit: TAM/F/01/02**

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 10/5/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200109537/1-PON | 404 Violation Of Rules | Guilty | 1 Months Segregation |
| Major | Comments: MEMO DATED 8-2-01 | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 10/9/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200109713/1-PON | 403 Disobeying A Direct Order | Guilty | 1 Months Segregation |
| Major | 404 Violation Of Rules | Guilty | Revoke GCC or SGT 1 Months |
| | Comments: MEMO DATED 8-2-01 | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 10/29/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200110234/1-PON | 404 Violation Of Rules | Guilty | 1 Months Segregation |
| Major | Comments: MEMO DATED 8-2-01 | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 10/30/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200110313/1-PON | 404 Violation Of Rules | Guilty | 1 Months Segregation |
| Major | Comments: NOISE MEMO | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 10/30/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200110290/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 10/31/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200110445/1-PON | 404 Violation Of Rules | Guilty | 1 Months Segregation |
| Major | Comments: EXCESSIVE NOISE - YELLING | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 11/5/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200110540/1-PON | 404 Violation Of Rules | Guilty | 1 Months Segregation |
| Major | Comments: NOISE MEMO | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 11/12/2001 | 102 Assaulting Any Person - Inmate | Guilty | 1 Year C Grade/Level |
| 200110866/1-PON | Comments: KICKED INMATE | | 1 Year Segregation |
| Major | 102 Assaulting Any Person - Staff | Guilty | Revoke GCC or SGT 1 Year |
| | Comments: KICKED OFFICER | | 1 Year Commissary Restriction |
| | | | 6 Months Yard Restriction |
| | | | 1 Year Audio/Visual Restriction |
| | | | 1 Year Contact Visits Restriction |
| 11/12/2001 | 102 Assaulting Any Person - Staff | Not Guilty | 3 Months C Grade/Level |
| 200110814/2-PON | 202 Damage Or Misuse of Property | Guilty | 3 Months Segregation |
| Major | 403 Disobeying A Direct Order | Guilty | Revoke GCC or SGT 3 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |

# State of Illinois – Department of Corrections Disciplinary Tracking Inmate Disciplinary Card

**Name: KNOX, CHRISTOPHER**

IDOC # : B61090

Transferred In: 2006-01-10          Disciplinary History from 1/1/1998 through 8/20/2007          Living Unit: TAM/F/01/02

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 11/15/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200110865/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | 404 Violation Of Rules Comments: noise memo | Guilty | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 12/3/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200111424/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | 404 Violation Of Rules Comments: EXCESSIVE NOISE - YELLING | Guilty | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 12/5/2001 | 206 Intimidation Or Threats | Guilty | 6 Months C Grade/Level |
| 200111518/1-PON | 403 Disobeying A Direct Order | Guilty | 6 Months Segregation |
| Major | | | Revoke GCC or SGT 3 Months |
| | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 12/5/2001 | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| 200111517/1-PON | | | 3 Months Segregation |
| Major | | | Revoke GCC or SGT 3 Months |
| | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 12/9/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200111591/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 12/23/2001 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200112211/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | 404 Violation Of Rules | Not Guilty | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 1/10/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200200371/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 1/14/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200200459/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 1/17/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200200624/1-PON | | | 1 Months Segregation |
| Major | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |
| 1/24/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200200836/1-PON | 404 Violation Of Rules Comments: EXCESSIVE NOISE - YELLING | Guilty | 1 Months Segregation |
| Major | | | 3 Months Commissary Restriction 3 Months Audio/Visual Restriction |

# State of Illinois – Department of Corrections Disciplinary Tracking Inmate Disciplinary Card

**Name: KNOX, CHRISTOPHER**

**IDOC # : B61090**

Transferred In: 2006-01-10          Disciplinary History from 1/1/1998 through 8/20/2007

