**E-FILED**
Friday, 15 August, 2008  09:06:48 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHRISTOPHER KNOX,
    Plaintiff,

    vs.                No. 07-1032

ROGER WALKER, et. al,
    Defendants

<u>MERIT REVIEW AND CASE MANAGEMENT ORDER</u> #1

      The pro se plaintiff filed his original complaint pursuant to 42 U.S.C.§1983 against seven defendants from the Illinois Department of Corrections (here in IDOC).   On March 23, 2007, the court conducted a merit review of the complaint and found the plaintiff had stated the following claims against Defendants IDOC Director Roger Walker, Deputy Directors Rick Orr and Jason Garnett, Pontiac Correctional Center Warden Guy Pierce, Tamms Correctional Center Warden Shelton Frey and Tamms Chief Administrative Officers Terry McCann and Jay Merchant:

      1) the defendants violated the plaintiff's First Amendment rights when they
      transferred him to Tamms Correctional Center in retaliation for grievances,
      lawsuits and assistance in an excessive force investigation; and,

      2) the defendants violated the plaintiff's Fourteenth Amendment due process
      rights when they transferred him to Tamms without a meaningful hearing.

The claims were against the defendants in their individual and official capacities. *See* March 23, 2008 Court Order.

      The plaintiff has filed various motions asking to amend his complaint and to add ten new defendants. [d/e 28, 29, 34, 35, 36].  The motions were filed before the defendants had filed an answer to the complaint. Rule 15(a) of the Federal Rules of Civil Procedure clearly provides that a plaintiff "may amend his pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15 (a).  However, the court does not permit piecemeal amendments.  A plaintiff who wishes to file an amended complaint must submit the proposed amended complaint setting forth all claims against all defendants.  The amended complaint must stand complete on its own, without reference to the pleading it replaces.   This prevents confusion over intended claims and defendants.   Only one of the plaintiff's motions includes a complete amended complaint. [d/e 29]. Therefore the court will allow this motion to amend and conduct a merit review of the amended complaint.  All other motions are denied.

      The court is required by 28 U.S.C. §1915A to "screen" the plaintiff's complaint, and through

1

such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The plaintiff's amended complaint names the original 7 defendants and adds IDOC Associate Director James Montgomery, Chief Administrative Officer Ben Bartley and Doctors Williard Elyea, Wendy Navarro, A. Angus, Christine Fletcher, John Garlik, Marvin Powers, Kelly Rhodes and Rakesa Chandra.

The plaintiff repeats the first two claims he made in his original complaint. First, the plaintiff alleges that he was transferred from Pontiac Correctional Center to Tamms Correctional Center in retaliation for various grievances and lawsuits he has filed and for helping in the investigation of an excessive force claim against officers. The plaintiff says the defendants have an unwritten policy and practice of transferring inmates who are active litigators to Tamms Correctional Center. The plaintiff alleges that the defendants actions violate his First and Fourteenth Amendment rights. The court again finds the plaintiff has adequately alleged a violation of his First Amendment rights, but has failed to articulate a violation of his Fourteenth Amendment rights based on the amended complaint.

Second, the plaintiff states that the defendants transferred him to Tamms Correctional Center without a meaningful hearing in violation of his Fourteenth Amendment due process rights. The plaintiff claims the living conditions at Tamms are harsh and impose an atypical and significant hardship on those living in the facility compared to the ordinary incidents of prison life. The plaintiff alleges that each of the defendants was personally involved in approving the transfer without a hearing and/or were personally involved in approving policies that allowed the transfer without a hearing. The court again finds that the plaintiff has adequately alleged a violation of his Fourteenth Amendment rights. *See Westefer v. Snyder,* 422 F.3d 570 (7th Cir. 2005).

The plaintiff's amended complaint adds six additional counts which all involve allegations involving Tamms Correctional Center:

**Count III:** The plaintiff has entitled this count, "As Defendants are aware, Tamms Houses Many Prisoners Who are Mentally Ill." (Comp, p. 16)   It is not entirely clear what the plaintiff is alleging, but he does list a variety of problems with the way inmates are treated at Tamms Correctional Center.
**Count IV**: "Conditions at Tamms are Designed To and Do Cause Psychological Damage." (Comp, p. 20).   The plaintiff again lists a variety of problems at Tamms Correctional Center.
**Count V**: "Defendants have Acted with Deliberate Indifference to the Plaintiff's Serious Mental Health Needs." (Comp. P. 24) The plaintiff outlines the problems with care at Tamms Correctional Center.
**Count VI**: "Denial of Liberty Interest for Indeterminate Segregation Placement at Tamms." (Comp., p. 29).
**Count VII**: "Declaratory Relief." (Comp, p. 32) The plaintiff has improperly identified this as a

2

"count" rather than a request for relief.

**Count VIII**: "Injunctive Relief." (Comp., p. 32) The plaintiff has again improperly labeled his requests for relief as a separate "count" in his complaint.

There are several problems with the plaintiff's additional claims. First, as the court has noted, Counts VII and VIII are not actually allegations against the defendants, but claims for relief.

Second, the plaintiff's claims involving his treatment at Tamms Correctional Center do not involve an institution or defendants in the Central District of Illinois. Venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b). According to that statute, such actions may be brought only in (1) the judicial district where any defendant resides (if all defendants reside in the same State), (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Tamms Correctional Center is in Alexander County which is situated in the federal judicial district for the Southern District of Illinois. If venue is improper the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406 (a). The plaintiff is well aware of this fact. The plaintiff is an experienced litigator who has filed over twenty-seven cases in the northern, southern and central districts of Illinois. This number includes seven cases filed in the Southern District of Illinois that were filed AFTER he was transferred to Tamms Correctional Center and involve some of the same defendants as the case before the court.[1]   In addition, this court has recently advised the plaintiff in *Knox v. Garlik,* Case No. 08-1081, that his claims against Tamms Correctional Center must be brought in the Southern District of Illinois. *See* 08-1081, April 23, 2008 Court Order.

Third, while the plaintiff makes a very broad claim that each defendant is responsible for his transfer, it appears the plaintiff is attempting to improperly bring unrelated claims in a single case. In *George v Smith,* 507 F.3d 605, 607 (7th Cir. 2007), the Court of Appeals stated that "[u]nrelated claims against different defendants belong in different suits." In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. *Id.*

Therefore, the court will dismiss counts three through eight. This leaves the court with the question of which defendants should remain in this case. The plaintiff does not specifically state which defendants were involved in the decision to transfer him to Tamms Correctional Center and instead includes general claims that "each of the Defendants was involved in personally approving the transfer of the plaintiff..." (Comp., p. 12).

While the court appreciates that the plaintiff is only required to put a defendant on notice of his claims in his complaint, the court is not willing to accept this blanket assertion that 17 different

---

[1]*See Knox v. Harper,* Case No. 08 cv 00178; *Knox v. White,* Case No. 08 cv 00277; *Knox v. Powers,* Case No. 07 cv 00508; *Knox v. Benefield,* Case No. 07 cv 00795; *Knox v. Rhodes,* Case No. 07 cv 835; *Knox v. Dr. Fienerman,* Case No. 07 cv 00886; and *Knox v. Iylola,* Case No. 07 cv 00814.

defendants including many which would have no involvement in inmate transfers were somehow involved in the decision to transfer the plaintiff.  "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).  In addition, the doctrine of *respondeat superior* (supervisor liability) does not apply.  *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v Peters,* 97 F.3d 987, 992 (7th Cir. 1996).

The court notes the defendants have acknowledged that it was Pontiac Correctional Center Warden Pierce who recommended the plaintiff's transfer.  The defendants have also provided the plaintiff with the names of the individuals who reviewed his transfer. (Def. Sum. Judgement Memo, doc 49).  None of the additional defendants appear to have been involved in the decision to transfer the plaintiff.   In addition, this case has been pending since February 12, 2007 and the plaintiff has participated in discovery.   The information the plaintiff has obtained plus any documents provided by the defendants in court filings should provide the plaintiff with enough information to be able to identify specifically who was involved in his transfer beyond the broad assertion made in his amended complaint.

 It appears the plaintiff has added the ten additional defendants, most of whom are doctors, because he is unhappy with his treatment at Tamms Correctional Center. However, any claims concerning the conditions at Tamms are not before the court.  The court notes that nine of the ten new defendants work at Tamms Correctional Center and would not have seen or treated the plaintiff prior to his transfer.  Deputy Director Richard Montgomery does not appear to have any involvement in the plaintiff's transfer, and Defendant Orr, who is already in the case, admits he signed off on the paperwork.

The court will therefore dismiss the ten additional defendants, but will give the plaintiff leave to file a brief statement if he has any information that would demonstrate that these individuals were directly involved in the decision to transfer him from Pontiac Correctional Center to Tamms Correctional Center.