**Living Unit: TAM/F/01/02**

| Incident Date<br>Incident/Summ#/Inst.<br>Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 2/8/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200201178/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 4/10/2002 | 304 Insolence | Guilty | 1 Months C Grade/Level |
| 200203073/1-PON | 308 Contraband/Unauthorized Property | Not Guilty | 1 Months Segregation |
| Major | 404 Violation Of Rules<br>Comments: NOISE VIOLATION | Guilty | 1 Months Audio/Visual Restriction |
| 4/13/2002 | 304 Insolence | Guilty | 1 Months C Grade/Level |
| 200203132/1-PON | | | 1 Months Segregation |
| Major | | | 1 Months Commissary Restriction<br>1 Months Audio/Visual Restriction |
| 4/28/2002 | 206 Intimidation Or Threats<br>Comments: THRTEATENED TO WRITE<br>OFFICER UP | Deleted | 3 Months C Grade/Level |
| 200203585/2-PON | | | 3 Months Segregation |
| Major | 304 Insolence | Guilty | Revoke GCC or SGT 1 Months |
| | 403 Disobeying A Direct Order | Guilty | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 5/4/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200203877/1-PON | 404 Violation Of Rules<br>Comments: NOISE VIOLATION | Guilty | 1 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 5/8/2002 | 206 Intimidation Or Threats<br>Reduced to : 304<br>Comments: THREATENED C/O BY GRIEV.<br>PROCESS | Guilty<br>Reduced to 304 | 3 Months C Grade/Level |
| 200203948/2-PON | | | 1 Months Segregation |
| Major | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 5/10/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204037/1-PON | 404 Violation Of Rules<br>Comments: NOISE MEMO | Guilty | 1 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 5/11/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204036/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 5/27/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204525/1-PON | 403 Disobeying A Direct Order | Guilty | 2 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/2/2002 | 304 Insolence | Guilty | 1 Months C Grade/Level |
| 200204714/1-PON | 404 Violation Of Rules<br>Comments: NOISE MEMO | Guilty | 1 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |

**State of Illinois - Department of**
**Corrections Disciplinary Tracking Inmate**
**Disciplinary Card**

Name: **KNOX, CHRISTOPHER**                               IDOC # : **B61090**

Transferred In: 2006-01-10      Disciplinary History from 1/1/1998 through 8/20/2007      Living Unit: TAM/F/01/02

| Incident Date<br>Incident/Summ#/Inst.<br>Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 6/4/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204729/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/8/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204932/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/8/2002 | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| 200204930/1-PON | | | 3 Months Segregation |
| Major | | | Revoke GCC or SGT 3 Months |
| | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/9/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204929/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/10/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200204931/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/11/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level! |
| 200204958/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/22/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200205282/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/30/2002 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200205592/1-PON | 404 Violation Of Rules<br>Comments: NOISE MEMO | Guilty | 1 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 7/25/2002 | 311 Failure To Submit To Medical Or<br>Forensic Test | Guilty | 3 Months C Grade/Level |
| 200206282/1-PON | Comments: REFUSED MANDATORY<br>T.B.TEST | | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 8/14/2002 | 311 Failure To Submit To Medical Or<br>Forensic Test | Guilty | 3 Months C Grade/Level |
| 200206845/1-PON | 402 Health,Smoking Or Safety Violations | Guilty | 3 Months Segregation |
| Major | 403 Disobeying A Direct Order | Guilty | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 10/2/2002 | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| 200208571/1-PON | | | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |

# State of Illinois Department of
## Corrections Disciplinary Tracking Inmate
## Disciplinary Card

**Name: KNOX, CHRISTOPHER**                    IDOC # : B61090

**Transferred In: 2006-01-10**    Disciplinary History from 1/1/1998 through 8/20/2007    **Living Unit: TAM/F/01/02**

| Incident Date / Incident/Summ#/Inst. / Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 12/16/2002<br>200210397/1-PON<br>Major | 601.Attempt/102 Assaulting Any Person - Staff<br>Comments: ATTEMPTED TO SPIT ON LT. | Guilty | 1 Year C Grade/Level<br>1 Year Segregation<br><br>1 Year Commissary Restriction<br>1 Year Audio/Visual Restriction |
| 12/16/2002<br>200210393/1-PON<br>Major | 102 Assaulting Any Person - Staff<br>Comments: KICKED CAPTAIN IN LOWER LEFT LEG | Guilty | 1 Year C Grade/Level<br>1 Year Segregation<br>Revoke GCC or SGT 6 Months<br><br>1 Year Commissary Restriction<br>3 Months Yard Restriction<br>1 Year Audio/Visual Restriction |
| 12/16/2002<br>200210392/1-PON<br>Major | 100 Violent Assault Of Any Person - Staff<br>Comments: THREW LIQ. SUBSTANCE IN EYES OF EMP. | Guilty | 1 Year C Grade/Level<br>Indeterminate Segregation |
| | 102 Assaulting Any Person - Staff<br>Comments: THREW LIQ. SUBSTANCE IN EYES OF EMP. | Guilty | Revoke GCC or SGT 1 Year<br>Restitution of $ 229.69 Paid to THE STATE ILLINOIS |
| | 202 Damage Or Misuse of Property<br>Comments: DESTROYED OFFICER'S UNIFORM | Guilty | Other : INDETERMINATE SEGREGATION<br><br>1 Year Commissary Restriction<br>3 Months Yard Restriction<br>1 Year Audio/Visual Restriction<br>1 Year Contact Visits Restriction |
| 1/8/2003<br>200300259/1-PON<br>Major | 206 Intimidation Or Threats | Guilty | 2 Months C Grade/Level |
| | 304 Insolence | Guilty | 2 Months Segregation<br><br>2 Months Commissary Restriction<br>2 Months Audio/Visual Restriction |
| 5/13/2003<br>200303511/1-PON<br>Major | 304 Insolence | Guilty | 3 Months C Grade/Level |
| | 403 Disobeying A Direct Order | Not Guilty | 1 Months Segregation |
| | 404 Violation Of Rules<br>Comments: NOISE MEMO | Guilty | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction |
| 6/27/2003<br>200304721/1-PON<br>Minor | 303 Giving False Information To An Employee | Guilty | 1 Months Audio/Visual Restriction |
| | 310 Abuse Of Privileges | Guilty | |
| 9/18/2003<br>200306709/1-PON<br>Minor | 403 Disobeying A Direct Order | Guilty | 1 Months Commissary Restriction |
| | 404 Violation Of Rules<br>Comments: NOISE MEMO | Guilty | 1 Months Audio/Visual Restriction |
| 9/18/2003<br>200306674/1-PON<br>Minor | 303 Giving False Information To An Employee | Guilty | 1 Months Commissary Restriction |
| | 310 Abuse Of Privileges | Guilty | |
| 10/21/2003<br>200307481/1-PON<br>Major | 102 Assaulting Any Person - Inmate<br>Comments: SPIT ON INMATE | Guilty | 6 Months C Grade/Level<br>6 Months Segregation<br><br>3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction<br>6 Months Contact Visits Restriction |