**IT IS THEREFORE ORDERED that:**

**1) The plaintiff's motion to amend his complaint is granted. [d/e 29] The clerk of the court is directed to file the attached amended complaint.**

** 2) The plaintiff's various repetitive motions to amend his complaint and/or add ten new defendants are denied. [d/e 28, 34, 35, 36].  The plaintiff has not included a proposed amended complaint with these motions and the court does not allow piecemeal amendments.**

**3) The plaintiff's motion for a hearing on his motion to amend the complaint is denied. [d/e 39]**

**4) Pursuant to its merit review of the amended complaint under 28 U.S.C. Section 1915A,**

the court finds that the plaintiff still has the following two federal claims:

      **a) The named defendants violated the plaintiffs First Amendment rights when they transferred the plaintiff to Tamms Correctional Center in retaliation for his grievances, lawsuits and assistance in an excessive force investigation.**

      **b) The named defendants violated the plaintiffs Fourteenth Amendment due process rights when they transferred him to Tamms Correctional Center without a meaningful hearing.**

      **Both claims are against the defendants in their official and individual capacities.**

**5) All other claims based on federal law, other than those set forth in paragraph (4) above, are dismissed. The plaintiff cannot bring claims concerning the conditions at Tamms Correctional Center in the Central District of Illinois. The clerk is directed to dismiss Defendants James Montgomery, Ben Bartley, Dr. Williard Elyea, Dr. Wendy Navarro, Dr. Angus, Dr. Christine Fletcher, Dr. John Garlik, Dr. Marvin Powers, Dr. Kelly Rhodes and Dr. Rakesa Chandra**

**6) This case shall proceed solely on those federal claims identified in paragraph four above. Any claims not set forth in paragraph one above shall not be included in the case, except in the court's discretion on motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. The plaintiff's claims have not changed from his original complaint. No additional answer from the defendants is necessary.**

Entered this  15th  Day of August, 2008.

        **s\Harold A. Baker**
      _____
        HAROLD A. BAKER
      UNITED STATES DISTRICT JUDGE

1:07 NOV-19-2007 #823 5 Pages of 35 TRICT COURT
NOV-19 2007
U.S. CLERK'S OFFICE
PEORIA, ILLINOIS CENTRAL DISTRICT OF ILLINOIS

E-FILED
Monday, 19 November, 2007 03:34:22 PM
Clerk, U.S. District Court, ILCD

CHRISTOPHER KNOX

CASE # No # 07-CV-1032

PLAINTIFF- PRO SE

JURY-TRIAL DEMANDED

-VS-

ROGER E. Walker, RICK ORR, GUY PIERCE,
Jason GARNETT, SHELTON FREY, TERRY McCANN, ███ ███████.
JAY MERCHANT, KEN DARTLEY, DRS. WENDY NAVARRO, JAMES MONTGOMERY██,
WILLIAM ELYEA, MARVIN POWERS, KELLY RHODES ████ RAKESH CHANDRA,
A. ANGUS, CHRISTINE FLETCHER AND, JOHN GARLICK. ET AL

DEFENDANTS

AMENDED - COMPLAINT

COMPLAINT FOR, INJUNCTION RELIEF
DECLARATORY RELIEF, AND DAMAGES..

NOW COMES PLAINTIFF, CHRISTOPHER KNOX, PROSE, COMPLAIN OF DEFENDANTS
ROGER E. Walker, RICK ORR, GUY PIERCE, JASON GARNETT, SHELTON FREY, TERRY
McCANN, JAY MERCHANT, KEN BARTLEY, DRS. WENDY NAVARRO, WILLIAM ELYEA,
MARVIN POWERS, KELLY RHODES, RAKESH CHANDRA, A. ANGUS, CHRISTINE FLETCHER,
AND, JOHN GARLICK.. AS FOLLOWS...

NATURE OF THE CASE

1). PLAINTIFF, IS AN INMATE who ARE CURRENTLY CONFINED IN ILLINOIS
SUPERMAX PRISON, TAMMS CORRECTIONAL CENTER. (TAMMS). PLAINTIFF,
ALLEGES THAT; HIS SELECTION BY DEFENDANTS FOR TRANSFER TO ( AND THE
CONTINUE CONFINEMENT UNDER PSYCHOLOGICAL CONDITIONS AT TAMMS). VIOLATES
HIS RIGHTS UNDER THE FIRST, EIGHT, AND FOURTEENTH AMENDMENTS. THE
PLAINTIFF, FURTHER ALLEGES THAT, PLACEMENT IN INDETERMINATE DISCIPLINARY
SEGREGATION FOR THE REMAINDER OF HIS INCARCERATION IN TAMMS C/C VIOLATES
HIS LIBERTY INTEREST, IN VIOLATION OF THE FOURTEENTH AMENDMENT..

2). TAMMS, IS INTENDED AS A SEVERE FORM OF PUNISHMENT FOR THE "WORST OF THE WORST" OF ILLINOIS PRISONERS, THOSE WHO ARE SIMPLY TOO DANGEROUS TO BE HOUSED EVEN AT ILLINOIS FOUR MAXIMUM SECURITY PRISONS. . . .

3). However, THE REALITY IS THAT TAMMS IS NOT POPULATED BY THE WORST MOST VIOLENT OR DANGEROUS INMATES, IN THE ILLINOIS PRISON SYSTEM. Rather, IT IS largely POPULATED BY LITIGATOR'S, AND ALLEGED GANG ASSOCIATES, MANY OF WHOM HAVE NO DISCIPLINARY SIGNIFICANT HISTORIES AND SERIOUSLY MENTALLY ill PRISONERS. . . . . .

4). PLAINTIFF, IN THIS CASE WERE SELECTED FOR TRANSFER TO TAMMS, IN RETALIATION FOR his LITIGATION ACTIVITIES, GRIEVANCES, writwriting AND FOR COOPERATING WITH THE STATE POLICE, REGARDING EXCESSIVE FORCE INCIDENTS THAT OCCURRED ON OCTOBER 21 2005. IN Stateville C/C. AND BECAUSE OF INSERTING OBJECTS INTO his PENIS . . (RETALIATION - COUNT - 1). ( DUE PROCESS - COUNTS - 2, 6). (AS DEFENDANTS ARE AWARE OF TAMMS - COUNT - 3). ( CONDITIONS OF CONFINEMENT - COUNT - 4). ( DELIBERATE INDIFFERENCE - COUNT - 5). ( DENIAL OF LIBERTY INTEREST - COUNT - 6) ( DECLARATORY RELIEF - COUNT - 7). ( INJUNCTION RELIEF - COUNT - 8) . . . . . .

## JURISDICTION AND VENUE

5). THIS ACTION IS BROUGHT PURSUANT TO SECTION § 42 U.S.C. § 1983, UNDER THE First, EIGHT, AND FOURTEENTH, AMENDMENT TO THE UNITED STATES CONSTITUTIONS. Therefore THIS COURT HAS THE JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1343 . . . .

6). DECLARATORY RELIEF IS SOUGHT PURSUANT TO 28 U.S.C. §§ 2201 AND
2202.. VENUE IS PROPER IN THE CENTRAL DISTRICT OF ILLINOIS
UNDER 28 U.S.C. § 1391 (b). BECAUSE AT least ONE OF THE DEFENDANTS
RESIDES IN THE DISTRICT AND A SUBSTANTIAL PART OF THE EVENTS
AND OMISSIONS GIVING RISE TO PlAINTIFF ClAIMS OCCURRED IN THE
CENTRAL DISTRICT OF Illinois . . . .

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7). PlAINTIFF, HAS exhausTED All AVAILABLE ADMINISTRATIVE RemeDIES
BY FILING GRIEVANCES, TO COUNSELOR, GRIEVANCE OFFICER, AND
APPEALING All GRIEVANCES TO ADMINISTRATIVE REVIEW BoARD whICh
All DENIED . . . . . . . .

## LITIGATION HISTORY

A). HAVE YOU EVER FILE A SUIT IN STATE OR FEDERAL COURT ? ☒ YES.

B). IF YOUR ANSWER TO QUESTION (A) IS YES, HOW MANY ? 18

1). KNOX - VS - PIERSON, 99-616. 2). KNOX - VS - PIERSON, 01-1467. 3). KNOX - VS -
PIERSON, 01-1316. 4). KNOX - VS - BYRANT, 02-4363. 5). KNOX -VS- HAWKINS. 02-06499.
6). KNOX -VS- WAINSCOTT. 03-1429. 7). KNOX -VS- SPENCER. 03-1074, 8). KNOX - VS -
CARLTON, 03-1327. 9). KNOX -VS- SCHOMIG. 03-1377. 10). KNOX -VS- COX, 05-1017.
11). KNOX -VS- RobeRSON, 04-7765. 12). KNOX - VS - FOX, 06-5247 . . . .
13). KNOX -VS- MICHEl, 06-0018. 14). KNOX -VS- WAlKER. 07-1032 . . . .
15). KNOX -VS- DR. POWERS, 07- 508 - WDS. 16). KNOX - VS - KAJTSA, 07-4855.
17). KNOX -VS- IYloLA, 07,-0814. 18). KNOX-VS- NAVARRO, 07- 50053 . . .