# State of Illinois Department of
## Corrections Disciplinary Tracking Inmate
## Disciplinary Card

**Name: KNOX, CHRISTOPHER**                                      IDOC # : **B61090**

Transferred In: 2006-01-10    Disciplinary History from 1/1/1998 through 8/20/2007    Living Unit: TAM/F/01/02

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 11/5/2003 | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| 200307809/1-PON | 404 Violation Of Rules | Guilty | 3 Months Commissary Restriction |
| Major | Comments: ARGUING LOUDLY W/ANOTHER OFFENDER | | 3 Months Audio/Visual Restriction |
| 11/8/2003 | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| 200307936/1-PON | 404 Violation Of Rules | Guilty | 1 Months Segregation |
| Major | Comments: YELLING | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 11/12/2003 | 206 Intimidation Or Threats | Guilty | 6 Months C Grade/Level |
| 200307954/1-PON | 308 Contraband/Unauthorized Property | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 12/15/2003 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200308669/1-PON | 403 Disobeying A Direct Order | Guilty | 1 Months Segregation |
| Major | 404 Violation Of Rules | Guilty | 1 Months Commissary Restriction |
| | Comments: NOISE LEVEL | | 1 Months Audio/Visual Restriction |
| 2/17/2004 | 304 Insolence | Guilty | 3 Months C Grade/Level |
| 200401039/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 3/18/2004 | 202 Damage Or Misuse of Property | Guilty | 6 Months C Grade/Level |
| 200401656/1-PON | 304 Insolence | Not Guilty | 3 Months Commissary Restriction |
| Major | 308 Contraband/Unauthorized Property | Guilty | 3 Months Audio/Visual Restriction |
| | 403 Disobeying A Direct Order | Guilty | |
| | 404 Violation Of Rules Comments: YELLING. | Guilty | |
| 4/9/2004 | 304 Insolence | Not Guilty | 3 Months C Grade/Level |
| 200402138/1-PON | 403 Disobeying A Direct Order | Guilty | 3 Months Segregation |
| Major | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 4/29/2004 | 308 Contraband/Unauthorized Property | Guilty | 3 Months C Grade/Level |
| 200402587/2-PON | 402 Health,Smoking Or Safety Violations | Guilty | 3 Months Segregation |
| Major | | | Revoke GCC or SGT 1 Months |
| | | | 3 Months Commissary Restriction |
| | | | 3 Months Audio/Visual Restriction |
| 5/2/2004 | 104 Dangerous Contraband Comments: BROKEN COMPACT DISC W/ SHARP EDGES | Not Guilty | 6 Months C Grade/Level |
| 200402601/1-PON | | | 6 Months Segregation |
| Major | 206 Intimidation Or Threats | Guilty | Revoke GCC or SGT 6 Months |
| | 308 Contraband/Unauthorized Property | Guilty | 6 Months Commissary Restriction |
| | 402 Health,Smoking Or Safety Violations | Not Guilty | 6 Months Audio/Visual Restriction |
| 5/14/2004 | 303 Giving False Information To An Employee | Guilty | 3 Months C Grade/Level |
| 200401270/1-STA | 304 Insolence | Guilty | 3 Months Commissary Restriction |
| Major | 310 Abuse Of Privileges | Not Guilty | |