3

PLAINTIFF

8). Christopher Knox, has been incarcerated at TAMMS since January 10 2006. He has suffers from a seriously mental illness and has done so for many years . . . . .

DEFENDANTS

9). Defendant, Roger E. Walker, has been the director of the Illinois Department of Corrections ("IDOC"). Since about 2003. As such he is responsible for the administration of All correctional facilities operated by the state of Illinois. He has personal first-hand knowledge of the operation of TAMMS, and upon information and belief was personally involved in formulating and approving the psychological standards currently used at TAMMS, and for selecting inmates for transfer into and out of TAMMS. Defendant, Mr. Walker is sued in both his individual and official capacities . .

10). Defendant, James Montgomery, served as a associate-director of the Illinois Department of Corrections ("IDOC"). As such he is responsible for the overall responsibility for deciding who is transferred into TAMMS. He has personal first-hand knowledge of the operation of TAMMS, and upon information and belief was personally involved in formulating and approving the psychological standards currently used at TAMMS, and for selecting inmates for transfer into and out of TAMMS. Defendant, Mr. Montgumerory is sued in both his individual and official capacities . .

4

BEN BARTLEY.

11). DEFENDANTS, SHELTON FREY, TERRY McCANN, JAY MERCHANT, SERVED AS THE CHIEF ADMINISTRATIVE OFFICER'S, OF TAMMS. AND AS SUCH HAD THE ULTIMATE RESPONSIBILITIES FOR THE ENTIRE OPERATION OF THE FACILITY. INCLUDING IMPLEMENTING ALL STATE AND FEDERAL LAWS AND DEPARTMENT POLICIES, PRACTICES AND PROCEDURES AFFECTING PRISONERS AT TAMMS. CONFINED AT TAMMS. AND UPON INFORMATION AND BELIEF, HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND PERSONALLY APPROVING FOR THE PLAINTIFF CONTINUATION UNDER THE PSYCHOLOGICAL CONDITIONS OF CONFINEMENT AT TAMMS. DEFENDANTS. MR. FREY, MR. McCANN, MR. MERCHANT, AND MR. BARTLEY, ARE SUED IN BOTH THEIR INDIVIDUALS AND OFFICIAL'S CAPACITIES . . . .

12). DEFENDANT. DR. WILLARD OLYEA, IS THE MEDICAL DIRECTOR OF THE DEPARTMENT AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING HEALTH CARE TO PRISONERS OF TAMMS, INCLUDING MENTAL HEALTH CARE. AND UPON INFORMATION AND BELIEF, HE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS, AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS . . DEFENDANT. DR. OLYEA, IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES . . . .

5

13 ). DEFENDANT, DR. WENDY NAVARROW. IS CHIEF OF MENTAL HEALTH SERVICES OF THE DEPARTMENT. AND AS SUCH, HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS OF TAMMS. UPON INFORMATION AND BELIEF, she has FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND was PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE ~~TRANSHITA~~ SELECTION FOR TRANSFER OF INMATES INTO TAMMS. DEFENDANT. DR. NAVARRO. IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITIES . . . .

14 ). DEFENDANT. DR. ANGUS. IS A PSYCHOLOGIST, OF THE DEPARTMENT, AND AS Such HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS OF PONTIAC AND CONDUCTING PSYCHOLOGICAL EVALUATION's OF PRISONERS PRIOR TO THEIR TRANSFER TO TAMMS. UPON INFORMATION AND BELIEF. he has FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS. DEFENDANT. DR. ANGUS, IS SUED IN BOTH his INDIVIDUAL AND OFFICIAL CAPACITIES . . . . .

OF

6

15). DEFENDANT. DR. CHRISTINE FLETCHER. IS THE PSYCHIATRIST OF THE DEPARTMENT. AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS OF PONTIAC clc, AND CONDUCTING PSYCHOLOGICAL EVALUATIONS OF PRISONERS PRIOR TO THEIR TRANSFER TO TAMMS. SHE PROVIDES AND ADMINISTERS PSYCHOTROPIC DRUGS TO THEM. UPON INFORMATION AND BELIEF. SHE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS. DEFENDANT. DR. FLETCHER. IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITIES . . . . .

16). DEFENDANT. DR. JOHN GARLIK. IS A PSYCHOLOGIST, AND PSYCHIATRIC ADMINISTRATOR, OF THE DEPARTMENT. AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS OF PONTIAC clc AND CONDUCTING PSYCHOLOGICAL EVALUATIONS OF PRISONERS PRIOR TO THEIR TRANSFER TO TAMMS. UPON INFORMATION AND BELIEF. HE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. . AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS. DEFENDANT. DR. GARLIK. IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES . . . . .

7

17). DEFENDANT. DR. MARVIN POWERS. IS THE MEDICAL DIRECTOR, OF THE DEPARTMENT. HE OVERSEES THE HEALTH CARE UNITS AT TAMMS. WHICH HE IS RESPONSIBLE FOR PROVIDING MEDICAL AND MENTAL HEALTH SERVICES FOR PRISONERS AT TAMMS. AND CONDUCTING PSYCHOLOGICAL EVALUATIONS OF PRISONERS AT TAMMS. TO. DETERMINE WHETHER OR NOT PLACEMENT IS APPROPRIATE AT TAMMS. UPON IN-FORMATION AND BELIEF. HE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS. DEFENDANT. DR. POWERS. IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES • • •

18). DEFENDANT. DR. KELLY RHODES. IS THE SUPERVISING CLINICAL PSYCHOLOGIST, OF THE DEPARTMENT. AND AS SUCH HAS RESPONSIBILITY TO PROVIDE MENTAL HEALTH SERVICES TO PRISONER AT TAMMS AND OVERSEES THE STAFF OF APPROXIMATELY FOUR-SOCIAL WORKERS, WHO SERVE AS THE PRISON'S MENTAL HEALTH PROFESSIONALS. UPON INFORMATION AND BELIEF. SHE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS. DEFENDANT. DR. RHODES. IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITIES • • • •

8

19). DEFENDANT, RICK ORR. SERVED AS A DEPUTY-DIRECTOR, OF THE ILLINOIS DEPARTMENT OF CORRECTIONS. DURING THE TIME PERIOD WHEN PLAINTIFF SELECTED FOR TRANSFER TO TAMMS. UPON INFORMATION AND BELIEF, HE HAS PERSONALLY FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND FOR SELECTING INMATES FOR TRANSFER INTO AND OUT OF TAMMS. DEFENDANT. MR. ORR. IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

20). DEFENDANT, GUY PIERCE, IS THE (WARDEN) OF PONTIAC C/C . . . AND AS SUCH, HAS ULTIMATE RESPONSIBILITY FOR THE ENTIRE OPERATION OF PONTIAC C/C. INCLUDING IMPLEMENTING ALL STATE AND FEDERAL LAWS AND DEPARTMENT POLICIES, PRACTICES, AND PROCEDURES AFFECTING PRISONERS CONFINED AT PONTIAC C/C. AND UPON INFORMATION AND BELIEF, HAS FIRST-HAND KNOWLEDG OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATION AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND FOR SELECTING INMATES FOR TRANSFER INTO TAMMS. DEFENDANT, MR. PIERCE. IS SUED IN BOTH OF HIS INDIVIDUAL AND OFFICIAL CAPACITIES . . . . .

). DEFENDANT, JASON GARNETT. SERVED AS A DEPUTY-DIRECTOR, OF THE ILLINOIS DEPARTMENT OF CORRECTIONS. DURING THE TIME PERIOD WHEN PLAINTIFF SELECTED FOR TRANSFER TO TAMMS. UPON INFORMATION AND BELIEF. HE HAS PERSONALLY FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND FOR SELECTING INMATES FOR TRANSFER INTO AND OUT OF TAMMS. DEFENDANT. MR. GARNETT. IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES . . . .

21). DEFENDANT, DR. RAKESH CHANDRA, IS THE PSYCHIATRIST OF THE DEPARTMENT. AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS OF TAMMS. AND CONDUCTING PSYCHOLOGICAL EVALUATIONS OF PRISONERS AT TAMMS. TO DETERMIN IF PLACEMENT IS APPROPRIATE AT TAMMS. HE ADMINISTERS PSYCHOTRPIC DRUGS TO THEM. UPON INFORMATION AND BELIEF. HE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND WAS PERSONALLY INVOLVED IN FORMULATING AND APPROVING THE PSYCHOLOGICAL STANDARDS CURRENTLY USED AT TAMMS. AND APPROVING THE SELECTION OF INMATES TRANSFERRED INTO TAMMS. DEFENDANT. DR. CHANDRA, IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.....