# State of Illinois -- Department of Corrections Disciplinary Tracking Inmate Disciplinary Card

Name: **KNOX, CHRISTOPHER**                                      IDOC # : **B61090**

Transferred In: 2006-01-10          Disciplinary History from 1/1/1998 through 8/20/2007          Living Unit: TAM/F/01/02

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 8/25/2004 200401924/2-STA Major | 102 Assaulting Any Person - Staff Comments: pushed bullpen gate into C/O kicked C/O | Guilty | 1 Year C Grade/Level 1 Year Segregation |
| | 403 Disobeying A Direct Order | Guilty | Revoke GCC or SGT 1 Year 6 Months Contact Visits Restriction |
| 8/28/2004 200401979/1-STA Major | 202 Damage Or Misuse of Property | Guilty | 6 Months C Grade/Level |
| | 210 Impairment Of Surveillance | Guilty | 6 Months Segregation Revoke GCC or SGT 6 Months |
| 9/6/2004 200402055/1-STA Major | 202 Damage Or Misuse of Property | Guilty | 3 Months C Grade/Level |
| | 210 Impairment Of Surveillance | Guilty | 3 Months Segregation |
| | 304 Insolence | Guilty | Revoke GCC or SGT 3 Months |
| | 403 Disobeying A Direct Order | Guilty | |
| 9/21/2004 200402197/2-STA Major | 201 Concealment of Identity | Not Guilty | 6 Months C Grade/Level |
| | 202 Damage Or Misuse of Property | Guilty | 6 Months Segregation |
| | 206 Intimidation Or Threats | Guilty | Revoke GCC or SGT 6 Months |
| | 304 Insolence | Guilty | Restitution of $ 75.00 Paid to IDOC |
| | 403 Disobeying A Direct Order | Guilty | |
| 10/21/2004 200402436/1-STA Major | 206 Intimidation Or Threats | Guilty | 6 Months C Grade/Level |
| | 308 Contraband/Unauthorized Property | Guilty | Revoke GCC or SGT 1 Months |
| | 310 Abuse Of Privileges | Guilty | 6 Months Commissary Restriction |
| | 402 Health,Smoking Or Safety Violations | Guilty | 2 Months Yard Restriction |
| 2/27/2005 200500714/1-STA Major | 101 Arson | Guilty | 6 Months C Grade/Level 6 Months Segregation Revoke GCC or SGT 6 Months 3 Months Yard Restriction 3 Months Audio/Visual Restriction |

**Adjustment Comments**
Per Warden Dee L. Battaglia, Expunge ticket.

**Adjusted Discipline**
 GCC reduced to Zero
C Grade/Level Reduction reduced to Ze
 Segregation reduced to Zero
**Adjusted Loss of Privilege/Offense**
Yard Reduced to
Audio/Visual Reduced to

| 4/5/2005 200501067/1-STA Major | 311 Failure To Submit To Medical Or Forensic Test | Guilty | 3 Months C Grade/Level |
|---|---|---|---|
| | 403 Disobeying A Direct Order | Not Guilty | 3 Months Segregation |
| | 404 Violation Of Rules Comments: AD 04.01.260 | Deleted | Revoke GCC or SGT 3 Months 3 Months Commissary Restriction |

**Adjustment Comments**
Per Warden Dee L. Battaglia, Reduce discipline to 1 r
Seg only.

**Adjusted Discipline**
 GCC reduced to Zero
C Grade/Level Reduction reduced to Ze
 Segregation reduced to 1 Months
**Adjusted Loss of Privilege/Offense**
Commissary Reduced to

# State of Illinois – Department of Corrections Disciplinary Tracking Inmate Disciplinary Card

**Name:** **KNOX, CHRISTOPHER**                                    **IDOC # :** B61090

**Transferred In:** 2006-01-10      Disciplinary History from 1/1/1998 through 8/20/2007      **Living Unit:** TAM/F/01/02