10

## Count # 1

PLAINTIFF, HAVE BEEN TRANSFERRED TO TAMMS IN RETALIATION
FOR HIS LITIGATION ACTIVITIES, IN VIOLATION
OF THE FIRST AND FOURTEENTH AMENDMENTS

22). PLAINTIFF, IS AN ACTIVE LITIGATOR WHO HAVE FILED CASES,
GRIEVANCES, AND HAVE OTHERWISE EXERCISED HIS PROTECTED RIGHTS
BY THE FIRST, EIGHT, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF
THE UNITED STATES TO PETITION THE GOVERNMENT REGARDING HIS SAID
CONDITIONS OF CONFINEMENT. . . .

23). THE ADMINISTRATIVE REGULATIONS GOVERNING THE PLACEMENT AT
TAMMS ( 20 ILL. ADM. CODE. § 505. 40 (B) ) PROVIDE THAT AN INMATE
WHO HAS ENGAGED IN OR MAY BE PLANNING TO ENGAGE IN THE FOLLOWING
ACTIVITIES IS ELIGIBLE FOR TRANSFER TO TAMMS : (A). ESCAPE OR
ATTEMPTED ESCAPE. (D). AN ASSAULT WHICH CAUSED DEATH OR SERIOUS BODILY
INJURY. (C). ENGAGED IN DANGEROUS DISTURBANCES. (D). HAS A
INFLUENCE IN A GANG. (E). ENGAGED IN NON-CONSENSUAL SEX . .
(F). POSSESS A WEAPON. . . .

24). BECAUSE OF THE BREATHE AND VAGUENESS OF THESE CRITERIA AND BECAUSE
THEY ALLOW PREDICTION OF FUTURE CONDUCT, 90 PERCENT OF THE INMATES
IN THE ILLINOIS DEPARTMENT OF CORRECTIONS ARGUABLY MEET THE
WRITTEN STANDARDS FOR TRANSFER TO TAMMS CORRECTIONAL CENTER. .

11

25). IN FACT, THE DEFENDANTS HAVE ESTABLISHED AN UNWRITTEN POLICY AND PRACTICE OF TRANSFERRING INMATES WHO ARE ACTIVE LITIGATORS AND WRIT-WRITERS TO TAMMS, IN ORDER TO PUNISH THEM AND TO ISOLATE THEM THEREBY PREVENTING FUTURE LITIGATION . . . . .

26). NON OF PLAINTIFF HAVE A DISCIPLINARY RECORD WHICH, BUT FOR THEIR OR HIS LITIGATION ACTIVITIES. WOULD HAVE MERITED PLACEMENT AT TAMMS CORRECTIONAL CENTER . . . .

27). DEFENDANTS, TRANSFERRED PLAINTIFF TO "PONTIAC" AND TO "TAMMS" IN RETALIATION FOR HIS PROTECTED LITIGATION ACTIVITIES, AND FOR PLAINTIFF COORPERATION WITH THE STATE POLICE REGARDING THE EXCESSIVE FORCE INCIDENT THAT OCCURRED AT "STATEVILLE C/C" ON OR ABOUT OCTOBER 21 2005 . . . .

28). BY PUNISHING PLAINTIFF FOR HIS LITIGATION ACTIVITIES, AND FOR COORPERATING WITH THE STATE POLICE, DEFENDANTS HAVE VIOLATED PLAINTIFF RIGHTS TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES PROTECTED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS . . . .

29). EACH OF THE DEFENDANTS WAS INVOLVED IN PERSONALLY APPROVING THE TRANSFER OF PLAINTIFF TO "PONTIAC" AND TO "TAMMS", IN RETALIATION FOR LITIGATION ACTIVITIES, AND FOR COORPERATING WITH THE STATE POLICE REGARDING AN EXCESSIVE FORCE INCIDENT THAT OCCURRED IN STATEVILLE C/C ON OR ABOUT OCTOBER 21 2005. OR WERE PERSONALLY INVOLVED IN CREATING OR APPROVING THE POLICIES AND CRITERIA FOR PLACEMENT AT "PONTIAC" AND "TAMMS" CORRECTIONAL CENTER . . .

12

30). AS A RESULT OF DEFENDANTS, VIOLATION OF PLAINTIFF FIRST AND FOURTEENTH AMENDMENTS RIGHTS, PLAINTIFF HAS BEEN SUBJECTED TO ONEROUS CONDITIONS OF CONFINEMENT FAR WORSE THAN THOSE THEY WOULD HAVE EXPERIENCE AT ANY OTHER DISCIPLINARY SEGREGATION UNIT, AT ANY OTHER PRISON IN ILLINOIS . . . . .

## Count # 2

Transferring plaintiff, to Tamms without a meaningful hearing, violates plaintiff rights to due process in violation of the Fourteenth Amendment

31). Transfer to Tamms subjects plaintiff to atypical and significant hardships in relation to the ordinary incidents of prison life and to hardships which are not experienced at the most restrictive segregation unit at any of the maximum security prisons in Illinois • • •

32). Plaintiff were not provided with an opportunity for a hearing either before or after his transfer to Tamms which met the minimum requirements of procedural due process • • •

33). In particular, plaintiff, were transferred to Tamms in disciplinary segregation status, and were not granted an opportunity for a hearing of any sort at which plaintiff could challenge his transfer • • •

34). Prisoners who were transferred to Tamms in AD status were granted a hearing, but were not told in advance of the reasons for the transfer or the evidence upon which the decision was based and were not given an opportunity to present witnesses or documents on their own behalf • • • •

14

35). DEFENDANTS, TRANSFERED OF PLAINTIFF TO TAMMS WITHOUT A MEANINGFUL HEARING VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT...

36). EACH OF THE DEFENDANTS WAS INVOLVED IN PERSONALLY APPROVING THE TRANSFER OF PLAINTIFF TO TAMMS WITHOUT A MEANINGFUL OR WERE PERSONALLY INVOLVED IN CREATING OR APPROVING THE POLICIES AND CRITERIA FOR PLACEMENT AT TAMMS, AND THE CONTINUATION OF THE PLACEMENT AT TAMMS...

37). EACH OF THE DEFENDANTS WAS INVOLVED IN PERSONALLY APPROVING PLAINTIFF, FOR PLACEMENT AT TAMMS WITHOUT GIVING PLAINTIFF A PSYCHOLOGICAL EXAMINATION PRIOR TO HIS PLACEMENT AT TAMMS WHICH IS REQUIRED UNDER A.D. § 05.12.110...

38). PLAINTIFF, HAS SEGREGATION TIME THAT GOES BEYOND HIS PRISON SENTENCE ; AND HAS LOST ALL GOOD CONDUCT CREDITS..

39). AS A RESULT OF DEFENDANTS VIOLATION OF THE PLAINTIFF FOURTEENTH AMENDMENT RIGHT, THE PLAINTIFF HAS BEEN SUBJECTED TO ONEROUS CONDITIONS OF CONFINEMENT FOR WORSE THAN THOSE HE WOULD HAVE EXPERIENCED AT ANY OTHER DISCIPLINARY SEGREGATION UNIT. AT ANY OTHER PRISON IN ILLINOIS.... WHICH HAS CAUSED PSYCHOLOGICAL DAMAGES ON PLAINTIFF, AND HAS CAUSED HIS MENTAL ILLNESSES TO WORSEN... DUE TO THE PSYCHOLOGICAL CONDITIONS OF CONFINEMENT THAT TAMMS HAS CAUSED UPON PLAINTIFF.

COUNT # 3

AS DEFENDANTS ARE AWARE, TAMMS HOUSE MANY PRISONERS
WHO ARE SERIOUSLY MENTALLY ILL

40). TAMMS IS A NEWLY BUILT FREE-STANDING FACILITY SPECIALLY
DESIGNED TO MANAGE AND CONTROL VIOLENT OR SERIOUSLY DISRUPTIVE
PRISONERS. IT IS LOCATED AT THE SOUTHERN TIP OF ILLINOIS, NEAR A SMALL
TOWN OF THE SAME NAME. ITS FIRST SIX PRISONERS ARRIVED ON MARCH 9,1998
TODAY, APPROXIAMATELY 270-300 PRISONERS RESIDE THERE. THE FACILITY
IS BUILT TO HOUSE 500 PRISONERS AS WELL AS THE STATE'S NEW EXCUTION
CHAMBER ...

41). THE DECISION ABOUT WHICH OF ILLINOIS' 53,000 PRISONERS WELL BE
TRANSFERRED TO TAMMS IS MADE BY DEFENDANTS ( MR. WALKER ). WITH
THE INPUT FROM FIVE-DEPUTY DIRECTOR'S WHO WORKS UNDER HIS SUPERVISION
AND FROM DEFENDANT (MONTGUMEROR). DEFENDANT ( GARNETT ) AND ( ORR.      )
HAVE SAID THAT PLACEMENT AT TAMMS WILL LAST AT LEAST A YEAR. ...
INFORMALLY, DEFENDANTS ARE TELLING SOME PRISONERS THEY WILL STAY AT TAMMS
FOR THE REMAINDER OF THEIR IN CARCERATION TERM. WHICH MAY BE A MATTER
OF DECADE. ...