| Incident Date<br>Incident/Summ#/Inst.<br>Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 5/6/2005<br>200501366/1-STA<br>Major | 202 Damage Or Misuse of Property<br>Comments: BROKE GLASS OUT OF WINDOW | Guilty | 1 Months C Grade/Level<br>1 Months Segregation |
| 5/24/2005<br>200501533/1-STA<br>Major | 102 Assaulting Any Person - Staff<br>Comments: INJURIES TO STAFF PERSON (ARM,ETC.)<br>202 Damage Or Misuse of Property<br>Comments: PULLED MIC FROM STAFF RADIO | Guilty<br><br><br>Guilty | 1 Year C Grade/Level<br>1 Year Segregation<br>Revoke GCC or SGT 1 Year<br>6 Months Contact Visits Restriction |
| 6/5/2005<br>200501654/2-STA<br>Major | 102 Assaulting Any Person - Staff<br>Comments: i/m threw unknown substance in face  thr<br>202 Damage Or Misuse of Property<br>206 Intimidation Or Threats<br>304 Insolence | Guilty<br><br><br>Not Guilty<br>Not Guilty<br>Guilty | 1 Year C Grade/Level<br>6 Months Segregation<br>Revoke GCC or SGT 3 Months<br>6 Months Contact Visits Restriction |
| 8/25/2005<br>200502495/1-STA<br>Major | 308 Contraband/Unauthorized Property<br>402 Health,Smoking Or Safety Violations | Guilty<br>Guilty | 1 Months C Grade/Level |
| 8/29/2005<br>200502533/1-STA<br>Major | 202 Damage Or Misuse of Property<br>210 Impairment Of Surveillance<br>403 Disobeying A Direct Order | Not Guilty<br>Not Guilty<br>Guilty | 1 Months C Grade/Level |
| 9/15/2005<br>200502980/1-STA<br>Major | 206 Intimidation Or Threats<br>304 Insolence<br>403 Disobeying A Direct Order | Not Guilty<br>Guilty<br>Not Guilty | 1 Months C Grade/Level |
| 10/21/2005<br>200503276/1-STA<br>Major | 102 Assaulting Any Person - Staff<br>Comments: grabbed staff<br>206 Intimidation Or Threats<br>304 Insolence<br>403 Disobeying A Direct Order | Guilty<br><br>Not Guilty<br>Guilty<br>Guilty | 1 Year C Grade/Level<br>6 Months Segregation<br>Revoke GCC or SGT 3 Months<br>3 Months Commissary Restriction<br>6 Months Contact Visits Restriction |
|  |  |  | **Adjusted Discipline**<br>GCC reduced to 1 Months |
| 11/4/2005<br>200503389/1-STA<br>Major | 210 Impairment Of Surveillance<br>304 Insolence<br>403 Disobeying A Direct Order<br>404 Violation Of Rules<br>Comments: 1.E cell covering | Guilty<br>Guilty<br>Guilty<br>Not Guilty | 1 Months C Grade/Level<br>15 Days  Segregation |
| 11/11/2005<br>200503456/1-STA<br>Major | 210 Impairment Of Surveillance<br>304 Insolence<br>403 Disobeying A Direct Order<br>404 Violation Of Rules<br>Comments: 1.e 1.e 1.e | Guilty<br>Guilty<br>Guilty<br>Not Guilty | 2 Months C Grade/Level |

# State of Illinois Department of
## Corrections Disciplinary Tracking Inmate
### Disciplinary Card

**Name: KNOX, CHRISTOPHER**                                    **IDOC # : B61090**

**Transferred In: 2006-01-10**   Disciplinary History from 1/1/1998 through 8/20/2007   **Living Unit: TAM/F/01/02**

---

**Incident Date**
**Incident/Summ#/Inst.**
**Ticket Type**                **Offense Codes, Descriptions**                              **Disciplinary Action**

---

| Incident Date / Summ# / Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 12/19/2005<br>200505657/1-PON<br>Major | 203 Drugs & Drug Paraphernalia<br>Comments: WOULD NOT INGEST/RETURN MEDICATION | Guilty | 3 Months C Grade/Level<br>3 Months Segregation |
| | 206 Intimidation Or Threats | Guilty | Revoke GCC or SGT 1 Months |
| | 403 Disobeying A Direct Order | Guilty | 3 Months Commissary Restriction<br>3 Months Audio/Visual Restriction<br>6 Months Contact Visits Restriction |
| 12/26/2005<br>200505715/1-PON<br>Major | 403 Disobeying A Direct Order | Guilty | 3 Months C Grade/Level |
| 12/26/2005<br>200505710/1-PON<br>Minor | 308 Contraband/Unauthorized Property | Guilty | 3 Months C Grade/Level |
| | 402 Health,Smoking Or Safety Violations | Guilty | |
| 3/6/2006<br>200600541/1-MEN<br>Major | 102 Assaulting Any Person - Staff<br>Comments: SPIT ON EMPLOYEE | Guilty | 1 Year C Grade/Level<br>1 Year Segregation |
| | 304 Insolence | Guilty | Revoke GCC or SGT 6 Months |
| | | | 1 Year Commissary Restriction<br>6 Months Contact Visits Restriction |
| 4/11/2006<br>200601991/2-DIX<br>Major | 206 Intimidation Or Threats | Guilty | 1 Months C Grade/Level<br>1 Months Segregation |
| 4/13/2006<br>200600276/1-TAM<br>Major | 102 Assaulting Any Person - Staff<br>Comments: Threw meds striking nurse | Guilty | 1 Year C Grade/Level<br>1 Year Segregation |
| | | | Revoke GCC or SGT 1 Year |
| | | | 1 Year Commissary Restriction<br>6 Months Contact Visits Restriction |
| | | | **Adjusted Discipline**<br>GCC reduced to 3 Months<br>C Grade/Level Reduction reduced to 6 Months<br>Segregation reduced to 6 Months<br>**Adjusted Loss of Privilege/Offense**<br>Commissary Reduced to 6 Months |
| 4/13/2006<br>200600275/1-TAM<br>Major | 102 Assaulting Any Person - Staff<br>Comments: Spit on lieutenant Spit on LT's forehead | Guilty | 1 Year C Grade/Level<br>1 Year Segregation |
| | 206 Intimidation Or Threats | Deleted | Revoke GCC or SGT 1 Year |
| | 301 Fighting | Deleted | 1 Year Commissary Restriction<br>3 Months Yard Restriction<br>6 Months Contact Visits Restriction |
| 5/30/2006<br>200600347/1-TAM<br>Major | 202 Damage Or Misuse of Property | Guilty | 6 Months C Grade/Level<br>6 Months Segregation<br>6 Months Commissary Restriction |