42). THE PRISONERS SELECTED FOR PLACEMENT AT TAMMS ARE THOSE DEFENDANTS
DEEM THE MOST VIOLENT AND/OR POTEIALLY DISRUPTIVE,' LITIGATOR'S,' ACTIVE
GANG MEMBERS,' AND MENTALLY ILL PRISONERS. IT IS WELL KNOWN THAT MANY SERIOUSLY
MENTALLY ILL PRISONERS LIKE PLAINTIFF, EXHIBIT VIOLENT AND ASSAUITIVE
BEHAVIOR. ALTHOUGH " MENTAL HEALTH CONCERNS " ARE ONE OF THE FACTORS
CONSIDERED IN DECIDING WHETHER AN INNATE SHOULD BE PLACED AT
TAMMS ( 20. ILL. ADM. CODE. § 505.40 ). THERE IS NO BAR TO PLACING
SERIOUSLY ILL PRISONERS LIKE PLAINTIFF AT TAMMS. DEFENDANTS DO NOT

16

SCREEN PRISONERS ADEQUATELY WHEN THEY ARE TRANSFERRED TO TAMMS TO DETERMINE IF THEY ARE SERIOUSLY MENTALLY ill, THEY DO NOT PROHIBIT THE TRANSFER OF PRISONERS TO TAMMS WHEN THEY KNOW THEM TO BE MENTALLY ill, THEY DO NOT EXAMINE THEM ADEQUATELY AS THEY CONTINUE TO RESIDE AT TAMMS TO DETERMINE IF THEY HAVE DECOMPENSATED TO A GREATER DEGREE THAN THEY WOULD HAVE AT ANOTHER FACILITY, AND THEY DO NOT REMOVE PRISONERS FROM TAMMS EVEN WHEN THEY KNOW THAT THE PRISONERS PLACEMENT AT TAMMS HAS CAUSED HIM TO DECOMPENSATE MENTALLY, AS IT DID TO PLAINTIFF. BECAUSE OF THIS, A HIGH PERCENTAGE OF THE PRISONERS RESIDE AT TAMMS ARE IN FACT SERIOUSLY ill . . . . . .

43). AT TAMMS, PRISONERS ARE SUBJECTED TO NEAR TOTAL SOCIAL ISOLATION IN AN EXTRAORDINARILY RESTRICTED ENVIRONMENT. THESE CONDITIONS ARE KNOWN TO CAUSE SERIOUS PSYCHOLOGICAL PROBLEMS IN PRISONERS, NOTABLE THOSE WHO HAVE SERIOUS PRE-EXISTING MENTAL ILLNESSES, INCLUDING CHRONIC LONG-STANDING DEPRESSION, SCHIZOPHRENIA, AND OTHER LONG-STANDING, SEVERE MENTAL ILLNESSES; THOSE WITH CERTAIN PRE-EXISTING DISORDERS. THE PSYCHOLOGICAL PROBLEMS DISPLAYED BY AT-RISK PRISONERS INCLUDE SYMPTOMS SUCH AS PERCEPTUAL DISTURBANCES (FOR EXAMPLE, HALLUCINATIONS), HYPERSENSITIVITY TO EXTERNAL STIMULATION, AGGRESSIVE FANTASIES, OVERT PARANOIA, PROBLEMS WITH CONCENTRATING AND WITH CONTROLLING IMPULSES, ANXIETY/PANIC DISORDER, AND OVERT PSYCHOTIC DISORGANIZATION, AS WELL AS ATTEMPTED SUICIDE AND PHYSICAL TRAUMA INCLUDING SELF-MUTILATION.

44). PRISONERS, WHO BEGIN TO EXPERIENCE THESE SERIOUS PSYCHOLOGICAL INJURYS ARE CAUGHT IN A CYCLE THAT WORSENS THEIR ILLNESSES. THEIR ILLNESSES MAKES THEM ACT DESTRUCTIVELY TOWARD THEMSELVES, THEIR ENVIRONMENT, OR THE STAFF. IN RESPONSE, DEFENDANTS IGNORE THEIR ILLNESSES AND PUNISH THEIR CONDUCT. THIS PUNITIVE TREATMENT EXACERBATES THEIR ILLNESSES, WHICH INCREASES THEIR DESTRUCTIVENESS. DAY AFTER DAY, CERTAIN

SERIOUSLY MENTALLY ILL PRISONERS LIKE PLAINTIFF, AT TAMMS CUT THEIR ARMS, NECKS, AND ABDOMENS. REPEATEDLY, SOME OF THESE PRISONERS ATTEMPT TO HANG THEMSELVES OR ATTEMPT TO SWALLOW RAZORS OR BROKEN PIECES OF MIRROR. INSERTING OBJECTS INTO THEIR PENISES. ONE OF THESE PRISONERS HAS BEEN KNOW TO CREATE LARGE RED WOUNDS ON HIS SHOULDERS FROM BITING HIMSELF; ANOTHER HAS BEEN OBSERVED EATING HIS OWN FLESH . . . . . .

45). DEFENDANTS, RESPOND TO THIS DERANGED BEHAVIOR WITH PUNISHMENT SUCH AS THE SO-CALLED CELL EXTRACTION, A PROCEDURE IN WHICH MEMBERS OF A TACTICAL TEAM, ARMED WITH BATONS AND PROTECTED WITH PLASTIC SHIELDS, SPRAY BURNING CHEMICAL SUBSTANCES IN THE INMATES FACE AND THEN FORCIBLY "EXTRACT" HIM FROM HIS CELL. THEY ORDER PRISONERS LIKE PLAINTIFF, CELLS TO BE STRIPPED OF ALL PROPERTY (EVEN THEIR MATRESS AND BLANKET) AND FORCE THE MEN TO LIVE IN THIS BEREFT ENVIRONMENT, OFTEN WITHOUT CLOTHES OR A BLANKET FOR DAYS OR EVEN WEEKS AT A TIME. THEY ORDER PLEXIGLASS SHIELDS TO BE PLACED IN FRONT OF THE PRISONERS DOORS OR BLACK BOXES PLACED OVER THE SLOT WHERE FOOD IS PASSED, MAKING ANY COMMUNICATION EVEN MORE DIFFICULT. THEY ORDER PRISONERS' CENTRALLY CONTROLLED WATER SUPPLY TO BE SHUT OFF FOR HOURS OR EVEN DAYS AT A TIME . . . . .

46). MENTALLY ILL PRISONERS LIKE PLAINTIFF, ALSO ARE PUNISHED BY THE USE OF EXCESSIVE FORCE BY PRISON GUARDS. ALTHOUGH DEFENDANTS PRESUMABLY DO NOT OFFICIALLY SANCTION THIS CONDUCT, THEY UNOFFICIALLY CONDONE IT BY CREATING AN ATMOSPHERE OF TERROR AND BRUTALITY AT TAMMS; FAILING TO FULLY INVESTIGATE PRISONERS COMPLAINTS OF THE USE OF EXCESSIVE FORCE; FAILING TO PUNISH THE GUARDS WHO USE EXCESSIVE FORCE; AND PUNISHING PRISONERS WHO COMPLAINE ABOUT IT . .

48). MENTALLY ill PRISONERS like PLAINTIFF, AlSO ARE GIVEN MENTAL HEALTH TREATMENT THAT IN FACT IS PUNISHMENT, AND NOT TREATMENT. THEY ARE BOUNDED IN FOUR-POINT RESTRAINTS, FOR HOURS AND SOMETIMES FOR DAYS AT A TIME. PRISONERS ARE FORCIBLY AND AGAINST THEIR WILL GIVEN INJECTIONS OF MEDICINE TO SEDATE THEM. AND SOMETIMES WHILE THEY ARE COMPLETELY NAKED, IN FOUR-POINT RESTRAINTS. THEY ARE STRIPPED OF ALL THEIR CLOTHES AND HELD IN COLD "STRIP CELLS" IN THE HEALTH CARE UNIT, OR ON ELEVATED SECURITY WINGS, WHICH ARE BARREN OF ANYTHING EXCEPT A CEMENT BED AND THE FLOOR • • • AND A TOILET, WHERE THEY CAN EARN THE RIGHTS TO GET THEIR CLOTHES BACK ONLY BY PROMISING THEY WILL NOT TRY TO KILL THEMSELVES • • • •

## COUNT # 4

### THE CONDITIONS AT TAMMS ARE DESIGNED TO AND DO CAUSE PSYCHOLOGICAL DAMAGES

48). PLAINTIFF, IS AN SERIOUSLY MENTAILLY ill PRISONER who ENTER TAMMS AT his PERIL. FOR THE CONDITIONS THERE ARE DESIGNED TO AND DO CAUSE PSYCHOLOGICAL DAMAGE. AT TAMMS, CONTROL IS EXERCISED THROUGH EXTREME SOCIAL ISOLATION, SEVERELY RESTRICTED MOVEMENT. AND AN ENVIROMENT THAT SEVERELY RESTRICTS STIMULATION. A CENTRALIZED CONTROL BOOTH OPERATE All lIGHTS AND DOORS AND WATER SUPPLY. VIDEO CAMERAS PROVIDE VISUAL SURVEILLANCE, AND INTERCOMS PROVIDE COMMUNICATION WITHOUT HUMAN CONTACT AND AllOW GUARDS TO EAVESDROP ON PRISONERS...