---

# State of Illinois Department of
# Corrections Disciplinary Tracking Inmate
# Disciplinary Card

**Name: KNOX, CHRISTOPHER**

**IDOC # : B61090**

**Transferred In: 2006-01-10**  Disciplinary History from 1/1/1998 through 8/20/2007

**Living Unit: TAM/F/01/02**

| Incident Date Incident/Summ#/Inst. Ticket Type | Offense Codes, Descriptions | | Disciplinary Action |
|---|---|---|---|
| 7/13/2006 200600440/1-TAM Major | 100 Violent Assault Of Any Person - Staff Reduced to : 102 Comments: Violently kicked r/o in knee Violently k | Guilty | 1 Year C Grade/Level |
| | | | 1 Year Segregation |
| | | | Revoke GCC or SGT 1 Year |
| | 206 Intimidation Or Threats | Deleted | Restitution of $ 448.64 Paid to State of Illir |
| | 304 Insolence | Deleted | 1 Year Commissary Restriction |
| | | | 3 Months Yard Restriction |
| | | | 6 Months Contact Visits Restriction |
| | | | **Adjusted Discipline** |
| | | | GCC reduced to 6 Months |
| 8/18/2006 200600468/1-TAM Major | 202 Damage Or Misuse of Property | Guilty | 6 Months C Grade/Level |
| | | | 6 Months Segregation |
| | | | Restitution of $ 20.25 Paid to State of Illinc |
| | | | 6 Months Commissary Restriction |
| 10/2/2006 200600551/1-TAM Major | 310 Abuse Of Privileges | Guilty | 3 Months C Grade/Level |
| | 403 Disobeying A Direct Order | Guilty | 3 Months Law Library Restriction |
| | 404 Violation Of Rules Comments: Library Rule 3 | Guilty | |
| 2/8/2007 200700086/1-TAM Major | 303 Giving False Information To An Employee | Guilty | 1 Months C Grade/Level |
| | | | 1 Months Audio/Visual Restriction |

ILLINOIS DEPARTMENT OF CORRECTIONS
TAMMS CORRECTIONAL CENTER

# CMAX INTAKE REVIEW SCREENING FORM

**DATE:**  1/19/06

**NAME:**  Knox, Christopher

**NUMBER:**  B61090

☒ **DISCIPLINARY SEGREGATION REVIEW**

**PROJECTED SEG RELEASE DATE:**  10/28/31

☐ **ADMINISTRATIVE DETENTION REVIEW**

**MOST RECENT SEG RELEASE DATE:**  01/10/06

## IDENTIFICATION DATA

**CUSTODY DATE:**  08/04/1994    **RECEIVED IDOC:**  11/09/1994    **RECEIVED CMAX:**  _____

**OFFENSE(S) / SENTENCE(S):**  Att Murder/Intent to Kill (23 years), Disorderly Conduct (3 years, cs), Agg Batt/Peace Off (4 years), Agg Batt/Peace Off (5 years, cs), Agg Batt/Correctional Emp (5years,cs), Agg Batt Great Bodily Harm (4 years,cc) Poss Weapon in Prison-2 counts (9 years aggregate, cs)

**COMMITTING COUNTY:**  Lake, Livingston, Johnson

**DATE OF BIRTH:**  07/10/1975

**ESCAPE RISK:**  Low    **SECURITY:**  Max    **AGGRESSION LEVEL:**  High    **GRADE:**  C

**MSR / PRB DOCKET DATE:**  08/19/33    **STG AFFILIATION:**  Black Gangster (Intel)

**KSF'S LOCATED AT THIS FACILITY:**  None Listed

**RATIONALE FOR TAMMS (CMAX) PLACEMENT:**  Offender's overall negative adjustment and total disrespect towards Department of Corrections staff and other offenders as well.