49). TAMMS CONSISTS OF EIGHT SELF- CONTAINED CELL BLOCKS, CALLED PODS, EACH HOLDING SIX WINGS OF TEN CELLS. TO RESTRICT THE MOVEMENT OF PLAINTIFF, EACH POD IS A SELF- CONTAINED lIVING UNIT THAT HOLDS AN EXERCISE AREA, SHOWERS, A SMALL LAW LIBRARY, A NURSES' STATION,    A MULTI PURPOSE ROOM USED BY THE MEDICAL AND MENTAL HEALTH STAFF.  AND A CENTRAL CONTROL BOOTH FOR CORRECTIONS STAFF. MOVEMENT BETWEEN THE PODS IS THROUGH AN UNDERGROUND TUNNEL. AT TAMMS, EACH INMATE SPENDS 23 TO 24 HOURS A DAY, SEVEN DAYS A WEEK, IN A SINGLE 80- SQUARE- FOOT ONE MAN CONCRETE CELL. EACH CELL CONTAINS ONLY A CONCRETE BED, A STAINLESS STEEL COMBINATION SINK AND TOILET, A MIRROR, A SHELF THAT SERVES AS A DESK, AND ( FOR SOME INMATES) TWO BOXES FOR STORING PROPERTY. EACH CELL HAS A NARROW WINDOW PLACED HIGH UP ON THE WAll, MAKING IT POSSIBLE FOR DEFENDANTS TO SAY THAT THE CELL HAS NATURAL lIGHT BUT IMPOSSIBLE FOR THE INMATES TO SEE ANYTHING UNLESS HE STANDS ON HIS BED. THE DOOR TO THE CELL IS MADE OF HEAVY GAUGE STEEL PERFORATED WITH DIME SIZED HOLES THAT

20

are difficult to see through. Each door contains a slot for food, called a chuckhole. The prisoners view through the perforated steel mesh is of a raw concrete wall, and the occassional department employee who passes by; prisoners cannot see each other . . . .

49) Prisoners do not leave these cells for meals, which are served on plastic trays pushed through the chuckhole; the trays and the utensils must be placed back in the chuckhole within 30 minutes. Prisoners do not leave to visit with other prisoners; such contact is forbiden. They do not leave for communal religious services, educational programs, or jobs, none of which exist at Tamms. Those who can read ( many prisoners at Tamms have only rudimentary reading and writing skills) may keep some books in their cells . . . .

51) Most prisoners cannot listen to the radio or watch television, which are provided only for the prisoners in administrative detention who have advanced to "behavior level 3," something few mentally ill prisoners can do. ( Prisoners at Tamms are either in administrative detention, which is ostensibly a non - disciplinary status of confinement that removes an inmate from general population, or disciplinary segregation, resulting from punishment ordered after a rule infraction ) . . . .

52) Prisoners cannot see or socialize with other prisoners, except by yelling into the wing, where the extreme echoing effect makes it hard to hear and understand. On nearly every wing, one or more prisoners scream and bang on cell walls and doors throughout the day and night, so that other prisoners often cannot sleep . . . .

21

53

4). PRISONERS REGULARLY LEAVE THEIR CELLS ONLY TO EXERCISE OR TAKE A SHOWER ONE TO FOUR TIME A WEEK. OCCASSIONALLY, THEY VISIT THE STATE SATELITE LAW LIBRARY OR GO TO THE MULTIPURPOSE ROOM TO SEE A SOCIAL WORKER; ONLY RARELY DO THEY TRAVEL OUTSIDE THE PODS TO THE HEALTH CARE UNIT OR THE VISITORS' ROOM. AT NO TIME, ARE TWO OR MORE PRISONERS ON A WING ALLOWED OUTSIDE THEIR CELLS AT THE SAME TIME ● ● ● ●

54

5). WHENEVER AN INMATE LEAVES HIS CELL FOR ANY PURPOSE EXCEPT EXERCISE AND SHOWER, AND EACH TIME HE RETURNS, HE MUSH SUBMIT TO A FULL BODY CAVITY SEARCH. FIRST HE REMOVES HIS CLOTHS AND HANDS THEM TO THE GUARD. STANDING NAKED, HE MUST DISPLAY HIS EARS, FEET, HANDS. THEN HE MUST BEND OVER, HIS BACK TO THE GUARD, AND SPREAD HIS BUTTOCKS. HE MUST RAISE HIS PENIS SO THE GUARDS CAN EXAMINE HIS TESTICLES. HE MAY BE ORDERED TO EXPOSE THE GROVE AROUND THE TIP OF HIS PENIS OR, IF HE IS NOT CIRCUMCISED, TO PULL BACK THE FORESKIN ● ● ● ● ●

55

6). AFTER DRESSING, HE IS HANDCUFFED AND THEN, KNEELING OR LYING ON THE FLOOR, HIS LEGS ARE SHACKLED BY GUARDS WEARING LATEX OR LEATHER GLOVES. IF HE IS MOVING OUTSIDE HIS PODS HE IS SURROUNDED BY TWO OR THREE GUARDS, WHO PLACES THEIR ARMS ON HIS CHEST AND SHOULDERS, AND HIS MOVEMENTS MAY BE TRACKED BY A GUARD WHO HAS ACCESS TO A SEMI—AUTOMATIC RIFLE. THESE PUNITIVE AND HUMILIATING EXCHANGES ARE THE ONLY TIMES A TAMMS INMATE FEELS ANOTHER PERSON'S TOUCH, EXCEPT WHEN HE IS EXAMINED BY A DOCTOR, WHICH USUALLY TAKES PLACE WHILE THE INMATE'S LEGS ARE SHACKLED AND HIS ARMS ARE HELD BY GUARDS ● ●

56

56). EXERCISE TAKES PLACE IN CONCRETE "YARD", ABOUT 15 BY 30 FEET IN DIAMETER, PLACED AT ONE END OF EACH POD. THE YARD CONTAINS NO BASKETBALL HOOP, NO DRINKING FOUNTAIN, AND NO TOILET. THE ONLY EQUIPMENT IS A SMALL RUBBER BALL AVAILABLE TO PRISONERS WHO PURCHASE IT. A STAINLESS STEEL PLATE COVERS ONE-HALF OF THE YARD; THE REMAINING HALF GIVES THE INMATES HIS ONLY GLIMPSE OF NATURAL LIGHT AND THE OUTSIDE WORLD. EXCEPT WHAT HE CAN SEE THROUGH HIS CELL WINDOW. YET MANY SERIOUSLY ILL PRISONERS GO FOR WEEKS WITHOUT GOING TO THE YARD BECAUSE THEIR MENTAL ILLNESSES MAKE THEM FEARFUL OF LEAVING. MANY PRISONERS LOSES THEIR YARD PRIVILEGES BECAUSE OF DISCIPLINARY REASONS OR BECAUSE THEIR MENTAL ILLNESSES MAKE THEM FEARFUL OF LEAVING OR TOO DEPRESSED TO MOVE • • • • •

57

57). THE INMATE'S CONTACT WITH FAMILY AND FRIENDS OUTSIDE PRISON IS INFREQUENT, UNCOMFORTABLE, AND WITHOUT PHYSICAL CONTACT. TELEPHONE CALLS ARE LIMITED TO EMERGENCIES SUCH AS THE DEATH OF A FAMILY MEMBER. (LEGAL CALLS ALSO ARE LIMITED TO "EXTRAORDINARY CIRCUMSTANCES") • • • VISITS ARE CUMBERSOME, EXPENSIVE, SHORT, AND INHOSPITABLE. EXCEPT FOR VISITS BY LAWYERS, EACH VISIT MUST BE ARRANGED WEEKS IN ADVANCE FOR SPECIFIC TIME AND IS FORFEITED IF THE VISITOR IS LATE.