**PROBLEMATIC INSTITUTIONAL ADJUSTMENT:**  10/21/05, Assault (Staff);  06/05/05, Assault (Staff);  05/24/05, Assault (Staff);  05/06/05, Damage or Misuse of Property;  08/25/04, Assault (Staff)STA;  05/02/04, Dangerous Contraband;  10/21/03, Assault (Inmate);  12/16/02, Violent Assault (Staff);  12/16/02, Assault(Staff);  12/16/02, Attempted Assault (Staff);  11/12/01, Assault (Staff and Inmate);  08/26/01, Assault (Inmate);  07/07/01, Assault (Inmate);  05/05/01, Assault (Staff);  05/03/01, Assault (Inmate);  02/21/01 Assault (Staff).

RECEIVED

FEB 28 2006

TAMMS CORR CENTER
RECORD OFFICE

**MEDICAL / MENTAL HEALTH CONCERNS:**  None

TAM 0172 (Rev. 09/2003)
Replaces 250-46070

ILLINOIS DEPARTMENT OF CORRECTIONS
TAMMS CORRECTIONAL CENTER

# CMAX INTAKE REVIEW SCREENING FORM
## PAGE 1 OF 2

**COMMENTS:**

Overall negative adjustment — extensive assault Hx.

**REVIEWING EMPLOYEE:** s/Nona Moore    ("CI    **DATE:** 1/19/06

**CSS/CWS:** s/signature    **DATE:** 2/6/06

☒   **APPROVED FOR TAMMS PLACEMENT**
☐   **NOT APPROVED FOR TAMMS PLACEMENT**

**ASSISTANT WARDEN:** s/Eddie Jones    **DATE:** 2-6-06
**COMMENTS/RATIONALE:** History of staff and offender assaults, overall negative adjustment

☑   **APPROVED FOR TAMMS PLACEMENT**
☐   **NOT APPROVED FOR TAMMS PLACEMENT**

**WARDEN:** s/signature    **DATE:** 2/10/04
**COMMENTS/RATIONALE:** History of Staff ē i/m Assaults.

cc:   **Masterfile (Original)**
     **Clinic File**

## PAGE 2 of 2

ILLINOIS DEPARTMENT OF CORRECTIONS

## Placement at Tamms Closed Maximum Security Facility

**Part I:**

Referring Facility: **Pontiac Correctional Center**                                    Date:  **12/20/05**

Offender Name:  **Christopher Knox**                                               ID #:  **B61090**

Custody Date:  **08/04/1994**                                    Received at IDOC:  **11/09/1994**

Offenses(s)/Sentence(s):  **Att Murder/Intent to Kill (23 years), Disorderly Conduct (3 years, cs), Agg Batt/Peace Off (4 years, cs), Agg Batt/Peace Off (5 years, cs), Agg Batt/Correctional Emp (5 years, cs), Agg Batt Great Bodily Harm (4 years, cc), Poss Weapon in Prison-2 counts (9years aggregate, cs)**

Committing County: **Lake, Livingston, Johnson**                         Date of Birth:  **07/10/1975**

Escape Risk:  **MODERATE**

Security:  **MAXIMUM**

B Grade Effective Date:  **12/20/2043**                         A Grade Effective Date:  **06/03/2088**

MSR/Parole Eligibility Date: **08/19/2030**                 Disciplinary Segregation Release Date:  **07/28/2031**

Security Threat Group Affiliation: **Black Gangster** ▮▮▮▮

Problematic Institutional Adjustment:

10/21/2005: Assault (Staff) STA: Grabbed Staff – 1 year C grade, 6 months segregation and restriction on contact visits, 3 months revocation of GCC and restriction on commissary.

06/05/2005: Assault (Staff) STA: Threw unknown liquid substance in officer's face – 1 year C grade, 6 months segregation and restriction on contact visits, 3 months revocation of GCC.

05/24/2005: Assault (Staff) STA: Assaulted Staff causing injuries to staff arm – 1 year segregation, C grade, revocation of GCC, 6 months restriction on contact visits.

05/06/2005: Damage or Misuse of Property STA: Broke glass out of window – 1 month segregation, C grade.

08/25/2004: Assault (Staff) STA: Pushed bullpen gate into officer and kicked officer – 1 year segregation, C grade, revocation of GCC, 6 months restriction on contact visits.

05/02/2004: Dangerous Contraband PON: Broken compact disc with sharp edges – 6 months segregation, C grade, revocation of GCC, restriction on audio/visual and commissary.

10/21/2003: Assault (Inmate) PON: Spit on another offender – 6 months segregation, C grade, restriction on contact visits, 3 months restriction on commissary and audio/visual.

12/16/2002:  Violent Assault (Staff) PON:  Threw liquid substance in the eyes of employee – Indeterminate Segregation, 1 year C grade, revocation of GCC, restriction on contact visits, commissary and audio/visual, 3 months restriction on yard, restitution.