58

58). MOST VISITORS MUST MAKE AN OVERNIGHT CARE TRIP, SINCE TAMMS IS 370 MILES FROM COOK COUNTY, WHERE THE FAMILIES OF MOST PRISONERS RESIDE. NON-LEGAL VISITS LAST ONLY TWO HOURS. A THICK GLASS SHIELD SEPARATES THE VISITOR AND THE INMATE, WHO TALK THROUGH A MICROPHONE THAT DISTORTS VOICES AND CUTS OFF A CONVERSATION IF ONE PERSON TALKS OR LAUGHS WHILE THE OTHER IS TALKING. ALL CONVERSATION (EXCEPT BETWEEN ATTORNEY AND CLIENT) IS RECORDED. THE PRISONERS LEGS ARE SHACKLED AND CHAINED TO A BOLT IN THE FLOOR. IF THE PRISONERS IS IN SEGREGATION

22

status, he wears hand cuffs attached by a short chain that makes it difficult for him to gesture or even to scratch his face . . .

59
50). For some prisoners, these conditions of social isolation, restricted movement, and restricted external stimulation may be bearable. For seriously mentally ill prisoners like plaintiff, however, the conditions cause suffering that amounts to cruel and unusual punishment . . . .

60
60). The conditions at Tamms, has cause plaintiff, mental illnesses to worsen, and the defendants are failing and refusing to remedy the situation, and as an result of such conditions of confinement. it has caused plaintiff, suicide's attempt's . . .

61
61). For the acts described above the defendants has acted with deliberate indifference to plaintiff serious mental health needs, causing infliction and wanton pain and suffering in violation of the eight amendment to the U.S. constitution . .

23

COUNT # 5

DEFENDANTS HAVE ACTED WITH DELIBERATE INDIFFERENT

TO PLAINTIFF SERIOUS MENTAL HEALTH NEEDS.

62

38). THE ~~DELIBERATE~~ DELIBERATE INDIFFERENCE OF DEFENDANTS TO THE SERIOUS MENTAL HEALTH NEEDS OF PLAINTIFF, IS DEMONSTRATED BY THE SYSTEMIC DEFICIENCIES IN THE STAFFING, FACILITIES AND PROCEDURES OF THE MENTAL HEALTH CARE SYSTEM AT TAMMS WHICH MAKE UNNECESSARY SUFFERING INEVITABLE. IN CREATING AND THEN FAILING AND REFUSING TO CURE THE SYSTEMIC DEFICIENCIES, DEFENDANTS HAVE ACTED WITH DELIBERATE INDIFFERENCE TO THE SERIOUS MENTAL HEALTH NEEDS TO PLAINTIFF, AND IN DOING SO, HAVE UNNECESSARILY AND WANTONLY INFLICTED SEVERE PAIN AND SUFFERING ON PLAINTIFF. THESE SYSTEMIC DEFICIENCIES, WHICH ARE THE OVERALL RESPONSIBILITY OF DEFENDANTS; PARTICULAR RESPONSIBILITY OF DEFENDANTS DRS. ELYEA, POWERS, RHODES, NAVARRO, CHANDRA, ANGUS, FLETCHER, GARLICK, ARE AS FOLLOWS: . .

(A). ALTHOUGH "MENTAL HEALTH CONCERNS" MUST BE CONSIDERED WHEN A PRISONER IS TRANSFERRED TO TAMMS, THERE IS NO REQUIREMENT THAT MENTALLY ILL PRISONERS BE EXCLUDED AND THERE IS NO ADEQUATE SYSTEMATIC PROGRAM FOR SCREEN AND EVALUATING THE MENTAL HEALTH STATUS OF PRISONERS BEING PROPOSED FOR TRANSFER TO TAMMS . . .

(B). THERE IS NO REQUIREMENT THAT PRISONERS WHO DECOMPENSATE AT TAMMS BE REMOVED FROM THE FACILITY AND NO ADEQUATE SYSTEMATIC PROGRAM FOR IDENTIFYING SUCH PRISONERS LIKE PLAINTIFF. INSTEAD, DEFENDANTS IGNORE THE OBVIOUS SIGNS OF PRISONERS' MENTAL DETERIORATION, DESPITE THEIR KNOWLEDGE THAT THE ENVIRONMENT AT TAMMS TESTS EVEN THE STRONGEST INMATES . . . . . . .

24

(c). There is no adequate systematic program to provide care at Tamms for seriously mentally ill prisoners, like plaintiff. Instead, the mental health system operates as an adjunct to the harsh punishment system, by "treating" prisoners with psychological techniques that are, in intent and purpose methods of punishment which will make seriously ill prisoners, like plaintiff, sicker, not better. These psychological techniques include. (i). Ordering the suicidal inmates to undergo extreme isolation while lying naked in cold, stripped cells, sometimes while bound in four-point restraints and while injecting with mind-numbing drugs against his will. (ii). Allowing guards to handle an inmate more roughly than is necessary while in the health care unit, or bringing him to the unit, or while in the wings. (iii). Withholding talking therapy from an inmate because he is demonstrating disruptive behavior that is directly caused by his mental illness. (iv). Denying prisoners, like plaintiff, the right to send or receive mail ( including legal mail) and the right to basic toiletries such as a toothbrush, toothpaste, soap, and deodorant while they are in the health care unit or on an wing designated for suicide watches . . . .

(D). Mental health treatment at Tamms lacks the commitment of a psychiatrist to identify and treat in an individualized manner those prisoners, like plaintiff, suffering from serious mental disorders. Instead the prison has been served by a series of psychiatrists whose main function is to prescribe drugs instead of to oversee the individual monitoring, evaluation, and treatment of prisoners . . .

25

(E). Defendants, Rhodes, Chandra, and Navarro, routinely allow security concerns to compromise their duties to prisoners, who are their patients. For example, they breach their promise of confidentiality to patients by sending written mental health reports to non-medical personnel, and they allow security personnel to dictate that mental health sessions be conducted while the prisoner sits uncomfortably with his feet shackled to the floor and his hands cuffed behind his back, in a room where the guards can overhear the conversation . . . .

(F). Defendants have established five - "elevated security" wings where a high percentage of seriously mentally ill prisoners are unjustifiably isolated. No special mental health treatment is provided and the conditions are even more harsh and isolated than they are elsewhere at Tamms. The high noise level and the sense of danger and chaos on the wings, combined with the reluctance of mental health and other medical personnel to venture there, make the experience of living on these wings even worse than the experience of living elsewhere at Tamms . . . .

(G). Accurate, complete, and confidential records of the mental health treatment process are not maintained. These records Tamms received from other prisons are inaccurate, incomplete, falsified, and often arrive long after the inmate does; the records Tamms maintains are incomplete, inaccurate, falsified, and disorganized, and the confidentiality of the prisoners, like plaintiff, communications is breached repeatedly . . . . . .

26

(h). The assessment and treatment of seriously mentally ill or decompensating prisoners, like plaintiff, sometimes is delayed unacceptably. These delays are caused, among other reasons, by (i). Tamms' receipt of sketchy records from other institutions; (ii). The repetitive, deliberate failure of correctional officers to respond to mental health emergencies, and (iii). The systematic refusal of Tamms mental health workers to identify and treat the high percentage of prisoners, like plaintiff, who arrive at Tamms seriously mentally ill or who decompensate there . . . .

(i). Behavior-altering medications are prescribed and administered in dangerous amounts, by dangerous methods, or without appropriate supervision and periodic evaluation . . . .

(j). Prisoners are punished for behavior that is directly and obviously a consequence of their serious mental illnesses. This punishment includes; (i). Discipline meted out informally, such as taunting a prisoner with a ferocious dog or spraying caustic chemicals in his eyes because, in a plea for attention, he refuses to give up his food tray. (ii). Discipline imposed through the formal prison disciplinary procedure such as punishing a prisoner for destroying state property because he tried to swallow a piece of mirror or attempted to hang himself with a noose fashioned from a state-owned sheet. And (iii). Criminal charges causes to be brought for relatively minor events that normally are overlooked or resolved through the prison disciplinary procedure . . . .

(k). Physical restraints are used improperly to punish rather than to treat and protect mentally ill prisoners, like plaintiff . . . .

27

(L). Isolation in cold stripped cell is used to punish rather than to treat and protect mentally ill prisoners, like plaintiff. . . .

(M). Talking sessions with mental health professionals are used to not to treat prisoners, but to reward them for submissive conduct that may be harmful to their mental state and that often is impossible for them to achieve. . . . .

(N). The mental health care program fails to identify, treat and supervise prisoners, like plaintiff, with suicidal tendencies. .

63

3). As a result of defendant acts of deliberate indifferences to plaintiff, serious mental health needs, by subjecting plaintiff to undergo the psychological conditions of confinement, Tamms imposes on prisoners, constitute deliberate indifference to plaintiff, health, safety, and well-being, and deliberate indifferent to plaintiff serious mental health needs, in violation of cruel and unusual punishment, as outlined in the eight amendment to the U.S. Constitutional. . . . . .