12/16/2002: Assault (Staff) PON: Kicked Captain in leg – 1 year segregation, C grade, restriction on commissary and audio/visual, 6 months revocation of GCC, 3 months restriction on yard.

12/16/2002: Attempted Assault (Staff) PON: Attempted to spit on Lieutenant – 1 year segregation, C grade, restriction on commissary and audio/visual.

11/12/2001: Assault (Staff) PON:  3 months segregation, C grade, revocation of GCC, restriction on commissary and audio/visual.

11/12/2001: Assault (Staff and Inmate) PON: Kicked inmate and officer – 1 year segregation, C grade, revocation of GCC, restriction on contact visits, commissary and audio/visual, 6 months restriction on yard.

ILLINOIS DEPARTMENT OF CORRECTIONS

## Placement at Tamms Closed Maximum Security Facility

08/26/2001: Assault (Inmate) PON: Spit on inmate worker – 6 months segregation, C grade, revocation of GCC, 3 months restriction on commissary and audio/visual.

07/07/2001: Assault (Inmate) PON: Spit in inmate's face – 6 months segregation, C grade, revocation of GCC, 3 months restriction on commissary and audio/visual.

05/05/2001: Assault (Staff) PON: Spit in Med Tech's face 2X – 1 year segregation, C grade, revocation of GCC, 6 months restriction on contact visits, 3 months restriction on commissary and audio/visual.

05/03/2001: Assault (Inmate) PON: Struck inmate on face with hand – 1 year segregation, C grade, 6 months revocation of GCC, 3 months restriction on commissary and audio/visual.

02/21/2001: Assault (Staff) PON: Spit on staff – 1 year segregation, C grade, revocation of GCC, 6 months restriction on contact visits, commissary and audio/visual.

Reviewed by: _s/signature_

| | | |
|---|---|---|
| Name | Casework Supervisor | 12/20/2005 |
| | Title | Date |

**Part II:**

Medical Concerns: ✓ Seizure on Dilantin

Reviewed by:

_s/signature_

| | | |
|---|---|---|
| Name | Title | 12-20-05 |
| | | Date |

ILLINOIS DEPARTMENT OF CORRECTIONS

## Placement at Tamms Closed Maximum Security Facility

**Part III:** *This part is to be completed by the Chief of Mental Health services or Mental Health Staff.*

Mental Health Concerns:    ☒ No    ☐ Yes, specify reasons: _____

In reviewing the Medical and Master files, check all of the following that apply if there are mental health concerns:

☐ Has been on enforced psychotropic medication or has had a diagnosis of a serious mental illness in the two years preceding the review.

☐ Has been assigned to the Dixon Psychiatric Unit within the two years preceding the review.

☐ Has had serious suicide attempts within the two years preceding the review.

☐ Is actively psychotic or has been evaluated as having high probability of decompensating quickly within the near future.

☐ Has a history of being non-compliant with psychotropic medication and exhibiting serious mental illness.

☐ Displays a behavior pattern of frequent and severe or bizarre self-mutilation.

☐ Has been adjudicated Guilty but Mentally Ill.

☐ Has a recent history of multiple incidents requiring the use of therapeutic restraints, especially when the restraints have been ordered for long periods of time.

☐ Has exhibited mental health problems during previous placement at the Tamms Correctional Center.

☐ Presents other serious mental health concerns (describe) _____

Reviewed by:

| s/signature | *Psychiatrist* | 12-30-05 |
|---|---|---|
| **Name** | **Title** | **Date** |

**NOTE:** If the answer to Mental Health Concerns is "Yes", refer to the Office of Health Services for completion of Part IV.

---

**Part IV:**

Referring facility's reasons for recommending placement at Tamms:  *Offender's overall negative adjustment and total disrespect towards Department of _____ ____ ____er offenders as well.*

| s/signature | |
|---|---|
| **Chief Administrative Officer** | **Date** |

---

OIS DEPARTMENT OF CORRECTIONS

## Placement at Tamms Closed Maximum Security Facility

Knox B6/D/M

**Part V:** This part is to be completed by the Chief of Mental Health Services only if mental health concerns were noted in Part III.

Does the offender currently meet the definition of seriously mentally ill in accordance with Administrative Directive 05.12.110?

☐ Yes    ☐ No         Reasons: _____

If yes, I recommend placement at:    ☐ Tamms Special Treatment Unit        ☐ Other _____

Reviewed by :

_____          _____          _____
            Name                              Title                   Date

**Part VI:**

☐ Transfer to Tamms Correctional Center      ☐ Transfer to Tamms Special Treatment Unit

☐ Approve

        s/signature                                                       1/9/06
                              _____              Date
                                  Deputy Director