28

## COUNT # 6

### DENIAL OF PLAINTIFF LIBERTY INTEREST
### FOR INDETERMINATE SEGREGATION
### PLACEMENT AT TAMMS

64

60). PLAINTIFF HAS BEEN IN DISCIPLINARY SEGREGATION STATUS, SINCE JULY / 1999, AND HAS ACCUMULATED SEGREGATION TIME FOR OVER (50 +) PLUS YEARS INCLUDING PLACEMENT IN INDETERMINATE DISCIPLINARY SEGREGATION • • •

65

61). PLAINTIFF, HAS BEEN SUBJECTED TO SUCH HARSH PUNISHMENT BY PRISON ADJUSTMENT COMMITTEE, FOR PROBLEMATIC BEHAVIOR THAT WERE CAUSED BY PLAINTIFF MENTAL ILLNESSES • • •

66

62). DEFENDANTS. DOES NOT REVIEW PLAINTIFF, TO DETERMINATE IF WHETHER OR NOT PLAINTIFF SHOULD TO RETURN BACK INTO THE GENERAL POPULATION OR TO STAY IN DISCIPLINARY SEGREGATION STATUS. •

67

63). DEFENDANTS, HAS TOLD PLAINTIFF, THAT HE WILL REMAIN IN INDETERMINATE DISCIPLINARY SEGREGATION STATUS UNTIL THE PLAINTIFF IS RELEASED FROM PRISON • • •

68

64). PLAINTIFF, CURRENT PROJECTIVE OUT DATE IS 20039, AND HAS GOTTEN A SEGREGATION OUT DATE 20060 PLUS A ——— INDETERMINATE SEGREGATION TIME, WHICH MEAN PLAINTIFF WILL SPEND THE REMAINDER OF HIS PRISON SENTENCE IN DISCIPLINARY SEGREGATION STATUS, UNDER THE PSYCHOLOGICAL CONDITIONS OF CONFINEMENT IN TAMMS CORRECTIONAL CENTER • • •

69

69). PLAINTIFF, HAS BEEN IN INDETERMINATE SEGREGATION STATUS SINCE DECEMBER/2002, FOR AN ALLEGE ASSAULT THAT I DID NOT COMMIT. AND DEFENDANTS ARE REFUSING TO ALLOW PLAINTIFF BACK INTO THE GENERAL POPULATION AND SUBJECTING HIM TO THE PSYCHOLOGIAL DAMAGES BY KEEPING HIM UNDER THE HARSH EXTREME CONDITIONS OF CONFINEMENT IN TAMMS. ∘ ∘

70

70). THE OPERATION OF TAMMS, LIKE EVERY OTHER PRISON THAT IS OPERATED BY THE ILLINOIS DEPARTMENT OF CORRECTIONS, IS GOVERNED BY THE PROVISION OF THE UNIFIED CODE OF CORRECTIONS ("THE CODE") 730 ILCS 5-1-1. ET. SEQ ∘ ∘ ∘

71

71). SECTION 3-8-7 (A) OF THE CODE PROVIDES THAT ALL DISCIPLINARY ACTION MUST BE TAKEN PURSUANT TO RULES OF BEHAVIOR AND CONDUCT INCLUDING THE PENALTIES FOR VIOLATIONS, WHICH ARE $^{NOT}$ AVAILABLE TO ALL INMATES ∘ ∘ ∘ ∘

72

72). SECTION 3-8-7 (e) OF THE CODE ESTABLISHES THE PROCEDURE REQUIRES FOR THE IMPOSETION OF THE DISCIPLINARY SEGREGATION AND ISOLATION ∘ ∘ ∘ ∘

73

73). NO PROVISION OF THE CODE PROVIDES FOR ISOLATION OF INMATES IN SEGREGATION OR AD STATUS ∘ ∘ ∘

74

74). DEFENDANTS, TRANSFERRED OF PLAINTIFF TO TAMMS VIOLATES SECTION 3-8-7 (A) IN THAT PLAINTIFF WERE TRANSFERRED TO TAMMS FOR VIOLATION OF RULES WHICH WERE NOT AVAILABLE TO PLAINTIFF PRIOR TO HIS TRANSFER TO TAMMS ∘ ∘ ∘ ∘

30

75
). DEFENDANTS, TRANSFERRED OF PLAINTIFF TO TAMMS VIOLATES SECTION
3-8-7 (E) AS THE HEARING PROCEDURE SET FORTH THEREIN WERE
NOT FOLLOWED . . .

76
). EACH OF THE DEFENDANTS WAS INVOLVED IN PERSONALLY APPROVING
THE TRANSFER OF PLAINTIFF TO TAMMS WITHOUT A HEARING OR
APPROVING THE POLICIES AND CRITERIA FOR PLACEMENT AT TAMMS IN
INDETERMINATE DISCIPLINARY SEGREGATION, AND THE CONTINUATION OF
PLACEMENT AT TAMMS, UNDER THE EXTREME HARSH PSYCHOLOGICAL
CONDITIONS OF CONFINEMENT . . .

77
). PLAINTIFF, HAS AN SEGREGATION OUT DATE GOES BEYOND HIS
PRISON SENTENCE, AND PLAINTIFF CANNOT EARN ANY GOOD CONDUCT
CREDITS DUE TO HIS PLACEMENT IN INDETERMINATE SEGREGATION STATUS.

78
). PLACEMENT IN INDETERMINATE DISCIPLINARY SEGREGATION STATUS
SUBJECTS PLAINTIFF TO ATYPICAL AND SIGNIFICANT HARDSHIPS
IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE AND TO
HARDSHIPS WHICH ARE NOT EXPERIENCED AT THE MOST RESTRICTIVE
SEGREGATION UNIT AT ANY OF THE MAXIMUM SECURITY PRISON IN
ILLINOIS . . .

79
). PLACING PLAINTIFF UNDER SUCH PSYCHOLOGICAL CONDITIONS
OF CONFINEMENT, IS CAUSING IRREPARABLE DAMAGE UPON PLAINTIFF
IN VIOLATION OF THE CRUEL AND UNUSUAL PUNISHMENT, AS OUTLINED
UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTIONS . . . .

80).  AS A RESULT OF DEFENDANTS VIOLATION OF THE CODE AND PLAINTIFF LIBERTY INTEREST, THE PLAINTIFF HAS BEEN SUBJECTED TO ONEROUS PSYCHOLOGICAL CONDITIONS OF CONFINEMENT, FOR WORSE THEN THOSE HE WOULD HAVE EXPERIENCED AT ANY OTHER PRISON IN ILLINOIS ; AND IT WAS THE CAUSE OF PLAINTIFF SUICIDE ATTEMPTS, AND IS CAUSING PLAINTIFF MENTAL ILLNESSES TO WORSEN • • • •

## COUNT # 7
## DECLARATORY RELIEF

PLAINTIFF* REALLEGE PARAGRAPHS (1-82). AS IF FULLY SET FORTH HEREIN.

81). THERE IS AN ACTUAL CONTROVERSY BETWEEN THE PARTIES REQUIRING THE COURT TO DECLARE THE RIGHTS AND OTHER LEGAL RELATIONS OF THE PARTIES.

## COUNT # 8
## INJUNCTIVE RELIEF

PLAINTIFF, REALLEGES PARAGRAPS (1-82). AS IF FULLY SET FORTH HEREIN •

82). UNLESS ENJOINED FROM DOING SO, DEFENDANTS WILL CONTINUE TO WILLFULLY VIOLATE THE RIGHTS OF PLAINTIFF. THESE CONTINUING VIOLATIONS CONSTITUTE IRREPARABLE INJURY FOR WHICH PLAINTIFF HAVE NO ADEQUATE REMEDY AT LAW. • • • •

WHEREFORE, PLAINTIFF, REQUEST THIS COURT TO GRANT THE FOLLOWING RELIEF.

(A). Declare that the actions and inaction of defendants described herein have violated and continue to violate the plaintiff rights under the First, Eicht, and Fourteenth Amendments to the United States Constitutions . . . .

(B). Enjoin defendants from engaging in any action or conduct, or failing to act in any way, that violate the plaintiff above mentioned rights . . . .

(C). Order defendants to take all action necessary to remedy the violations of plaintiff above mentioned rights . . .

(D). Order defendants to transfer plaintiff from Tamms and to return him to another appropriate setting within the Illinois Department of Corrections . . . .

(E). Award plaintiff, a judgment against defendants separately and jointly for compensatory damages in the amount of # Forty-Five (# 45. .) Million Dollars . . . .

(F). Award plaintiff, a judgment against defendants separately and jointl for punitive damages in the amount of # Thirty-Five (35.) Million Dollars . . .

(G). Award plaintiff, a judgment against defendants separately and jointly for attorneys fees and costs. .

33

(H). AWARD PLAINTIFF. A JUDGMENT AGAINST DEFENDANTS SEPARATELY
AND JOINTLY FOR ANY other RELIEF THAT THIS COURT DEEMS
JUST AND PROPER . . . . .


RESPECTFUllY SUBMITTED
Christopher Knol        B61090
200 E. SUPERMAX. Rd
TAMMS, IllINOIS 62988

34